1  Mark J. Wilson (Cal. Bar No. 96985)
   ISAACSON & WILSON , P.S.
2  701 Fifth Avenue, Suite 5810
3  Seattle, WA  98104
   Telephone:  (206) 448-1011
4  Facsimile:  (206) 448-1022
5  Email: markw@isaacsonwilson.com

6
   Steven Rood (Cal. Bar No. 69332)
7  LAW OFFICES OF STEVEN ROOD
8  405 – 14TH Street, Suite 212
   Oakland, CA  94612
9  Telephone:  (510) 839-0900
10 Facsimile:  (510) 839-0230
   Email: steve@steverood.com
11

12 Attorneys for Plaintiffs CARL SCHLACHTE
13 and NANCY SCHLACHTE

14             IN THE UNITED STATES COURT

15     FOR THE NORTHERN DISTRICT OF CALIFORNIA

16                  (OAKLAND BRANCH)

17

18 CARL SCHLACHTE and          )    Case No.:
19 NANCY SCHLACHTE,            )
            Plaintiffs,         )    COMPLAINT
20                             )    DEMAND FOR JURY TRIAL
21     vs.                      )
                               )
22 UNITED STATES OF AMERICA,    )
23          Defendant.          )
24 ─────────────────────────    )

25
    1.    Plaintiffs, Carl Schlachte and Nancy Schlachte by their undersigned
26
27 attorney, brings this action against Defendant the United States of America.

28

**Parties**

2.    Plaintiffs, Carl Schlachte and Nancy Schlachte are husband and wife and are citizens of the United States who reside at 906 Gray Fox Circle, Pleasanton, in Almeda County, California, 94566.

3.    The Defendant is the United States of America.

**Jurisdiction**

4.    This is a suit arising under the laws of the Internal Revenue Code for the refund of income taxes and interest erroneously and illegally assessed against and collected from the Plaintiffs.

5.    Jurisdictions is conferred upon the Court by 28 U.S.C. §1346(a) (1).

6.    Venue is appropriate under 28 U.S.C. § 1391(e).

**Summary of Claim**

7.    The IRS incorrectly and wrongfully treated a loan and pledge of stock as collateral between the Schlachtes and Derivium as a sale of the stock and, consequently, the IRS incorrectly and wrongfully assessed taxes, interest and penalties against Schlachte and caused Schlachte to incur additional damages.

8.    Carl Schlachte, on the advice and recommendation of his financial advisors and in reliance on representations by Derivium, entered into what he reasonably and in good faith believed were two legitimate non-recourse loans with Derivium.

COMPLAINT

The Schlachtes borrowed 90% of the value of certain shares of ARM Holdings PLC (ARM) they owned at the time and pledged 100% of the same ARM shares as collateral for the loans. Under the terms of the Master Loan Agreement (Master Agreement), Derivium had the right to sell the pledged stocks, but was required to return to the Schlachtes at the end of the three year loan period the same number of shares as had been pledged, provided the Schlachtes paid in full all outstanding loan balances, including accrued interest. If the Schlachtes failed to repay the loan and interest at the end of the three year period, the pledged stock would be forfeited, but Derivium would have no further recourse.

9.    The Schlachtes entered into the Master Agreement based on their reasonable and good faith reliance and believe on representations by Derivium and Schlachte's own financial advisors, that Derivium intended and was able to fulfill its obligation to return the collateral at the end of the three year loan period. The transaction was represented to the Schlachtes by Derivium and the Schlachtes' financial advisors as an attractive hedging strategy and the Schlachtes were induced to enter into the transaction on that basis. The Schlachtes were informed by Derivium and the Schlachtes' financial advisors and, therefore, believed that Derivium would be able to fulfill its obligation to return the collateral by engaging

in a complex, proprietary, secret formula for hedging, developed by Dr. Charles D.
Cathcart, a principal of Derivium's.

10. Derivium concealed and misrepresented material facts from the Schlachtes
in order to induce the Schlachtes to enter into the Master Agreement. Derivium
never intended to return the pledged stock to the Schlachtes at the end of the loan
period, nor did Derivium ever intend to return to the Schlachtes the same number
of shares as had been pledged. Derivium sold all of the pledged stock before the
loan was funded. Derivium used 90% of the sale proceeds of the pledged stock to
fund the loan, but then converted the remaining 10% of the loan proceeds for its
own use and never engaged in any hedging strategy. Derivium committed this
same theft and conversion in other loan transactions with other borrowers similar
to the Schlachtes. As a result of the theft and conversion of these sale proceeds by
Derivium, Derivium defaulted on its obligations to return the collateral at the end
of the loan period in many similar loan transactions.

11. If Derivium and the Schlachtes' own financial advisors had not concealed
and misrepresented material facts from the Schlachtes and if the Schlachtes'
financial advisors had not failed to perform their due diligence, as alleged herein,
the Schlachtes would not have entered into the Master Agreement. If the
Schlachtes had known the true facts, they would not have borrowed from Derivium

or pledged their ARM stock to Derivium, or they would have entered into a different hedging strategy with someone else, or they would have sold the stock themselves, in which case they would have received 100% of the sale price instead of only 90%.

12.  The Schlachtes did not begin to discover these omissions and misrepresentations of facts by Derivium and Schlachtes' own financial advisors until after the end of the three year loan period and after they received notice from the IRS and the California Franchise Tax Board (CFTB) that these taxing authorities had decided to treat the Derivium transaction as a sale of stock, not as a loan and pledge of stock as security.  The IRS claimed that the Schlachtes owed overdue capital gains tax due to the alleged sale of the ARM stock.

13.  The determination by the IRS and CFTB that the Derivium transaction is a sale, rather than a loan and pledge of security, is incorrect.  Under the terms of the Master Agreement, the Schlachtes' stock was only pledged as security, not sold. Derivium was obligated to return the collateral at the end of the term.  At all times mentioned herein, the Schlachtes believed and relied on the fact that the Derivium transaction is a loan. The fact that Derivium sold all of the stock, funded the loan with 90% of the sale proceeds and converted the remaining 10% of the proceeds to its own use with no intention to hedge the stock or return the stock to the

Schlachtes, constitutes a theft and fraud upon the Schlachtes, but it does not cause the Derivium transaction to be treated as a sale.

14. Because the IRS is not certain of the validity of its own position, the IRS has also decided to tax the transfer of the same stock at the termination of the loan as a sale. The IRS acknowledges that the positions are a "whipsaw" as the acceptance of one position excludes the other. However, the IRS has decided to levy the tax twice once based on each theory and has also decided to collect the double tax even though it recognizes it will collect more than the taxpayer owes.

## Factual Allegations

15. Derivium Capital, LLC (herein "Derivium") is a limited liability company organized and existing under the laws of the State of South Carolina.

16. Plaintiff is informed and believes that at all times herein mentioned, Derivium was in the financial services business, marketing and administrating a proprietary secured stock loan. Specifically, Plaintiff is informed and believes that from 1998 through 2002 Derivium marketed what is known as the "90% Stock Loan," a loan transaction whereby the borrower pledges certain stock to secure a loan valued at 90% of the market value of the stock. Plaintiff is further informed and believes that the loan would typically mature after three years with interest accruing at 10% to 12% per annum. At the maturity of the loan the borrower

COMPLAINT

would have the option of paying off the loan plus interest accrued and receiving back the same number of shares of stock pledged, or (in the event the value of the stock was less than the loan principal plus interest) the borrower could terminate the transaction without any further obligation.

17. The 90% Stock Loan offered by Derivium enabled the borrower to enjoy the benefits of the appreciation of the borrower's stock, while hedging against a potential downturn in the market.

18. Plaintiff is informed and believes that Derivium marketed approximately 1,700 such 90% Stock Loans between 1998 and 2002.

19. On or about June 14, 2000 the Schlachtes were advised by their financial advisor, Farallon Advisors (now ClearPath Capital Partners), that they would benefit by engaging in a Derivium 90% Stock Loan.

20. Accordingly, on or about June 26, 2000 the Schlachtes and Derivium entered into a Master Agreement to Provide Financing and Custodial Services (herein "Master Agreement"). A true and correct copy of the Master Agreement dated June 14, 2000 is attached hereto as Exhibit A and incorporated herein.

21. Plaintiff is informed and believes that the Master Agreement between Derivium and the Schlachtes is the same type of "90% Stock Loan" marketed by Derivium to the approximately 1,700 other borrowers, as alleged herein.

22. The Schlachtes entered into two loans based on the same Master Agreement. The terms of each loan were set forth in loan term sheets, which were attached as separate Schedules to the Master Agreement and incorporated therein.

23. The Schlachtes took out their first loan (Loan Number 34462701-2-8230) pursuant to the Master Agreement on August 22, 2000. Exhibit B. For this first loan, the Schlachtes agreed to pledge as security 8,860 shares of stock they owned in ARM Holdings PLC (ARM). The amount of loan principal was $270,942.75, which was equal to 90% of closing market value of the ARM stock pledged on August 24, 2000 as calculated by Derivium. Exhibit C. A true and correct copy of Schedule A-2 to said Master Agreement evidencing the terms of this first loan is attached hereto as Exhibit D and incorporated herein. The loan term was three years and the loan provided for no recourse beyond the shares pledged.

24. On or about August 24, 2000 the Schlachtes signed additional loan documents pledging 66,266 shares of ARM Holdings Stock to Derivium Capital with a loan principal of $2,025,392.18 for this transaction. As before, the loan principal was equal to 90% of closing market value of the ARM stock pledged on August 24, 2000 as calculated by Derivium, the term was three years and the loan provided for no recourse beyond the shares pledged. (Exhibit E, Exhibit F, Exhibit G).

25.  On August 28, 2000, two wire transfers, the first for $1,560,000 and the second for $736,334.93 were made to the Schlactes representing the total $2,296,334.93 due to clients.  Exhibit H. This represented $270,942.75 from Loan Number 34462701-2-8230 plus $2,02,392.18 from Loan Number 34462701-1-6300.

26.  Before April 15, 2001, Plaintiffs Carl Schlachte and Nancy Schlachte, filed a timely joint federal income tax return (Form 1040) for the calendar year 2000. This return reported a total tax liability of $92,899. Because the Schlachtes withholding and other payments exceeded $92,899 they received a refund. (Exhibit I).

27.  On approximately July 10, 2003, the Schlachtes were notified that the loan term had matured for the first Derivium Transaction and surrendered the 8,860 shares of ARM holding in satisfaction of the loan.  (Exhibit J, Exhibit K)

28.  On approximately August 24, 2003, the Schlachtes were notified that the loan term had matured for the second Derivium transaction and surrendered the 66,266 shares of ARM Holdings in satisfaction of the loan. (Exhibit L, Exhibit M, Exhibit N).

29.  By February 11, 2004, the Schlachtes had been contacted by the California Franchise Tax Board (CFTB). (Exhibit O)  At this time, the CFTB took the

position, that the Derivium Transactions were sales on the date the loans were signed.

30. The Internal Revenue Service has also taken the position that the Derivium 90% Stock Loans were sales.

31. The CFTB and IRS are incorrect in their assertion that the Derivium 90% Stock Loans were sales.

32. The IRS is required to honor a contract for a transaction and its characterization as a loan or other label shown by the contract terms where (1) the parties are unrelated, arms-length parties, (2) there is valid consideration for the contract, (3) the parties characterize the interest as a loan (or sale), and (4) the parties follow substantially the formalities of the contract, whatever those provisions may be.

33. The loan contract between Derivium and the Schlachtes satisfies all of the requirements necessary to be characterized as a loan, for the following reasons, among others:

- The loan contract was entered into by two independent, arms-length, unrelated parties and sets forth the rights and obligations of each party.

- The loan contract is supported by consideration from the Schlachtes in the form of providing stock pledged as collateral, the loan advance and

COMPLAINT

the promises by Derivium of the return of collateral and the performance of hedging transactions adequate to guarantee that the collateral could be returned.

- Derivium and the Schlachtes characterize the Master Agreement as a loan and incorporate in it the "loan term sheets" setting forth the interest rate and other terms.

- The Schlachtes followed the terms of the contract and assumed that Derivium did also.

34. The IRS exceeded its legal authority and violated the law by disregarding the plain meaning of the contract and the conduct of the parties, by mischaracterizing the loan contract between Derivium and the Schlachtes as a sale rather than a loan, and by notifying the Schlachtes that they were not permitted to treat the Derivium transaction as a loan.

35. The State of California advanced the argument that the Master Agreement was a sale, the Superior Court of California granted summary judgment against the State of California. The court held that the Master Agreement and arrangement were not a sale, but a loan.

36. As a result of the IRS's and CFTB's mischaracterization of the Derivium transaction as a sale, which the Schlachtes nevertheless dispute, the Schlachtes

11

were subsequently required to re-characterize the loan and report the sales of the 75,126 shares of ARM Holdings on their California Income Tax returns.

37. To obtain California Amnesty and in reliance on the information provided to them by the California Franchise Tax Board, the Schlachtes filed amended tax returns showing the transactions in Arm Holdings stock as sales occurring in 2000. (Exhibit P)

38. The Schlachtes resubmitted amended returns for the 2000 and 2003 tax year removing the income from the Derivium Transactions as sales from 2000 and recognizing the income in 2003 when the shares were forfeited. (Exhibit Q, Exhibit R)

39. On June 26, 2006, Revenue Officer Elain Li, issued a full disallowance of the claimed refund for the 2000 tax year. (Exhibit S).

40. On December 22, 2005, Jack Estoll, an appeals team Manager, denied the request for refund of tax for 2000. (Exhibit T).

41. In contradiction to his decision that the sale should be taxed in 2000, Mr. Estoll caused the 2003 Amended 1040 to be processed and knowingly caused the Schlachtes to be taxed twice on the same transaction. (Exhibit U).

42. Mr. Estoll advised that he would not allow the Schlachtes to withdraw the 2003 return unless they submitted a closing agreement preventing them from contesting the 2000 liability.

43. Mr. Estoll advised that unless the Schlachtes' signed a Closing Agreement they would be subjected to collection to tax for both 2000 and 2003 on the same transactions and that collection would be pursued for the tax as to both years. The Schlachtes, through their legal counsel, responded by advising Mr. Estoll that this would be an attempt to collect a debt that the collector knew was not owed, a violation of the Fair Debt Collection Practices Act for a debt collector and a violation of 26 U.S.C. 7433.

44. Mr. Estoll's successor, Linda Hite, confirmed the IRS position that the 2003 liability would not be withdrawn unless the Schlachtes sent written assurance that the matter would not be pursued in court. However, Ms. Hite represented that the revenue officer had been notified that the liability in 2003 was a duplication of the 2000 liability and that the IRS could not legally collect tax on the same income twice. (Exhibit V).

45. Contrary to Ms. Hite's assertion the IRS has pursued collection of both amounts and has announced the intention to continue to do so. (Exhibit W).

46.  On approximately June 19, 2007 the Schlachtes paid the tax due for the 2000 tax year. (Exhibit X)

47.  The IRS continues to pursue collection of the tax in 2003 even though the IRS acknowledges that this is a duplicate tax on the Derivum Transactions, the tax can be due in only one year, the tax has been paid for the highest year, the Schlachtes will not owe additional tax if 2000 is determined to be the correct reporting year for the Derivium Transactions, or will be owed a refund if 2003 is found to be the correct year.

48.  As grounds for recovery, Schlachtes state that they are entitled to a refund of taxes paid with interest in respect to the 2000 1040 of $842,782 because the Derivium Transactions were either a loan as shown by the documents or, in the alternative, a theft. Under either theory the Schlachtes would not record income from the transaction in 2000.

49.  The Internal Revenue Service erred by impermissibly subjecting the Derivium transactions to income tax twice, once in 2000 and a second time in 2003.

50.  The Internal Revenue Service erred by attempting to collect tax on the Derivium transactions twice, once in 2000 and a second time in 2003.

COMPLAINT

Schlachtes are the sole owners of their claim and have made no assignment of such

claim.

WHEREFORE, Plaintiffs pray for judgment against the Defendant in the

amount of $842,782, or such greater amount as they may be entitled to, together

with costs and interest as allowed by law, and for such further relief as the Court

may deem appropriate.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a jury trial on all issues raised by the Complaint.


Dated this 20th day of December, 2007.


ISAACSON & WILSON, P.S.


Mark J. Wilson, Cal. Bar No. 96985
701 5th Avenue, Suite 5810
Seattle, Washington 98104
Tel: (206) 448-1011
Fax: (206) 448-1022
Attorney for Plaintiffs CARL SCHLACHTE
and NANCY SCHLACHTE

# EXHIBIT A



**DERIVIUM CAPITAL**

**MASTER AGREEMENT TO PROVIDE FINANCING AND CUSTODIAL SERVICES**

This Master Agreement (hereinafter "Agreement") is entered into this 14th day of June, 2000 between Derivium Capital, LLC, located in Charleston, SC ("DC") and Carl Schlachte, located in Mountain View, CA ("Client"). This Agreement is made for the purpose of engaging DC to provide or arrange financing(s) and to provide custodial services to the Client, with respect to certain properties and assets ("Properties") to be pledged as security, the details of which financing and Properties are to be set out in loan term sheets and attached hereto as Schedule(s) A ("Schedule(s) A").

## 1. SERVICES TO BE PROVIDED BY DC

DC is hereby appointed Custodian of the Properties and authorized to act on behalf of the Client with respect to the Properties for the purposes of:

a) Providing or arranging financing by way of one or more loans (the "Loan(s)") in accordance with terms to be agreed upon by the parties and set out in loan term sheets and attached hereto as Schedule(s) A.

b) Holding cash, securities, or other liquid assets (the "Client Liquid Assets") on behalf of the Client and acceptable to DC as collateral.

c) Voting shares and receiving dividends or interest on securities held as collateral.

## 2. AMOUNT & TERMS OF FINANCING

The terms of each Loan are herein contained in the attached Schedule(s) A. The exact loan amounts will be based upon loan-to-value considerations and the results of due diligence. The net loan proceeds may be distributed at one time or on sequential dates, as instructed by Client.

## 3. FUNDING OF LOAN

The contemplated Loan(s) will be funded according to the terms identified in one or more term sheets, which will be labeled as Schedule A, individually numbered and signed by both parties, and, on signing, considered a part of and merged into this Master Agreement. The Client understands that by transferring securities as collateral to DC and under the terms of the Agreement, the Client gives DC and/or its assigns the right, without requirement of notice to or consent of the Client, to assign, transfer, pledge, repledge, hypothecate, rehypothecate, lend, encumber, short sell, and/or sell outright some or all of the securities during the period covered by the loan. The Client understands that DC and/or its assigns have the right to receive and retain the benefits from any such transactions and that the Client is not entitled to these benefits during the term of a loan. The Client agrees to assist the relevant entities in completing all requisite documents that may be necessary to accomplish such transfers.

## 4. RETURN OF CLIENT COLLATERAL

DC agrees to return, at the end of the loan term, the same number of shares of the same securities received as collateral (as conditioned in the next sentence), as set out and defined in Schedule(s) A attached hereto, upon the Client satisfying in full all outstanding loan balances, including accrued interest. Said collateral shall reflect any and all stock splits, conversions, exchanges, mergers, or other distributions, except dividends credited toward interest due.

## 5. REGISTRATION AND SUBCUSTODIANS

DC may place the Client Assets i) with any domestic or foreign depository or clearing corporation or system that provides handling, clearing or safekeeping services; ii) with the issuer of a security in non-certificate form; iii) with any domestic or foreign bank or depository as subcustodian; and DC will pay the fees and expenses of the foregoing entities.

DC _____                                MLA-1                        Client(s) _____



**DERIVIUM
CAPITAL**

**MASTER AGREEMENT TO PROVIDE
FINANCING AND CUSTODIAL SERVICES**

6. **CLIENT REPRESENTATIONS & WARRANTIES**
   Client agrees to provide information necessary to the contemplated transactions in a timely, complete, and accurate manner. The Client further represents and warrants that the collateral submitted is duly owned by Client, is freely transferable, and that any and all liens against the collateral have been disclosed to DC. Client further warrants that all statements and associated documentation provided in connection with the application for any Loan(s) are true and complete and do not omit any facts or information material to the evaluation of the loan request, and that loan proceeds will not be used to purchase margin stock per Regulation U of the Federal Reserve Board of Governors of the United States.

7. **INDEMNITY**
   DC makes no warranties regarding DC's ability to fund or find a funder. Final terms of each Loan(s) shall be negotiated and set out in separate Loan term sheets to be attached hereto as Schedule(s) A. Neither party is bound to any one Loan until both parties have i) executed both the MLA and the Schedule A for that Loan; ii) the Client has delivered acceptable collateral shares; and iii) DC has initiated the establishment of hedging transactions for that Loan.

8. **SOUTH CAROLINA LAW TO APPLY**
   This Agreement shall be construed under and in accordance with the laws of the State of South Carolina, and all obligations of the parties hereunder shall be deemed to have been performed in Charleston, South Carolina.

9. **PARTIES BOUND**
   This Agreement shall be binding on and inure to the benefit of the parties hereto and their respective heirs, executors, administrators, legal representatives, successors, and or assigns except as otherwise expressly provided herein.

10. **TIME IS OF THE ESSENCE**
    Time is of the essence in this Agreement.

11. **FURTHER ACTS**
    In addition to the acts contemplated herein, the parties hereto agree to perform or cause to be performed, any and all such further acts as may be reasonably necessary to consummate the transactions contemplated hereby.

12. **ARBITRATION**
    The parties to this Agreement, and their respective employees, officers, principals, directors, attorneys and agents hereby agree to submit to arbitration any claims, disputes and controversies between them relating to this agreement. It is further agreed that such arbitration shall proceed in Charleston, South Carolina, and shall be conducted in accordance with the Commercial Arbitration Rules of the American Arbitration Association ("AAA"). Arbitration shall be before a single neutral arbitrator who shall be an attorney who has practiced in the area of commercial law for at least ten years or a retired judge at the District court or Appellate court level, selected in accordance with the rules of the Commercial Rules of the AAA and shall proceed under the Expedited Procedures of these rules. Each party shall bear its own costs and expenses and an equal share of the arbitrator's fees and administrative fees of arbitration.

DC _____                          MLA-2                          Client(s) _____



**DERIVIUM
CAPITAL**

**MASTER AGREEMENT TO PROVIDE
FINANCING AND CUSTODIAL SERVICES**

13. **GENERAL**

   a) This Agreement constitutes the sole agreement of the parties hereto and supersedes any prior understanding or written or oral agreements between the parties respecting the subject matter. This Agreement may be amended only by a mutual agreement of the parties in writing specifically referencing this Agreement.

   b) This Agreement may be terminated by either party at any time prior to the funding of a loan, in whole or in part and as cash or as credit to cover any existing obligations.

   c) Signed copies of this Agreement and other related documents may be transmitted by facsimile and, on receipt, shall be treated as originals and legally binding.

   d) There are no other representations, warranties, collateral agreements or conditions, which affect this Agreement other than as expressed herein and in the attached schedules.

14. **NOTICE BY THE PARTIES**

   a) Any notice to be given hereunder by either party may be effected verbally or in writing and, if verbal, confirmed in writing within twenty-four hours by facsimile or by overnight mail.

   b) Any tender, delivery, or notice made by facsimile shall be deemed received as of transmission; and any tender, delivery or notice made by mail shall be deemed received as of mailing.

   c) The Client's official address and telephone and facsimile numbers for notifications regarding this Agreement and related loan transactions are:
   1200 Charleston Road, Mountain View, CA
   Tel: 650-312-9850
   Fax: 650-312-9056

   d) DC's official address and telephone and facsimile numbers for notifications regarding this Agreement and related loan transactions are:
   Parkshore Centre, Suite 125, One Poston Road, Charleston, SC 29407
   Tel: (843) 556-6211
   Fax: (843) 556-3434

For: **Derivium Capital, LLC**
Charleston, SC

For:   **Carl Schlachte**
Mountain View, CA

_____        _____        _____        26 JUN-00
Charles D. Cathcart                Date           Carl Schlachte                                Date
President

MLA-3

AUG-22-2000  09:57      RIVIUM CAPITAL                    415 983 9510      P.02/02



**DERIVIUM
CAPITAL**

### SCHEDULE A-1 REV 2 8/21/00
### PROPERTY DESCRIPTION AND LOAN TERMS

This Schedule A (Loan Number:_____), dated June 14th, 2000, is executed in connection with the Master Agreement to Provide Financing and Custodial Services entered into between Derivium Capital, LLC ("DC") and Carl Schlachte("Client") on June 14th, 2000.

1. **Property Description:** 66,266 ADRs of ARM Holdings PLC (ARMHY).

2. **Estimated Value:** $2,264,088.20 (as of 8/21/00, at $34 1/6 per ADR).

3. **Anticipated Loan Amount:** 90% of the market value on closing, in part or in whole.

4. **Interest Rate:** 10.50%, compounded annually, accruing until and due at maturity.

5. **Cash vs. Accrual:** All Dividends will be received as cash payments against interest due, with the balance of interest owed to accrue until maturity date.

6. **Term:** 3 years, starting from the date on which final loan proceeds are delivered on the loan transaction.

7. **Amortization:** None.

8. **Prepayment Penalty:** 3 year lockout, no prepayment before maturity.

9. **Margin Requirement:** None, beyond initial collateral.

10. **Non-Callable:** Lender cannot call loan before maturity.

11. **Non-Recourse:** Non-recourse to borrower, recourse against the collateral only.

12. **Renewable:** The loan will renew at borrower's request for an additional term or terms, on the maturity date or dates, within DC's prevailing conditions and terms for loans at the time of renewal. On the renewal of any loan for which the collateral value on maturity does not equal or exceed the payoff amount divided by 0.9, there will be a renewal fee, which will be calculated as a percentage of the original collateral value. The percentage will vary according to the market capitalization of the securities at the time of the renewal, as follows: Large Caps at 4.5%, Mid Caps at 5.5%, Small Caps at 6.5%.

13. **Closing:** Upon receipt of securities and establishment of DC's hedging transactions.

For: **Derivium Capital, LLC**  
Charleston, SC

For: Carl Schlachte  
Mountain View, CA

_____  
Charles D. Cathcart  
President

_____  
Date

_____  
Carl Schlachte

_8/22/00_  
Date



**DERIVIUM CAPITAL**

SCHEDULE A-2
PROPERTY DESCRIPTION AND LOAN TERMS

This Schedule A (Loan Number:_____), dated August 15th, 2000, is executed in connection with the Master Agreement to Provide Financing and Custodial Services entered into between Derivium Capital, LLC ("DC") and Carl Schlachte ("Client") on June 14th, 2000.

1.  **Property Description:** 8,860 ADRs of ARM Holdings PLC (ARMHY).

2.  **Estimated Value:** $274,660.00 (as of 08/15/00, at $31 per ADR).

3.  **Anticipated Loan Amount:** 90% of the market value on closing, in part or in whole.

4.  **Interest Rate:** 10.50%, compounded annually, accruing until and due at maturity.

5.  **Cash vs. Accrual:** All Dividends will be received as cash payments against interest due, with the balance of interest owed to accrue until maturity date.

6.  **Term:** 3 years, starting from the date on which final loan proceeds are delivered on the loan transaction.

7.  **Amortization:** None.

8.  **Prepayment Penalty:** 3 year lockout, no prepayment before maturity.

9.  **Margin Requirement:** None, beyond initial collateral.

10. **Non-Callable:** Lender cannot call loan before maturity.

11. **Non-Recourse:** Non-recourse to borrower, recourse against the collateral only.

12. **Renewable:** The loan will renew at borrower's request for an additional term or terms, on the maturity date or dates, within DC's prevailing conditions and terms for loans at the time of renewal. On the renewal of any loan for which the collateral value on maturity does not equal or exceed the payoff amount divided by 0.9, there will be a renewal fee, which will be calculated as a percentage of the original collateral value. The percentage will vary according to the market capitalization of the securities at the time of the renewal, as follows: Large Caps at 4.5%, Mid Caps at 5.5%, Small Caps at 6.5%.

13. **Closing:** Upon receipt of securities and establishment of DC's hedging transactions.

For:  Derivium Capital, LLC
      Charleston, SC

For:      Carl Schlachte
          Mountain View, CA

_Carl Schlachte_                                    8/21/00

_____     _____          _____     _____
Charles D. Cathcart           Date          Carl Schlachte                Date
President

DERIVIUM CAPITAL, LLC   PARKSHORE CENTRE   ONE POSTON ROAD   SUITE 125   CHARLESTON SC 29407   TEL 877 DERIVIUM   WWW.DERIVIUM.COM

# EXHIBIT B

Mr. Patrick Kelley
Operations Manager
Derivium Capital, LLC
Parkshore Centre
One Poston Road, Suite 125
Charleston, SC 29407

Re: Hedged Valuation Authorization

Dear Mr. Kelley:

This letter authorizes Derivium Capital ("DC") to proceed with hedging transactions on my/our stock collateral as detailed on Schedule A- 2 dated 8/15/00 in order to achieve the following objective:

> Please establish a minimum average hedged valuation of $33 (Per instructions from Farallon Advisors ) per share for my/our #8860 of shares in ARM Holdings PLC "ARMHY"

This Authorization supercedes all previous verbal and/or written authorizations, if any, with regard to my objective for a minimum average hedged valuation for this loan transaction.

If I/we transfer debt with any of the collateral, I/we understand that, regardless of the aforementioned instruction, DC will proceed with hedging transactions on enough collateral to: 1) provide adequate loan proceeds to cover the debt submitted, or 2) provide a minimum of $90,000 in gross loan proceeds, whichever is greater. I/we understand that DC will then continue implementing hedging transactions on the balance of the collateral, if any, only at such time as the overall parameters established in this Authorization can be met or exceeded, or until I/we authorize DC to proceed otherwise.

I/we also understand that if I/we choose to modify these parameters, in any way, said modifications must be provided in writing to an authorized DC representative.

Sincerely,

Carl Schlachte                     8/22/00
Carl Schlachte                     Date

# EXHIBIT C



Operations Office
Parkshore Centre, Suite 125
One Poston Road, Charleston, SC 29407
Tel 843-556-6211   Fax 843-556-3434
Toll Free  1-877-DERIVIUM (1-877-337-4848)

**DERIVIUM
CAPITAL**

**ACTIVITY CONFIRMATION**
Page 1 of 1

Carl Schlachte
1200 Charleston Road
Mountain View, CA

| | |
|---|---|
| REPORT DATE: | 8/24/00 |
| LOAN AGREEMENT DATE: | 6/14/00 |
| CLIENT NUMBER: | 34462701 |
| LOAN NUMBER: | 34462701-2-8230 |

**SECURITIES HEDGED to date:**

| Date | Symbol | Shares Hedged | Hedged Value Per Share | Shares Remaining | Hedged Value |
|---|---|---|---|---|---|
| 8/24/00 | ARMHY | 8,860 | 33.97827 | 0 | $301,047.50 |

| | |
|---|---|
| **Total Hedged Value of Loan Collateral** | **$301,047.50** |
| **Actual Loan Amount at 90% of Hedged Value** | **$270,942.75** |

<u>Original Valuation:</u>
$292,380.00

<u>Projected Loan Amount:</u>
$263,142.00

<u>Interest Rate:</u>
10.50%

<u>Loan Term:</u>
3 years

**SUMMARY:**

| | |
|---|---|
| Amount advanced to client to date: | $0.00 |
| **Net due client as a result of hedging activities to date:** | **$270,942.75** |
| Distribution by broker/dealer to client's broker/dealer account: | $0.00 |
| Distribution by Derivium to client's designated destination: | $270,942.75 |
| **Date scheduled for transfer of amount due:** | **8/28/00** |

This statement reflects the status of your Derivium Capital, LLC loan as of the date above.  Any discrepancy between this statement and your understanding or your instructions and provisions of the Master Agreement governing your loan should be reported to Derivium Capital, LLC as soon as possible and no later than five business days from receipt of this statement.  If you have any questions regarding this document, please contact the Derivium Capital LLC's Operations Office.

# EXHIBIT D



**DERIVIUM CAPITAL**

**SCHEDULE A-2**
**PROPERTY DESCRIPTION AND LOAN TERMS**

This Schedule A (Loan Number:_____), dated August 15th, 2000, is executed in connection with the Master Agreement to Provide Financing and Custodial Services entered into between Derivium Capital, LLC ("DC") and Carl Schlachte ("Client") on June 14th, 2000.

| | | |
|---|---|---|
| 1. | Property Description: | 8,860 ADRs of ARM Holdings PLC (ARMHY). |
| 2. | Estimated Value: | $274,660.00 (as of 08/15/00, at $31 per ADR). |
| 3. | Anticipated Loan Amount: | 90% of the market value on closing, in part or in whole. |
| 4. | Interest Rate: | 10.50%, compounded annually, accruing until and due at maturity. |
| 5. | Cash vs. Accrual: | All Dividends will be received as cash payments against interest due, with the balance of interest owed to accrue until maturity date. |
| 6. | Term: | 3 years, starting from the date on which final loan proceeds are delivered on the loan transaction. |
| 7. | Amortization: | None. |
| 8. | Prepayment Penalty: | 3 year lockout, no prepayment before maturity. |
| 9. | Margin Requirement: | None, beyond initial collateral. |
| 10. | Non-Callable: | Lender cannot call loan before maturity. |
| 11. | Non-Recourse: | Non-recourse to borrower, recourse against the collateral only. |
| 12. | Renewable: | The loan will renew at borrower's request for an additional term or terms, on the maturity date or dates, within DC's prevailing conditions and terms for loans at the time of renewal. On the renewal of any loan for which the collateral value on maturity does not equal or exceed the payoff amount divided by 0.9, there will be a renewal fee, which will be calculated as a percentage of the original collateral value. The percentage will vary according to the market capitalization of the securities at the time of the renewal, as follows: Large Caps at 4.5%, Mid Caps at 5.5%, Small Caps at 6.5%. |
| 13. | Closing: | Upon receipt of securities and establishment of DC's hedging transactions. |

For:    **Derivium Capital, LLC**
          Charleston, SC

For:    **Carl Schlachte**
          Mountain View, CA

_____    _____    _Carl Schlachte_ (signature)    _8/21/00_
Charles D. Cathcart              Date        Carl Schlachte                      Date
President

DERIVIUM CAPITAL, LLC  PARKSHORE CENTRE  ONE POSTON ROAD  SUITE 125  CHARLESTON SC 29407  TEL 877 DERIVIUM  WWW.DERIVIUM.COM

# EXHIBIT E

Date: 26-JUN-00

Attn: Morgan Stanley / Solveig Mickelson
555 California St.
City San Francisco    State CA  Zip 94101
Tel: 650-234-5928 Fax: 650-234-5961

Please accept this as my/our instruction to transfer via DTC the following shares of common stock from my/our account (# 14-A3047    ) to:

J.C. Bradford & Co.
DTC #0765
For further credit to the account of : Derivium Capital, LLC
Account Number: 114-24884-18-426

| Company | Symbol | Shares |
|---------|--------|--------|
| ARM Holdings plc | ARMHY | 66,266 |

If I/we choose to fax this instruction to initiate the transfer, I/we will also forward the original via regular mail request. You and J.C. Bradford & Co. have my/our authorization to inform Derivium Capital, LLC of matters related to this instruction.

If you have any questions, please contact me/us via telephone at 650-254-2801. Thank you for your prompt assistance in this matter.

Sincerely,

Signature

Carl Schlachte

Cc: Derivium Capital, LLC
Operations Office
Fax: 843-556-3434

# EXHIBIT F

Mr. Patrick Kelley
Operations Manager
Derivium Capital, LLC
Parkshore Centre
One Poston Road, Suite 125
Charleston, SC 29407 .

Re: Hedged Valuation Authorization

Dear Mr. Kelley:

This letter authorizes Derivium Capital ("DC") to proceed with hedging transactions on my/our stock collateral as detailed on Schedule A-1 dated 6/27/00 in order to achieve the following objective:

> Please establish a minimum average hedged valuation of $33 (Per instructions from Farallon Advisors ) per share for my/our #66,266of shares in ARM Holdings PLC "ARMHY"

This Authorization supercedes all previous verbal and/or written authorizations, if any, with regard to my objective for a minimum average hedged valuation for this loan transaction.

If I/we transfer debt with any of the collateral, I/we understand that, regardless of the aforementioned instruction, DC will proceed with hedging transactions on enough collateral to: 1) provide adequate loan proceeds to cover the debt submitted, or 2) provide a minimum of $90,000 in gross loan proceeds, whichever is greater. I/we understand that DC will then continue implementing hedging transactions on the balance of the collateral, if any, only at such time as the overall parameters established in this Authorization can be met or exceeded, or until I/we authorize DC to proceed otherwise.

I/we also understand that if I/we choose to modify these parameters, in any way, said modifications must be provided in writing to an authorized DC representative.

Sincerely,

Carl Schlachte          Date  8/21/00

# EXHIBIT G

FROM: SHAWN WHITAKER  TO: REGAN CHARRINGTON                DATE: 8/24/00  TIME: 4543#                     PAGE 2 OF 3



Operations Office
Parkshore Centre, Suite 125
One Poston Road, Charleston, SC 29407
Tel 843-556-6211  Fax 843-556-3434
Toll Free  1-877-DERIVIUM (1-877-337-4848)

**DERIVIUM CAPITAL**

## ACTIVITY CONFIRMATION
Page 1 of 1

Carl Schlachte
1200 Charleston Road
Mountain View, CA

REPORT DATE:            8/24/00
LOAN AGREEMENT DATE:    6/14/00
CLIENT NUMBER:          34462701
LOAN NUMBER:            3446701-1-6300

### SECURITIES HEDGED to date:

| Date | Symbol | Shares Hedged | Hedged Value Per Share | Shares Remaining | Hedged Value |
|------|--------|---------------|------------------------|------------------|--------------|
| 8/24/00 | ARMHY | 66,266 | 33.96064 | 0 | $2,250,435.76 |

Total Hedged Value of Loan Collateral                    $2,250,435.76
Actual Loan Amount at 90% of Hedged Value                $2,025,392.18

**Original Valuation:**
$2,186,778.00

**Projected Loan Amount:**
$1,968,100.20

**Interest Rate:**
10.50%

**Loan Term:**
3 years

### SUMMARY:

| | |
|---|---|
| Amount advanced to client to date: | $0.00 |
| Net due client as a result of hedging activities to date: | $2,025,392.18 |
| Distribution by broker/dealer to client's broker/dealer account: | $0.00 |
| Distribution by Derivium to client's designated destination: | $2,025,392.18 |
| Date scheduled for transfer of amount due: | 8/28/00 |

This statement reflects the status of your Derivium Capital, LLC loan as of the date above.  Any discrepancy between this statement and your understanding or your instructions and provisions of the Master Agreement governing your loan should be reported to Derivium Capital, LLC as soon as possible and no later than five business days from receipt of this statement.  If you have any questions regarding this document, please contact the Derivium Capital LLC's Operations Office.

# EXHIBIT H

[THE MECHANICS OF WEALTH]

29 September, 2000

Carl Schlacte
5934 Corte Venado
Pleasanton, CA 94566

Dear Mr. Schlachte:

Please find below a list of wire transfers sent to you from our account at First Union
National Bank and their corresponding Fed. Reference Numbers:

8/28/00      $1,560,000.00   First Star Bank   Fed Ref# 0829E3QPAA2C0120

8/28/00      $ 736,334.93    Citibank          Fed Ref# 0829E3QPAA2C0121

The funds wired to First Star Bank went to routing number 075000022 crediting account
name Strong Municipal Money Market account number 112737090 for further benefit of
Carl P. Schlachte, Jr. and Nancy C. Schlachte Joint Tenants account number 026-
2600399889.

The funds wired to Citibank went to routing number 02100008-9 crediting account
name Bear, Stearns Securities Corp. account number 092-53186, for further benefit of
Carl P. Schlachte & Nancy L. Cannon Schlacte Trustees of The Schlacte Family Trust
DTD 2/17/00 account number 646-01624-12.

Sincerely,

*Catherine Knudsen*

Catherine Knudsen
Operations Associate

**DERIVIUM
CAPITAL**

OPERATIONS
PARKSHORE CENTRE
ONE PRESTON ROAD
SUITE 125
CHARLESTON SC 29407
TEL 877 DERIVIUM
TEL 843 556 8271
FAX 843 556 3454
WWW.DERIVIUM.COM

Document2

# EXHIBIT I

3

PAGE NO-0001                                              IRS EMPLOYEE 2720751422

DATE REQUESTED 02-06-2007                            PRINT DATE 02-06-2007

FORM NUMBER: 1040                                     TAX PERIOD: DEC  2000

                    TAXPAYER IDENTIFICATION NUMBER:
        ** SPOUSE TAXPAYER IDENTIFICATION NUMBER:

        CARL P & NANCY C SCHLACHTE
        906 GRAY FOX CIR
        PLEASANTON          CA 94566-6921-066          BODC-SB BODCLC-W

<<<<POWER OF ATTORNEY/TAX INFORMATION AUTHORIZATION (POA/TIA) ON FILE>>>>

--- ANY MINUS BELOW SIGNIFIES A CREDIT AMOUNT ---

        ACCOUNT BALANCE:        1,031,101.78
        ACCRUED INTEREST:         173,747.06    AS OF 02-19-2007
        ACCRUED PENALTY:               0.00    AS OF 02-19-2007

        ACCOUNT BALANCE
           PLUS ACCRUALS:       1,204,848.84


** EXEMPTIONS: 06                      **FILING STATUS: MARRIED FILING JOINT
** ADJUSTED GROSS INCOME:  2,500,547.00
** TAXABLE INCOME:         2,439,807.00
   TAX PER RETURN:            92,899.00

** PER RETURN OR AS ADJUSTED

04-15-2001 RETURN DUE DATE OR RETURN RECEIVED DATE (WHICHEVER IS LATER)
07-02-2001 PROCESSING DATE

                              TRANSACTIONS

                                                       MONEY AMOUNT
CODE            EXPLANATION                   DATE     (IF APPLICABLE)
 150 RETURN FILED AND TAX ASSESSED         07-02-2001      92,899.00
     29222-145-33613-1
 806 CREDIT FROM WITHHELD TAXES            04-15-2001      65,990.00-
 430 ESTIMATED TAX DECLARATION             04-12-2000       4,029.00-
 430 ESTIMATED TAX DECLARATION             06-14-2000       4,625.00-
 430 ESTIMATED TAX DECLARATION             09-17-2000       6,680.00-
 430 ESTIMATED TAX DECLARATION             01-08-2001       5,000.00-
 610 PAYMENT WITH RETURN                   04-18-2001      26,909.00-
 846 REFUND                                07-02-2001      20,423.32
 776 INTEREST DUE TAXPAYER                 07-02-2001          89.32-
 766 IMMEDIATE TAX RELIEF CREDIT           08-13-2001         600.00-
 290 ADDITIONAL TAX ASSESSED               08-13-2001           0.00
     29254-999-05099-1  00000008
 846 REFUND                                08-13-2001         600.00
 640 ADVANCE PAYMENT OF DEFICIENCY         05-26-2002       2,593.00-
 290 ADDITIONAL TAX ASSESSED               07-08-2002       2,433.00
     29254-565-50125-2  00000008
 196 INTEREST ASSESSED                     07-08-2002         147.60

***********************CONTINUED ON NEXT PAGE***************************

4

@

|   | 00000008 | | |
|---|---|---|---|
| 846 | REFUND | 07-08-2002 | 12.46 |
| 776 | INTEREST DUE TAXPAYER | 07-08-2002 | 0.06- |
| 670 | SUBSEQUENT PAYMENT | 04-05-2004 | 100,000.00- |
| 290 | ADDITIONAL TAX ASSESSED | 05-03-2004 | 0.00 |
|   | 89254-507-05773-4  00000008 | | |
| 290 | QUICK ASSESSMENT | 04-15-2004 | 842,782.00 |
|   | 89251-106-12196-4 | | |
| 190 | INTEREST ASSESSED | 04-15-2004 | 157,439.68 |
|   | 00000008 | | |
| 777 | INTEREST DUE TAXPAYER REVERSED | 07-02-2001 | 89.32 |
| 777 | INTEREST DUE TAXPAYER REVERSED | 07-08-2002 | 0.06 |
| 670 | SUBSEQUENT PAYMENT | 01-05-2005 | 1,051.01- |
| 971 | INTENT TO LEVY COLLECTION DUE PROCESS NOTICE | 02-07-2005 | |
|   | LEVY NOTICE ISSUED | | |
| 971 | INTENT TO LEVY COLLECTION DUE PROCESS NOTICE | 02-07-2005 | |
|   | LEVY NOTICE ISSUED | | |
| 960 | RECEIVED POA/TIA | 02-17-2005 | |
| 582 | FEDERAL TAX LIEN | 06-10-2005 | |
| 360 | FEES AND COLLECTION COSTS | 07-11-2005 | 24.00 |
| 360 | FEES AND COLLECTION COSTS | 07-18-2005 | 24.00 |
| 706 | OVERPAID CREDIT APPLIED | 04-15-2005 | 43,958.00- |
|   | 1040       200412 | | |
| 300 | ADDITIONAL TAX ASSESSED BY EXAMINATION | 09-04-2006 | 0.00 |
|   | 29247-626-10032-6  00000008 | | |
| 706 | OVERPAID CREDIT APPLIED | 04-15-2006 | 3,033.00- |
|   | 1040       200512 | | |
| 276 | FAILURE TO PAY TAX PENALTY | 11-06-2006 | 178,784.73 |
|   | 00000008 | | |
| 300 | ADDITIONAL TAX ASSESSED BY EXAMINATION | 02-12-2007 | 0.00 |
|   | 29247-419-70004-7  00000008 | | |

# EXHIBIT J



**B A N C R O F T**

July 10, 2003

Carl Schlachte
906 Grey Fox Circle
Pleasanton, CA 94566

Re:     Loan Transaction Number: 34462701-2-8230
        Maturity Date: August 29, 2003
        Principal and Interest Due: $365,564.80

Dear Mr. Schlachte:

The above referenced transaction will mature on August 29, 2003 ("Maturity Date"). The total principal and interest that will be due, and payable on the Maturity Date is $365,564.80 ("Maturity Amount"). The collateral for this transaction is:

    8,860 Shares of ARMHY, Value $34,908.40 (as of 07/10/03, at $3.94 per share)

Please note that the Maturity Amount is due in full and payable directly to Bancroft Ventures Limited ("Bancroft"), no later than 5:00pm Eastern Time on the first business day following the Maturity Date, and written notification regarding your maturity selection must be provided to Bancroft's Loan Processing Center using the enclosed notification form no later than 5:00pm Eastern Time on the Maturity Date.

Pursuant to the terms and conditions of your Master Agreement dated June 14, 2000, at maturity you will have the following alternatives to choose from:

1.  Pay the Maturity Amount and Recover Your Collateral.

    You may pay the Maturity Amount in full and recover your collateral. To effect this alternative, your funds must be received and cleared for deposit in an account designated by Bancroft no later than 5:00pm Eastern Time on the first business day following the Maturity Date. Once your transaction has matured and your payment has cleared, the process of unwinding hedging transactions will begin. Your collateral will then be delivered via DTC transfer to your designated brokerage account within two business days following completion of the unwinding of hedging transactions.

    IMPORTANT NOTE: If you select this alternative and your funds have not cleared by 5:00pm Eastern Time on the first business day following the Maturity Date, your collateral will be forfeited at that time in satisfaction of your debt obligation. If your collateral is forfeited, the value of your collateral at maturity will be determined by the average of the closing prices of your collateral shares, as reported by the Wall Street Journal, for the ten trading days prior to the Maturity Date ("Collateral Value"). If your Collateral Value exceeds the Maturity Amount, you will still be eligible to receive the amount of your Collateral Value that exceeds the Maturity Amount ("Net Collateral Value") in cash.

2.  Renew or Refinance the Transaction for an Additional Term

    You may elect to renew for an additional term, or refinance your transaction by pledging your collateral for an additional term, as follows:

    If your Collateral Value is less than the Maturity Amount, you may renew your transaction, for a subsequent 3-year period (or longer), pursuant to the terms stated in the Renewable clause in the Schedule A for your maturing transaction. Please note that upon selecting this alternative you will need to execute a new Master Loan Financing and Security Agreement, Rider (if you have not already done so) and related Schedule (s) for the new term and pay the renewal fee of $16,557.61 (Original Collateral Value multiplied by 5.50% per the terms in your Schedule A-2, which governs the renewal of this transaction). To effect this alternative, your funds for the renewal fee must be received and cleared for deposit in an account designated by Bancroft no later than 5:00pm Eastern Time on the first business day following the Maturity Date. The beginning balance of your loan for the new term will be the Maturity Amount (in which case you will not be eligible for

ML1241

# EXHIBIT K



# BANCROFT

September 03, 2003

Carl Schlachte
906 Grey Fox Circle
Pleasanton, CA 94566

Re: Maturity Valuation Report for Loan Number 34462701-2-8230

Dear Mr. Schlachte:

Your stock loan transaction number 34462701-2-8230 matured on August 29, 2003. Following are details of this loan transaction as of the maturity date:

| | |
|---|---|
| Loan Number: | 34462701-2-8230 |
| Loan Date: | August 29, 2000 |
| Maturity Date: | August 29, 2003 |
| Loan Amount: | $270,942.75 |
| Balance Due: | $365,564.80 |
| Interest Accrued During Loan Term: | $94,622.05 |
| Payments Applied: | $0.00 |
| Dividends Applied: | $0.00 |
| Collateral (as of maturity date): | 8,860 Shares of ARMHY |
| Collateral Value*: | $43,430.83 |
| Net Difference (Collateral Value* Less Balance Due): | ($322,133.97) |
| Loan Status: | Matured, Forfeited |

*Collateral Value is calculated using the average of the closing prices, as reported by the *Wall Street Journal*, for the ten trading days prior to the maturity date.

Please contact the Loan Processing Center at 1-843-725-1130 if we can help address any questions you may have regarding this report. We appreciate the opportunity to be of service to you.

Sincerely,

*Rebecca D. Trude*

Rebecca D. Trude
Operations Associate

MVR030224

**BANCROFT VENTURES LIMITED**
**IOMA HOUSE, HOPE STREET, DOUGLAS, ISLE OF MAN IM1 1AP BRITISH ISLES**
**BOARD OF DIRECTORS: C.G. BOWEN, N.H. WOOD, CO. REG. NO. 100864C**
**TEL: +44 (0)1624 666 241  FAX: +44 (0)1624 666 242   www.bancroftventures.co.im**

# EXHIBIT L



# BANCROFT

August 20, 2003

Carl Schlachte
906 Grey Fox Circle
Pleasanton, CA. 94566

Re: SECOND NOTICE — Maturing Loan Transaction #34462701-1-6300

Dear Mr. Schlachte:

On July 10, 2003, Bancroft Loan Processing sent a notification to you of the pending maturity of your stock loan transaction number 34462701-1-6300. As of the date of this letter, no response has been received from you regarding your intentions at loan maturity.

As stated in the previous notification, in order to ensure the timely completion of this transaction at maturity, Bancroft Loan Processing must have received your decision, in writing, at least seven (7) business days prior to August 29, 2003 (or no later than August 20, 2003). As this has not occurred, conclusion of your selected alternative at loan maturity may now be delayed for at least fifteen business days subsequent to August 29, 2003.

Please contact Bancroft Loan Processing immediately regarding this matter. If Bancroft Loan Processing is not in receipt of a clear written instruction from you as of 5:00pm Eastern Time on August 29, 2003 as to your election concerning the referenced loan, the loan will be closed, your collateral will be forfeited, and Bancroft will subsequently remit the net collateral value (the value of your collateral, as defined by the average prices for your collateral shares over the ten trading days prior to maturity, as quoted in the *Wall Street Journal*, that exceeds your loan's maturity amount), if any, to you in cash. Please be advised that collateral forfeiture may constitute a taxable event for you, so it is important that you seriously consider your alternatives and communicate your decision immediately. For your convenience, you may return your selection to Bancroft Loan Processing by fax at 843-725-1131.

Please contact Bancroft Loan Processing at 843-725-1130 if we can help address any questions you may have with regard to this process. We appreciate the opportunity to be of service to you, and we hope that we can continue to be of service in the future.

Sincerely,

*Rebecca D. Trude*

Rebecca D. Trude
Operations Associate

MLSDN22003

BANCROFT VENTURES LIMITED
IOMA HOUSE, HOPE STREET, DOUGLAS, ISLE OF MAN IM1 1AP BRITISH ISLES
BOARD OF DIRECTORS: C.G. BOWEN, N.H. WOOD, CO. REG. NO. 100864C
TEL: +44 (0)1624 666 241  FAX: +44 (0)1624 666 242  www.bancroftventures.co.im

Carl Schlachte
906 Grey Fox Circle
Pleasanton, CA 94566

| Loan Number | Maturity Date |
|---|---|
| 34462701-1-6300 | 8/29/2003 |
| 34462701-2-8230 | 8/29/2003 |



DERIVIUM
CAPITAL

# EXHIBIT M



# BANCROFT

September 03, 2003

Carl Schlachte
906 Grey Fox Circle
Pleasanton, CA 94566

Re: Maturity Valuation Report for Loan Number 34462701-1-6300

Dear Mr. Schlachte:

Your stock loan transaction number 34462701-1-6300 matured on August 29, 2003. Following are details of this loan transaction as of the maturity date:

| | |
|---|---|
| Loan Number: | 34462701-1-6300 |
| Loan Date: | August 29, 2000 |
| Maturity Date: | August 29, 2003 |
| Loan Amount: | $2,025,392.18 |
| Balance Due: | $2,732,725.21 |
| Interest Accrued During Loan Term: | $707,333.03 |
| Payments Applied: | $0.00 |
| Dividends Applied: | $0.00 |
| | |
| Collateral (as of maturity date): | 66,266 Shares of ARMHY |
| Collateral Value*: | $324,829.31 |
| | |
| Net Difference | |
| (Collateral Value* Less Balance Due): | ($2,407,895.90) |
| Loan Status: | Matured, Forfeited |

*Collateral Value is calculated using the average of the closing prices, as reported by the *Wall Street Journal*, for the ten trading days prior to the maturity date.

Please contact the Loan Processing Center at 1-843-725-1130 if we can help address any questions you may have regarding this report. We appreciate the opportunity to be of service to you.

Sincerely,

Rebecca D. Trude
Operations Associate

MVR030224

BANCROFT VENTURES LIMITED
IOMA HOUSE, HOPE STREET, DOUGLAS, ISLE OF MAN IM1 1AP BRITISH ISLES
BOARD OF DIRECTORS: C.G. BOWEN, N.H. WOOD, CO. REG. NO. 100864C
TEL: +44 (0)1624 666 241  FAX: +44 (0)1624 666 242  www.bancroftventures.co.im

# EXHIBIT N



# BANCROFT

September 03, 2003

Carl Schlachte
906 Grey Fox Circle
Pleasanton, CA 94566

Re: Maturity Valuation Report for Loan Number 34462701-1-6300

Dear Mr. Schlachte:

Your stock loan transaction number 34462701-1-6300 matured on August 29, 2003. Following are details of this loan transaction as of the maturity date:

| | |
|---|---|
| Loan Number: | 34462701-1-6300 |
| Loan Date: | August 29, 2000 |
| Maturity Date: | August 29, 2003 |
| Loan Amount: | $2,025,392.18 |
| Balance Due: | $2,732,725.21 |
| Interest Accrued During Loan Term: | $707,333.03 |
| Payments Applied: | $0.00 |
| Dividends Applied: | $0.00 |
| | |
| Collateral (as of maturity date): | 66,266 Shares of ARMHY |
| Collateral Value*: | $324,829.31 |
| | |
| Net Difference | |
| (Collateral Value* Less Balance Due): | ($2,407,895.90) |
| Loan Status: | Matured, Forfeited |

*Collateral Value is calculated using the average of the closing prices, as reported by the *Wall Street Journal*, for the ten trading days prior to the maturity date.

Please contact the Loan Processing Center at 1-843-725-1130 if we can help address any questions you may have regarding this report. We appreciate the opportunity to be of service to you.

Sincerely,

*Rebecca D. Trude*
Rebecca D. Trude
Operations Associate

MVR030224

**BANCROFT VENTURES LIMITED**
IOMA HOUSE, HOPE STREET, DOUGLAS, ISLE OF MAN IM1 1AP BRITISH ISLES
BOARD OF DIRECTORS: C.G. BOWEN, N.H. WOOD, CO. REG. NO. 100864C
TEL: +44 (0)1624 666 241  FAX: +44 (0)1624 666 242  www.bancroftventures.co.im

# EXHIBIT O



STATE OF CALIFORNIA
**FRANCHISE TAX BOARD**
P.O. Box 1673
Sacramento CA 95812-1673

February 11, 2004

CARL SCHLACHTE
906 GREY FOX CIR
PLEASANTON, CA 94566-

New California law authorizes the Franchise Tax Board to aggressively combat abusive tax
shelters and transactions by adding substantial penalties, along with new registration and
reporting requirements for both investors and promoters of abusive tax shelters.

Information available to the Franchise Tax Board indicates that you may have entered into one
or more transactions with First Security Capital and/or its successor, Derivium Capital. We
reviewed the documents related to the transactions in general. It is our position that these
transactions are sales of securities and reporting the transaction in a manner inconsistent to this
is incorrect and may constitute an abusive tax avoidance transaction. If you entered into these
transactions, your taxable income should include the gains from the sales of these securities.

California law provides a limited time opportunity for taxpayers who underreported their income
or tax liability using abusive tax shelters and transactions to amend their returns and limit the
risk of penalties, before we step-up our enforcement activities. These penalties are substantial
and can range from 20 percent to 75 percent of the underpayment, and include an added
penalty equal to 100 percent of the interest charged on any deficiency assessment.

This opportunity to come forward, which by statute is called the Voluntary Compliance Initiative,
applies to tax year 2002 and prior tax years. It is effective through April 15, 2004. **To participate
in the Voluntary Compliance Initiative** or get more information about the new abusive tax
shelter and transaction penalties, read the enclosed brochure, or:

- Visit our Voluntary Compliance Initiative Website at **www.ftb.ca.gov**
- Email us at vci@ftb.ca.gov
- Call our Voluntary Compliance Initiative hotline at (916) 845-3232, Monday – Friday,
  9:00 a.m. to 4:00 p.m.

This letter constitutes formal notification of the Voluntary Compliance Initiative pursuant to
California Revenue and Taxation Code Section 19751(e). If you participated in an abusive tax
shelter, and you do not participate in this initiative, you cannot avoid the abusive tax shelter and
transaction penalties by filing an amended return after April 15, 2004.

Winston Mah, Chief
Audit Division

# EXHIBIT P

**Form 1040X**

(Rev. November 2000)

Department of the Treasury - Internal Revenue Service

## Amended U.S. Individual Income Tax Return    FILE COPY

► See separate instructions.

OMB No. 1545-0091

This return is for calendar year ► **2000** , or fiscal year ended ►

| | |
|---|---|
| Your first name and initial **CARL P** | Last name **SCHLACHTE** |
| If a joint return, spouse's first name and initial **NANCY C** | Last name **SCHLACHTE** |

Your social security number (redacted)

Spouse's social security number (redacted)

Home address (no. and street) or P.O. box if mail is not delivered to your home

**906 GRAY FOX CIRCLE**

Apt. no.

Phone number

City, town or post office, state, and ZIP code. If you have a foreign address, see page 2 of the instructions.

**PLEASANTON          CA          94566**

For Paperwork Reduction Act Notice, see page 6.

A    If the name or address shown above is different from that shown on the original return, check here . . . . . . . . . . . . ►

B    Has the original return been changed or audited by the IRS or have you been notified that it will be? . . . . . . . . ☐ Yes  ☒ No

C    Filing status. Be sure to complete this line. Note. You cannot change from joint to separate returns after the due date.

On original return ► Single ☒  Married filing joint return ☐  Married filing separate return ☐  Head of household* ☐  Qualifying widow(er) ☐

On this return ► Single ☒  Married filing joint return ☐  Married filing separate return ☐  Head of household* ☐  Qualifying widow(er) ☐

* If the qualifying person is a child but not your dependent, see page 2.

| | Use Part II on the Back to Explain any Changes | | A. Original amount or as previously adjusted (see page 2) | B. Net change - amount of increase or (decrease) - explain in Part II | C. Correct amount |
|---|---|---|---|---|---|
| | **Income and Deductions (see pages 2-5)** | | | | |
| 1 | Adjusted gross income (see page 3) . . . . . . . . . . . | 1 | 393,680. | 2,106,867. | 2,500,547. |
| 2 | Itemized deductions or standard deduction (see page 3) . . . | 2 | 123,946. | -63,206. | 60,740. |
| 3 | Subtract line 2 from line 1 . . . . . . . . . . . . . . | 3 | 269,734. | 2,170,073. | 2,439,807. |
| 4 | Exemptions. If changing, fill in Parts I and II on the back . . | 4 | | NONE | NONE |
| 5 | Taxable income. Subtract line 4 from line 3 . . . . . . . | 5 | 269,734. | 2,170,073. | 2,439,807. |
| 6 | Tax (see page 4). Method used in col. C ___ **SCH D** ___ | 6 | 95,332. | 842,782. | 938,114. |
| 7 | Credits (see page 4) . . . . . . . . . . . . . . . . | 7 | | | |
| 8 | Subtract line 7 from line 6. Enter the result but not less than zero | 8 | 95,332. | 842,782. | 938,114. |
| 9 | Other taxes (see page 4) . . . . . . . . . . . . . . | 9 | | | |
| 10 | Total tax. Add lines 8 and 9 . . . . . . . . . . . . . | 10 | 95,332. | 842,782. | 938,114. |
| 11 | Federal income tax withheld and excess social security and RRTA tax withheld. If changing, see page 5 . . . . . . . | 11 | 65,990. | | 65,990. |
| 12 | Estimated tax payments, including amount applied from prior year's return . . . . . . . . . . . . . . . . . . | 12 | | | |
| 13 | Earned income credit (EIC) . . . . . . . . . . . . . | 13 | | | |
| 14 | Additional child tax credit from Form 8812 . . . . . . . | 14 | | | |
| 15 | Credits from Form 2439 or Form 4136 . . . . . . . . . | 15 | | | |
| 16 | Amount paid with request for extension of time to file (see page 5) | 16 | | | |
| 17 | Amount of tax paid with original return plus additional tax paid after it was filed . . . | 17 | | | 29,342. |
| 18 | Total payments. Add lines 11 through 17 in column C . . . | 18 | | | 95,332. |
| | **Refund or Amount You Owe** | | | | |
| 19 | Overpayment, if any, as shown on original return or as previously adjusted by the IRS | 19 | | | |
| 20 | Subtract line 19 from line 18 (see page 5) . . . . . . . | 20 | | | 95,332. |
| 21 | Amount you owe. If line 10, column C, is more than line 20, enter the difference and see page 5 | 21 | | | 842,782. |
| 22 | If line 10, column C, is less than line 20, enter the difference | 22 | | | |
| 23 | Amount of line 22 you want refunded to you . . . . . . . | 23 | | | |
| 24 | Amount of line 22 you want applied to your ____ estimated tax | 24 | | | |

**Sign Here**

Joint return? See page 2. Keep a copy for your records.

Under penalties of perjury, I declare that I have filed an original return and that I have examined this amended return, including accompanying schedules and statements, and to the best of my knowledge and belief, this amended return is true, correct, and complete. Declaration of preparer (other than taxpayer) is based on all information of which the preparer has any knowledge.

| Your signature | Date | Spouse's signature. If a joint return, both must sign. | Date |
|---|---|---|---|
| | | | |

**Paid Preparer's Use Only**

| Preparer's signature ► | Date | Check if self-employed ☐ | Preparer's SSN or PTIN **P00084060** |
|---|---|---|---|
| Firm's name (or yours if self-employed), address, and ZIP code | **MERCK CPAS & CONSULTANTS** **101 GREEN STREET, PO BOX 3537** **KINGSTON                    NY** | EIN **14-1777420** Phone no. **914-331-9667** |

**12402**

Form **1040X** (Rev. 11-2000)

JSA
0AC1ED 2.000

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          12

Form 1040X (Rev. 11-2000) CARL P & NCY C SCHLACHTE                                                Page 2

## Part I Exemptions. See Form 1040 or 1040A instructions.

If you are not changing your exemptions, do not complete this part.
If claiming more exemptions, complete lines 25-31.
If claiming fewer exemptions, complete lines 25-30.

| | | | A. Original number of exemptions reported or as previously adjusted | B. Net change | C. Correct number of exemptions |
|---|---|---|---|---|---|
| 25 | Yourself and spouse . . . . . . . . . . . . . . . . . . . | 25 | 2 | | 2 |
| | Caution: If your parents (or someone else) can claim you as a dependent (even if they chose not to), you cannot claim an exemption for yourself. | | | | |
| 26 | Your dependent children who lived with you . . . . . . | 26 | 4 | | 4 |
| 27 | Your dependent children who did not live with you due to divorce or separation . . . . . . . . . . . . . . . . . . | 27 | | | |
| 28 | Other dependents . . . . . . . . . . . . . . . . . . | 28 | | | |
| 29 | Total number of exemptions. Add lines 25 through 28 . . . . . . . . | 28 | 6 | | 6 |
| 30 | Multiply the number of exemptions claimed on line 29 by the amount listed below for the tax year you are amending. Enter the result here and on line 4. | | | | |

| Tax year | Exemption amount | But see the instructions for line 4 on page 3 if the amount on line 1 is over: |
|---|---|---|
| 2000 | $2,800 | $96,700 |
| 1999 | 2,750 | 94,975 |
| 1998 | 2,700 | 93,400 |
| 1997 | 2,650 | 90,900 |

| 30 | NONE | NONE |
|---|---|---|

31 Dependents (children and other) not claimed on original (or adjusted) return:

Note: For tax years after 1997, do not complete column (e) below. For tax year 1997, do not complete column (d) below.

| (a) First name    Last name | (b) Dependent's social security number | (c) Dependent's relationship to you | (d) ✓ if qualifying child for child tax credit (see page 5) | (e) No. of months lived in your home |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |
| | | | | |

No. of your children on line 31 who:
• lived with you . . . . . . ▶ [ ]
• did not live with you due to divorce or separation (see page 5) . . . . ▶ [ ]
Dependents on line 31 not entered above ▶ [ ]

## Part II Explanation of Changes to Income, Deductions, and Credits

Enter the line number from the front of the form for each item you are changing and give the reason for each change. Attach only the supporting forms and schedules for the items changed. If you do not attach the required information, your Form 1040X may be returned. Be sure to include your name and social security number on any attachments.

If the change relates to a net operating loss carryback or a general business credit carryback, attach the schedule or form that shows the year in which the loss or credit occurred. See page 2 of the instructions. Also, check here . . . . . . . . . . . . . ▶ [ ]

SEE STATEMENT 1 - ATTACHED

## Part III Presidential Election Campaign Fund. Checking below will not increase your tax or reduce your refund.

If you did not previously want $3 to go to the fund but now want to, check here . . . . . . . . . . . . . . . . . . . ▶ [ ]
If a joint return and your spouse did not previously want $3 to go to the fund but now wants to, check here . . . . . . . . . . . . . ▶ [ ]

Form 1040X (Rev. 11-2000)

Statement 1          2000 Form 1040-X

Carl & Nancy Schlachte
ID # 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

QUALIFIED AMENDED RETURN Filed under Treasury Regulation 1.6664-
2(c)(3). This qualified amended return is being filed in response to
comments from the government regarding the underlying transaction
and is specifically intended to satisfy the requirements of Treasury
Regulation 1.6664-2(c)(3). Nothing set forth in this amendment
should be construed to imply that the taxpayers agree with the
validity of the government's comments regarding the underlying
transaction. This qualified amended return shall not impact the
statutory ability of the taxpayers to subsequently file an amended
return reflecting a filing position different from that set forth
herein.

The change in income on line 1 is related to the recognition of a
gain of securities not previously reported - see attached Schedule
D.

SCHEDULE D
(Form 1040)
Department of the Treasury
Internal Revenue Service (99)

**Capital Gains and Losses**

▶ Attach to Form 1040.    ▶ See Instructions for Schedule D (Form 1040).
▶ Use Schedule D-1 for more space to list transactions for lines 1 and 8.

OMB No. 1545-0074

**2000**

Attachment
Sequence No. 12

Name(s) shown on Form 1040

CARL P & NANCY C SCHLACHTE

Your social security number

**Part I**   Short-Term Capital Gains and Losses - Assets Held One Year or Less

| (a) Description of property (Example: 100 sh. XYZ Co.) | (b) Date acquired (Mo., day, yr.) | (c) Date sold (Mo., day, yr.) | (d) Sales price (see page D-5) | (e) Cost or other basis (see page D-5) | (f) Gain or (loss) Subtract (e) from (d) | |
|---|---|---|---|---|---|---|
| 1 ARM STOCK - 11,200 SHS | 03/15/2000 | 05/31/2000 | 102,816. | 10,326. | 92,490. | |
| ARM STOCK | 03/15/2000 | 08/29/2000 | 2,296,335. | 189,468. | 2,106,867. | |
| | | | | | | |

| | | | | | |
|---|---|---|---|---|---|
| 2 | Enter your short-term totals, if any, from Schedule D-1, line 2 . . . . . . . . . . | 2 | | | |
| 3 | Total short-term sales price amounts. Add column (d) of lines 1 and 2 . . . . | 3 | 2,399,151. | | |
| 4 | Short-term gain from Form 6252 and short-term gain or (loss) from Forms 4684, 6781, and 8824 . . . . . . . . . . . . . . . . . . . . . . . . . . . | 4 | | | |
| 5 | Net short-term gain or (loss) from partnerships, S corporations, estates, and trusts from Schedule(s) K-1 . . . . . . . . . . . . . . . . . . . . . . | 5 | | | |
| 6 | Short-term capital loss carryover. Enter the amount, if any, from line 8 of your 1999 Capital Loss Carryover Worksheet . . . . . . . . . . . . . . . . | 6 | ( | | ) |
| 7 | Net short-term capital gain or (loss). Combine column (f) of lines 1 through 6 . . . . . . ▶ | 7 | 2,199,357. | | |

**Part II**   Long-Term Capital Gains and Losses - Assets Held More Than One Year

| (a) Description of property (Example: 100 sh. XYZ Co.) | (b) Date acquired (Mo., day, yr.) | (c) Date sold (Mo., day, yr.) | (d) Sales price (see page D-5) | (e) Cost or other basis (see page D-5) | (f) Gain or (loss) Subtract (e) from (d) | (g) 28% rate gain or (loss) * (see inst. below) |
|---|---|---|---|---|---|---|
| 8 | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

| | | | | | |
|---|---|---|---|---|---|
| 9 | Enter your long-term totals, if any, from Schedule D-1, line 9 . . . . . . . . . . | 9 | | | |
| 10 | Total long-term sales price amounts. Add column (d) of lines 8 and 9 . . . . | 10 | | | |
| 11 | Gain from Form 4797, Part I; long-term gain from Forms 2439 and 6252; and long-term gain or (loss) from Forms 4684, 6781, and 8824 . . . . . . . . . | 11 | 730. | | |
| 12 | Net long-term gain or (loss) from partnerships, S corporations, estates, and trusts from Schedule(s) K-1 . . . . . . . . . . . . . . . . . . . . | 12 | | | |
| 13 | Capital gain distributions. See page D-1 . . . . . . . . . . . . STMT 7 . . . . | 13 | 3,117. | | |
| 14 | Long-term capital loss carryover. Enter in both columns (f) and (g) the amount, if any, from line 13 of your 1999 Capital Loss Carryover Worksheet . . . . | 14 | ( | ) | ( ) |
| 15 | Combine column (g) of lines 8 through 14 . . . . . . . . . . . . . . . . | 15 | | | |
| 16 | Net long-term capital gain or (loss). Combine column (f) of lines 8 through 14 . . . . ▶ | 16 | 3,847. | | |
| | Next: Go to Part III on the back. | | | | |

* 28% rate gain or loss includes all "collectibles gains and losses" (as defined on page D-6) and up to 50% of the eligible gain on qualified small business stock (see page D-4).

For Paperwork Reduction Act Notice, see Form 1040 instructions.

Schedule D (Form 1040) 2000

JSA
0A2011 1.000

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                     18

# EXHIBIT Q

Form **1040X**
(Rev. November 2000)

Department of the Treasury - Internal Revenue Service

**Amended U.S. Individual Income Tax Return**

► See separate instructions.

OMB No. 1545-0091

COPY / FILE COPY

This return is for calendar year ► 2000, or fiscal year ended ►

| Your first name and initial | Last name | Your social security number |
|---|---|---|
| CARL P | SCHLACHTE | |
| If a joint return, spouse's first name and initial | Last name | Spouse's social security number |
| NANCY C | SCHLACHTE | |

Home address (no. and street) or P.O. box if mail is not delivered to your home — 906 GRAY FOX CIRCLE | Apt. no. | Phone number

City, town or post office, state, and ZIP code. If you have a foreign address, see page 2 of the instructions.
PLEASANTON    CA    94566

For Paperwork Reduction Act Notice, see page 6.

**A** If the name or address shown above is different from that shown on the original return, check here ► ☐

**B** Has the original return been changed or audited by the IRS or have you been notified that it will be? Yes ☐  No ☒

**C** Filing status. Be sure to complete this line. Note. You cannot change from joint to separate returns after the due date.

On original return ► Single ☐  Married filing joint return ☒  Married filing separate return ☐  Head of household ☐  Qualifying widow(er) ☐
On this return ► Single ☐  Married filing joint return ☒  Married filing separate return ☐  Head of household* ☐  Qualifying widow(er) ☐
\* If the qualifying person is a child but not your dependent, see page 2.

**Use Part II on the Back to Explain any Changes**

| Income and Deductions (see pages 2-6) | | A. Original amount or as previously adjusted (see page 2) | B. Net change—amount of increase or (decrease)—explain in Part II | C. Correct amount |
|---|---|---|---|---|
| 1 Adjusted gross income (see page 3) | 1 | 2,500,547. | -2,106,867. | 393,680. |
| 2 Itemized deductions or standard deduction (see page 3) | 2 | 60,740. | 63,206. | 123,946. |
| 3 Subtract line 2 from line 1 | 3 | 2,439,807. | -2,170,073. | 269,734. |
| 4 Exemptions. If changing, fill in Parts I and II on the back | 4 | NONE | NONE | NONE |
| 5 Taxable income. Subtract line 4 from line 3 | 5 | 2,439,807. | -2,170,073. | 269,734. |
| 6 Tax (see page 4). Method used in col. C ___ SCH D ___ | 6 | 938,114. | -842,782. | 95,332. |
| 7 Credits (see page 4) | 7 | | | |
| 8 Subtract line 7 from line 6. Enter the result but not less than zero | 8 | 938,114. | -842,782. | 95,332. |
| 9 Other taxes (see page 4) | 9 | | | |
| 10 Total tax. Add lines 8 and 9 | 10 | 938,114. | -842,782. | 95,332. |
| 11 Federal income tax withheld and excess social security and RRTA tax withheld. If changing, see page 5 | 11 | 65,990. | | 65,990. |
| 12 Estimated tax payments, including amount applied from prior year's return | 12 | | | |
| 13 Earned income credit (EIC) | 13 | | | |
| 14 Additional child tax credit from Form 8812 | 14 | | | |
| 15 Credits from Form 2439 or Form 4136 | 15 | | | |
| 16 Amount paid with request for extension of time to file (see page 5) | 16 | | | |
| 17 Amount of tax paid with original return plus additional tax paid after it was filed | 17 | | | 129,342. |
| 18 Total payments. Add lines 11 through 17 in column C | 18 | | | 195,332. |

**Refund or Amount You Owe**

| | | |
|---|---|---|
| 19 Overpayment, if any, as shown on original return or as previously adjusted by the IRS | 19 | |
| 20 Subtract line 19 from line 18 | 20 | 195,332. |
| 21 Amount you owe. If line 10, column C, is more than line 20, enter the difference and see page 5 | 21 | |
| 22 If line 10, column C, is less than line 20, enter the difference | 22 | 100,000. |
| 23 Amount of line 22 you want refunded to you | 23 | |
| 24 Amount of line 22 you want applied to your 2003 estimated tax | 24 | 100,000. |

**Sign Here**
Joint return? See page 2. Keep a copy for your records.

Under penalties of perjury, I declare that I have filed an original return and that I have examined this amended return, including accompanying schedules and statements, and to the best of my knowledge and belief, this amended return is true, correct, and complete. Declaration of preparer (other than taxpayer) is based on all information of which the preparer has any knowledge.

Your signature / Date    Spouse's signature. If a joint return, both must sign. / Date

**Paid Preparer's Use Only**

Preparer's signature / Date    Check if self-employed ☐    Preparer's SSN or PTIN P00084060

Firm's name (or yours if self-employed), address, and ZIP code ► MERCK CPAS & CONSULTANTS
101 GREEN STREET, PO BOX 3537
KINGSTON    NY

EIN 14-1777420
Phone no. 914-331-9667

12402

Form **1040X** (Rev. 11-2000)

JSA
0A0180 2.000

Form 1040X (Rev. 11-2000) CARL P & NANCY C SCHLACHTE                                                              Page 2

## Part I — Exemptions. See Form 1040 or 1040A instructions.

If you are not changing your exemptions, do not complete this part.
If claiming more exemptions, complete lines 25-31.
If claiming fewer exemptions, complete lines 25-30.

| | | A. Original number of exemptions reported or as previously adjusted | B. Net change | C. Correct number of exemptions |
|---|---|---|---|---|
| 25 | Yourself and spouse . . . . . . . . . . . . . . . . . . . . . .  25 | 2 | | 2 |
| | Caution: If your parents (or someone else) can claim you as a dependent (even if they chose not to), you cannot claim an exemption for yourself. | | | |
| 26 | Your dependent children who lived with you . . . . . . . . . . . . .  26 | 4 | | 4 |
| 27 | Your dependent children who did not live with you due to divorce or separation  . . . . . . . . . . . . . . . . . . . . . . . .  27 | | | |
| 28 | Other dependents . . . . . . . . . . . . . . . . . . . . .  28 | | | |
| 29 | Total number of exemptions. Add lines 25 through 28 . . . . . . . .  29 | 6 | | 6 |
| 30 | Multiply the number of exemptions claimed on line 29 by the amount listed below for the tax year you are amending. Enter the result here and on line 4. | | | |

| Tax year | Exemption amount | But see the instructions for line 4 on page 3 if the amount on line 1 is over: | | | |
|---|---|---|---|---|---|
| 2000 | $2,800 | $96,700 | | | |
| 1999 | 2,750 | 94,975 | | | |
| 1998 | 2,700 | 93,400 | | | |
| 1997 | 2,650 | 90,900 | 30   NONE | NONE | NONE |

31 Dependents (children and other) not claimed on original (or adjusted) return:

Note: For tax years after 1997, do not complete column (e) below. For tax year 1997, do not complete column (d) below.

| (a) First name    Last name | (b) Dependent's social security number | (c) Dependent's relationship to you | (d) ✓ if qualifying child for child tax credit (see page 5) | (e) No. of months lived in your home |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |
| | | | | |

No. of your children on line 31 who:
• lived with you . . . . . ▶ [   ]
• did not live with you due to divorce or separation (see page 5) . . . ▶ [   ]
Dependents on line 31 not entered above ▶ [   ]

## Part II — Explanation of Changes to Income, Deductions, and Credits

Enter the line number from the front of the form for each item you are changing and give the reason for each change. Attach only the supporting forms and schedules for the items changed. If you do not attach the required information, your Form 1040X may be returned. Be sure to include your name and social security number on any attachments.

If the change relates to a net operating loss carryback or a general business credit carryback, attach the schedule or form that shows the year in which the loss or credit occurred. See page 2 of the instructions. Also, check here . . . . . . . . . . . . . ▶ [   ]

SEE STATEMENT 1 - ATTACHED

## Part III — Presidential Election Campaign Fund. Checking below will not increase your tax or reduce your refund.

If you did not previously want $3 to go to the fund but now want to, check here . . . . . . . . . . . . . . . ▶ [   ]
If a joint return and your spouse did not previously want $3 to go to the fund but now wants to, check here . . . . . . . . . . . . . ▶ [   ]

Form 1040X (Rev. 11-2000)

JSA

Statement 1          2000 Form 1040-X

Carl & Nancy Schlachte
ID # 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


QUALIFIED AMENDED RETURN Filed under Treasury Regulation 1.6664-
2(c)(3). This qualified amended return is being filed in response to
comments from the government regarding the underlying transaction
and is specifically intended to satisfy the requirements of Treasury
Regulation 1.6664-2(c)(3). Nothing set forth in this amendment
should be construed to imply that the taxpayers agree with the
vaildity of the government's comments regarding the underlying
transaction. This qualified amended return shall not impact the
statutory ability of the taxpayers to subsequently file an amended
return reflecting a filing position different from that set forth
herein.

The change in income on line 1 is related to the gain on the sale of
securities which was originally reported in 2000 and after having
time to fully consider the transaction we believe the recognition of
the gain of securities should have been reported when the
transaction was completed in 2003 and therefore the transaction was
reported in 2003 and not in 2000 – see attached Schedule D.

The $100,000 overpayment due to this change is requested to be
applied to the 2003 tax year – the year in which the gain was
properly recognized.

SCHEDULES A&B
(Form 1040)

Department of the Treasury
Internal Revenue Service   (99)

## Schedule A - Itemized Deductions

(Schedule B is on back)

▶ Attach to Form 1040.  ▶ See Instructions for Schedules A and B (Form 1040).

OMB No. 1545-0074

**2000**

Attachment
Sequence No. 07

| Name(s) shown on Form 1040 | Your social security number |
|---|---|
| CARL P & NANCY C SCHLACHTE | ▓▓▓▓▓▓▓ |

| | | | |
|---|---|---|---|
| **Medical and Dental Expenses** | Caution. Do not include expenses reimbursed or paid by others. | | |
| | 1 Medical and dental expenses (see page A-2) . . . . . . | 1 | |
| | 2 Enter amount from Form 1040, line 34 | 2 | |
| | 3 Multiply line 2 above by 7.5% (.075) . . . . . . . . . | 3 | |
| | 4 Subtract line 3 from line 1. If line 3 is more than line 1, enter -0- . . . . . . . . . | 4 | |
| **Taxes You Paid** (See page A-2.) | 5 State and local income taxes . . . STMT 4 . . . . | 5 | 80,289. |
| | 6 Real estate taxes (see page A-2) . . STMT 4 . . . . | 6 | 5,283. |
| | 7 Personal property taxes . . . . . . . . . . . . | 7 | |
| | 8 Other taxes. List type and amount ▶ _____ | 8 | |
| | 9 Add lines 5 through 8 . . . . . . . . . . . . . . . . . | 9 | 85,572. |
| **Interest You Paid** (See page A-3.) | 10 Home mortgage interest and points reported to you on Form 1098 | 10 | 26,078. |
| | 11 Home mortgage interest not reported to you on Form 1098. If paid to the person from whom you bought the home, see page A-3 and show that person's name, identifying no., and address ▶ _____ _____ _____ _____ | 11 | |
| **Note:** Personal interest is not deductible. | 12 Points not reported to you on Form 1098. See page A-3 for special rules . . . . . . . . . . . . . | 12 | |
| | 13 Investment interest. Attach Form 4952 if required. (See page A-3.) . . . . . . . . . . . . . | 13 | |
| | 14 Add lines 10 through 13 . . . . . . . . . . . . . . . . . | 14 | 26,078. |
| **Gifts to Charity** | 15 Gifts by cash or check. If you made any gift of $250 or more, see page A-4 **SEE STATEMENT 4** . . | 15 | 19,030. |
| If you made a gift and got a benefit for it, see page A-4. | 16 Other than by cash or check. If any gift of $250 or more, see page A-4. You must attach Form 8283 if over $500 | 16 | 1,208.   STMT 5 |
| | 17 Carryover from prior year . . . . . . . . . | 17 | |
| | 18 Add lines 15 through 17 . . . . . . . . . . . | 18 | 20,238. |
| **Casualty and Theft Losses** | 19 Casualty or theft loss(es). Attach Form 4684. (See page A-5.) . . . . . . . . . . . . | 19 | |
| **Job Expenses and Most Other Miscellaneous Deductions** (See page A-5 for expenses to deduct here.) | 20 Unreimbursed employee expenses - job travel, union dues, job education, etc. You must attach Form 2106 or 2106-EZ if required. (See page A-5.) ▶ _____ _____ _____ | 20 | |
| | 21 Tax preparation fees . . . . . . . . . . . | 21 | 1,055. |
| | 22 Other expenses- investment, safe deposit box, etc. List type and amount ▶ **SEE STATEMENT 5** | 22 | 251. |
| | 23 Add lines 20 through 22 . . . . . . . . . . | 23 | 1,306. |
| | 24 Enter amount from Form 1040, line 34 | 24  393,680. | |
| | 25 Multiply line 24 above by 2% (.02) . . . | 25 | 7,874. |
| | 26 Subtract line 25 from line 23. If line 25 is more than line 23, enter -0- . . . . . . . . . | 26 | NONE |
| **Other Miscellaneous Deductions** | 27 Other- from list on page A-6. List type and amount ▶ _____ _____ | 27 | |
| **Total Itemized Deductions** | 28 Is Form 1040, line 34, over $128,950 (over $64,475 if married filing separately)? ☐ No.  Your deduction is not limited. Add the amounts in the far right column for lines 4 through 27. Also, enter this amount on Form 1040, line 36. . . ▶ ☒ Yes.  Your deduction may be limited. See page A-6 for the amount to enter. | 28 | 123,946.   SEE STMT 6 |

For Paperwork Reduction Act Notice, see Form 1040 instructions.

Schedule A (Form 1040) 2000

JSA

SCHEDULE D
(Form 1040)

**Capital Gains and Losses**

OMB No. 1545-0074

**2000**

Department of the Treasury
Internal Revenue Service (99)

► Attach to Form 1040.    ► See Instructions for Schedule D (Form 1040).
► Use Schedule D-1 for more space to list transactions for lines 1 and 8.

Attachment
Sequence No. 12

Name(s) shown on Form 1040

CARL P & NANCY C SCHLACHTE

Your social security number

**Part I** — Short-Term Capital Gains and Losses - Assets Held One Year or Less

| (a) Description of property (Example: 100 sh. XYZ Co.) | (b) Date acquired (Mo., day, yr.) | (c) Date sold (Mo., day, yr.) | (d) Sales price (see page D-6) | (e) Cost or other basis (see page D-6) | (f) Gain or (loss) Subtract (e) from (d) | |
|---|---|---|---|---|---|---|
| 1 ARM STOCK - 11,200 SHS | 03/15/2000 | 05/31/2000 | 102,816. | 10,326. | 92,490. | |
| | | | | | | |
| | | | | | | |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 2 | Enter your short-term totals, if any, from Schedule D-1, line 2 | | **2** | | | | |
| 3 | Total short-term sales price amounts. Add column (d) of lines 1 and 2 | | **3** | 102,816. | | | |
| 4 | Short-term gain from Form 6252 and short-term gain or (loss) from Forms 4684, 6781, and 8824 . . . . . . . . . | | | | **4** | | |
| 5 | Net short-term gain or (loss) from partnerships, S corporations, estates, and trusts from Schedule(s) K-1 | | | | **5** | | |
| 6 | Short-term capital loss carryover. Enter the amount, if any, from line 8 of your 1999 Capital Loss Carryover Worksheet . . . . . . . . . . . | | | | **6** | ( ) | |
| 7 | Net short-term capital gain or (loss). Combine column (f) of lines 1 through 6 . . . . . . ► | | | | **7** | 92,490. | |

**Part II** — Long-Term Capital Gains and Losses - Assets Held More Than One Year

| (a) Description of property (Example: 100 sh. XYZ Co.) | (b) Date acquired (Mo., day, yr.) | (c) Date sold (Mo., day, yr.) | (d) Sales price (see page D-6) | (e) Cost or other basis (see page D-6) | (f) Gain or (loss) Subtract (e) from (d) | (g) 28% rate gain or (loss) (see instr. below) |
|---|---|---|---|---|---|---|
| 8 | | | | | | |
| | | | | | | |
| | | | | | | |

| | | | | | | |
|---|---|---|---|---|---|---|
| 9 | Enter your long-term totals, if any, from Schedule D-1, line 9 . . . . . . . . . . | **9** | | | | |
| 10 | Total long-term sales price amounts. Add column (d) of lines 8 and 9 . . . . | **10** | | | | |
| 11 | Gain from Form 4797, Part I; long-term gain from Forms 2439 and 6252; and long-term gain or (loss) from Forms 4684, 6781, and 8824 . . . . . . . . . | | **11** | 730. | | |
| 12 | Net long-term gain or (loss) from partnerships, S corporations, estates, and trusts from Schedule(s) K-1 | | **12** | | | |
| 13 | Capital gain distributions. See page D-1 . . . . . . . . . . . . . STMT 7. | | **13** | 3,117. | | |
| 14 | Long-term capital loss carryover. Enter in both columns (f) and (g) the amount, if any, from line 13 of your 1999 Capital Loss Carryover Worksheet . . . . . . . . | | **14** | ( ) | ( ) | |
| 15 | Combine column (g) of lines 8 through 14 . . . . . . . . . . . . . . | | **15** | | | |
| 16 | Net long-term capital gain or (loss). Combine column (f) of lines 8 through 14 . . . . . ► | | **16** | 3,847. | | |

Next: Go to Part III on the back.

\* 28% rate gain or loss includes all "collectibles gains and losses" (as defined on page D-6) and up to 50% of the eligible gain on qualified small business stock (see page D-4).

For Paperwork Reduction Act Notice, see Form 1040 instructions.

Schedule D (Form 1040) 2000

JSA

Schedule D (Form 1040) 2000 CARL P & NANCY C SCHLACHTE ~~redacted~~ Page 2

| **Part III** | **Summary of Parts I and II** | | | |
|---|---|---|---|---|
| 17 | Combine lines 7 and 16. If a loss, go to line 18. If a gain, enter the gain on Form 1040, line 13 . . . . . | 17 | 96,337. |
| | Next: Complete Form 1040 through line 39. Then, go to Part IV to figure your tax if: | | |
| | • Both lines 16 and 17 are gains and | | |
| | • Form 1040, line 39, is more than zero. | | |
| | Otherwise, stop here. | | |
| 18 | If line 17 is a loss, enter here and as a (loss) on Form 1040, line 13, the smaller of these losses: | | |
| | • The loss on line 17 or | | |
| | • ($3,000) or, if married filing separately, ($1,500) . . . . . . . . . . | 18 | ( ) |
| | Next: Skip Part IV below. Instead, complete Form 1040 through line 37. Then, complete the | | |
| | Capital Loss Carryover Worksheet on page D-6 if: | | |
| | • The loss on line 17 exceeds the loss on line 18 or | | |
| | • Form 1040, line 37, is a loss. | | |

| **Part IV** | **Tax Computation Using Maximum Capital Gains Rates** | | | |
|---|---|---|---|---|
| 19 | Enter your taxable income from Form 1040, line 39 | 19 | | 269,734. |
| 20 | Enter the smaller of line 16 or line 17 of Schedule D . . . . . . . . . . | 20 | 3,847. | |
| 21 | If you are filing Form 4952, enter the amount from Form 4952, line 4e | 21 | | |
| 22 | Subtract line 21 from line 20. If zero or less, enter -0- . . . . . . . . | 22 | 3,847. | |
| 23 | Combine lines 7 and 15. If zero or less, enter -0- . . . . . . . . . . | 23 | 92,490. | |
| 24 | Enter the smaller of line 15 or line 23, but not less than zero | 24 | | |
| 25 | Enter your unrecaptured section 1250 gain, if any, from line 17 of the | | | |
| | worksheet on page D-8 . . . . . . . . . . . . . . . . . . . | 25 | 730. | |
| 26 | Add lines 24 and 25 . . . . . . . . . . . . . . . . . . . | 26 | 730. | |
| 27 | Subtract line 26 from line 22. If zero or less, enter -0- . . . . . . . . | 27 | | 3,117. |
| 28 | Subtract line 27 from line 19. If zero or less, enter -0- . . . . . . . . | 28 | | 266,617. |
| 29 | Enter the smaller of: | | | |
| | • The amount on line 19 or | | | |
| | • $26,250 if single; $43,850 if married filing jointly or qualifying widow(er); | | | |
| | $21,925 if married filing separately; or $35,150 if head of household | 29 | | 43,850. |
| 30 | Enter the smaller of line 28 or line 29 . . . . . . . . . . . . . | 30 | 43,850. | |
| 31 | Subtract line 22 from line 19. If zero or less, enter -0- . . . . . . . . | 31 | 265,887. | |
| 32 | Enter the larger of line 30 or line 31 . . . . . . . . . . . . . | 32 | 265,887. | |
| 33 | Figure the tax on the amount on line 32. Use the Tax Table or Tax Rate Schedules, whichever applies | 33 | | 78,768. |
| | Note. If the amounts on lines 29 and 30 are the same, skip lines 34 through 37 and go to line 38. | | | |
| 34 | Enter the amount from line 29 . . . . . . . . . . . . . . . | 34 | | |
| 35 | Enter the amount from line 30 . . . . . . . . . . . . . . . | 35 | | |
| 36 | Subtract line 35 from line 34 . . . . . . . . . . . . . . ▶ | 36 | | |
| 37 | Multiply line 36 by 10% (.10) . . . . . . . . . . . . . . . | 37 | | |
| | Note. If the amounts on lines 19 and 29 are the same, skip lines 38 through 51 and go to line 52. | | | |
| 38 | Enter the smaller of line 19 or line 27 . . . . . . . . . . . . . | 38 | 3,117. | |
| 39 | Enter the amount from line 36 . . . . . . . . . . . . . . . | 39 | | |
| 40 | Subtract line 39 from line 38 . . . . . . . . . . . . . . ▶ | 40 | 3,117. | |
| 41 | Multiply line 40 by 20% (.20) . . . . . . . . . . . . . . . | 41 | | 623. |
| | Note. If line 26 is zero or blank, skip lines 42 through 51 and go to line 52. | | | |
| 42 | Enter the smaller of line 22 or line 25 . . . . . . . . . . . . . | 42 | 730. | |
| 43 | Add lines 22 and 32 . . . . . . . . . | 43 | 269,734. | -- | |
| 44 | Enter the amount from line 19 . . . . | 44 | 269,734. | | |
| 45 | Subtract line 44 from line 43. If zero or less, enter -0- . . . . . . . . | 45 | | |
| 46 | Subtract line 45 from line 42. If zero or less, enter -0- . . . . . . . ▶ | 46 | 730. | |
| 47 | Multiply line 46 by 25% (.25) . . . . . . . . . . . . . . . | 47 | | 183. |
| | Note. If line 24 is zero or blank, skip lines 48 through 51 and go to line 52. | | | |
| 48 | Enter the amount from line 19 . . . . . . . . . . . . . . . | 48 | | |
| 49 | Add lines 32, 36, 40, and 46 . . . . . . . . . . . . . . . | 49 | | |
| 50 | Subtract line 49 from line 48 . . . . . . . . . . . . . . . | 50 | | |
| 51 | Multiply line 50 by 28% (.28) . . . . . . . . . . . . . . . | 51 | | |
| 52 | Add lines 33, 37, 41, 47, and 51 . . . . . . . . . . . . . . | 52 | | 79,574. |
| 53 | Figure the tax on the amount on line 19. Use the Tax Table or Tax Rate Schedules, whichever applies | 53 | | 80,153. |
| 54 | Tax on all taxable income (including capital gains). Enter the smaller of line 52 or line 53 here and | | | |
| | on Form 1040, line 40 . . . . . . . . . . . . . . . . . . | 54 | | 79,574. |

JSA
0A2030 2.000

Schedule D (Form 1040) 2000

# EXHIBIT R

Form **1040X**
(Rev. November 2003)

Department of the Treasury - Internal Revenue Service
**Amended U.S. Individual Income Tax Return**   FILE COPY   OMB No. 1545-0091
► See separate instructions.

This return is for calendar year ► **2003** , or fiscal year ended ►

| | | |
|---|---|---|
| Your first name and initial | Last name | Your social security number |
| CARL P | SCHLACHTE | ▓▓▓▓▓▓▓▓ |
| If a joint return, spouse's first name and initial | Last name | Spouse's social security number |
| NANCY C | SCHLACHTE | ▓▓▓▓▓▓▓▓ |

Home address (no. and street) or P.O. box if mail is not delivered to your home  Apt. no.   Phone number

906 GRAY FOX CIRCLE

City, town or post office, state, and ZIP code. If you have a foreign address, see page 2 of the instructions.

PLEASANTON    CA    94566

For Paperwork Reduction Act Notice, see page 6.

A  If the name or address shown above is different from that shown on the original return, check here . . . . . . . . . . . ►

B  Has the original return been changed or audited by the IRS or have you been notified that it will be? . . . . . . . . . ☐ Yes  ☒ No

C  Filing status. Be sure to complete this line. **Note.** You cannot change from joint to separate returns after the due date.

On original return ►  ☐ Single  ☒ Married filing jointly  ☐ Married filing separately  ☐ Head of household  ☐ Qualifying widow(er)

On this return ►  ☐ Single  ☒ Married filing jointly  ☐ Married filing separately  ☐ Head of household *  ☐ Qualifying widow(er)

* If the qualifying person is a child but not your dependent, see page 2.

| Use Part II on the back to explain any changes | | A. Original amount or as previously adjusted (see page 2) | B. Net change - amount of increase or (decrease) - explain in Part II | C. Correct amount |
|---|---|---|---|---|
| **Income and Deductions (see pages 2-6)** | | | | |
| 1 Adjusted gross income (see page 3) . . . . . . . . . . . . | 1 | 346,356. | 1,554,176. | 1,900,532. |
| 2 Itemized deductions or standard deduction (see page 3) . . . . | 2 | 111,862. | -77,709. | 34,153. |
| 3 Subtract line 2 from line 1 | 3 | 234,494. | 1,631,885. | 1,866,379. |
| 4 Exemptions. If changing, complete Parts I and II on the back | 4 | | NONE | NONE |
| 5 Taxable income. Subtract line 4 from line 3 . . . . . . . . . | 5 | 234,494. | 1,631,885. | 1,866,379. |
| 6 Tax (see page 4). Method used in col. C  SCH.D | 6 | 70,173. | 247,727. | 317,900. |
| 7 Credits (see page 4) . . . . . . . . . . . . . . . . | 7 | | 1,065. | 1,065. |
| 8 Subtract line 7 from line 6. Enter the result but not less than zero | 8 | 70,173. | 246,662. | 316,835. |
| 9 Other taxes (see page 4) . . . . . . . . . . . . . . | 9 | | | |
| 10 Total tax. Add lines 8 and 9 . . . . . . . . . . . . . | 10 | 70,173. | 246,662. | 316,835. |
| 11 Federal income tax withheld and excess social security and tier 1 RRTA tax withheld. If changing, see page 4 . . . . . | 11 | 44,828. | | 44,828. |
| 12 Estimated tax payments, including amount applied from prior year's return . . . . . . . . . . . . . . . . . . | 12 | 20,077. | 100,000. | 120,077. |
| 13 Earned income credit (EIC) . . . . . . . . . . . . . | 13 | | | |
| 14 Additional child tax credit from Form 8812 . . . . . . . . | 14 | | | |
| 15 Credits from Form 2439, Form 4136, or Form 8885 . . . . . | 15 | | | |
| 16 Amount paid with request for extension of time to file (see page 4) . . . . . . . . . . . . . . . . . . | 16 | | | |
| 17 Amount of tax paid with original return plus additional tax paid after it was filed . . . . . . . . . . . . . . | 17 | | | 5,268. |
| 18 Total payments. Add lines 11 through 17 in column C . . . . | 18 | | | 170,173. |
| **Refund or Amount You Owe** | | | | |
| 19 Overpayment, if any, as shown on original return or as previously adjusted by the IRS . . . . . . . . . . . | 19 | | | |
| 20 Subtract line 19 from line 18 (see page 5) . . . . . . . . | 20 | | | 170,173. |
| 21 Amount you owe. If line 10, column C, is more than line 20, enter the difference and see page 5 . . . . . . | 21 | | | 146,662. |
| 22 If line 10, column C, is less than line 20, enter the difference . | 22 | | | |
| 23 Amount of line 22 you want refunded to you . . . . . . . | 23 | | | |
| 24 Amount of line 22 you want applied to your ____ estimated tax | 24 | | | |

**Sign Here**
Joint return?
See page 2.
Keep a copy for your records.

Under penalties of perjury, I declare that I have filed an original return and that I have examined this amended return, including accompanying schedules and statements, and to the best of my knowledge and belief, this amended return is true, correct, and complete. Declaration of preparer (other than taxpayer) is based on all information of which the preparer has any knowledge.

► Your signature                          Date          ► Spouse's signature. If a joint return, both must sign.    Date

**Paid Preparer's Use Only**

| Preparer's signature ► | | Date | Check if self-employed ☐ | Preparer's SSN or PTIN  P00084060 |
|---|---|---|---|---|
| Firm's name (or yours if self-employed), address, and ZIP code | MERCK CPAS & CONSULTANTS  101 GREEN STREET, PO BOX 3537  KINGSTON                  NY | | EIN  06-1663933 | |
| | | | | Phone no. 914-331-9667 |

12402

Form **1040X** (Rev. 11-2003)

CARL P. SCHLACHTE
NANCY C. SCHLACHTE
906 GRAY FOX CIRCLE
PLEASANTON, CA 94566

90-4217/1222
2011B510

526

DATE _Sept. 14, 2004_

PAY TO THE
ORDER OF _United States Treasury_ | $ 146,662 00

_One hundred forty - six thousand six hundred sixty - two_ DOLLARS

NORTHERN TRUST BANK OF CALIFORNIA N.A.

Northern Trust    2003 1040X

MEMO _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_    _Nancy C. Schlachte_

⑆122242673⑆0526⑈ 2011B510⑈

Form 1040X (Rev. 11-2003) CARL P & NANCY C SCHLACHTE                                                    Page 2

### Part II  Exemptions. See Form 1040 or 1040A instructions.

If you are not changing your exemptions, do not complete this part.
If claiming more exemptions, complete lines 25-31.
If claiming fewer exemptions, complete lines 25-30.

| | | | A. Original number of exemptions reported or as previously adjusted | B. Net change | C. Correct number of exemptions |
|---|---|---|---|---|---|
| 25 | Yourself and spouse . . . . . . . . . . . . . . . . . . | 25 | | | |
| | Caution. If your parents (or someone else) can claim you as a dependent (even if they chose not to), you cannot claim an exemption for yourself. | | | | |
| 26 | Your dependent children who lived with you . . . . . . . . . . . . . | 26 | | | |
| 27 | Your dependent children who did not live with you due to divorce or separation . . . . . . . . . . . . . . . . . . . . . . . . . . . | 27 | | | |
| 28 | Other dependents . . . . . . . . . . . . . . . . . . | 28 | | | |
| 29 | Total number of exemptions. Add lines 25 through 28 . . . . . . . . | 29 | | | |
| 30 | Multiply the number of exemptions claimed on line 29 by the amount listed below for the tax year you are amending. Enter the result here and on line 4. | | | | |

| Tax year | Exemption amount | But see the instructions for line 4 on page 3 if the amount on line 1 is over: | |
|---|---|---|---|
| 2003 | $3,050 | $104,625 | |
| 2002 | 3,000 | 103,000 | |
| 2001 | 2,900 | 99,725 | |
| 2000 | 2,800 | 96,700 | 30 |

31  Dependents (children and other) not claimed on original (or adjusted) return:

| (a) First name      Last name | (b) Dependent's social security number | (c) Dependent's relationship to you | (d) ✓ if qualifying child for child tax credit (see page 5) |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |

No. of your children on line 31 who:
• lived with you . . . . . . ▶ [ ]
• did not live with you due to divorce or separation (see page 5) . . . . ▶ [ ]
Dependents on line 31 not entered above . ▶ [ ]

### Part III  Explanation of Changes to Income, Deductions, and Credits

Enter the line number from the front of the form for each item you are changing and give the reason for each change. Attach only the supporting forms and schedules for the items changed. If you do not attach the required information, your Form 1040X may be returned. Be sure to include your name and social security number on any attachments.

If the change relates to a net operating loss carryback or a general business credit carryback, attach the schedule or form that shows the year in which the loss or credit occurred. See page 2 of the instructions. Also, check here . . . . . . . . . . . . . ▶ [ ]

SEE STATEMENT 1 ATTACHED

_____

_____

_____

_____

_____

_____

_____

### Part IV  Presidential Election Campaign Fund. Checking below will not increase your tax or reduce your refund.

If you did not previously want $3 to go to the fund but now want to, check here . . . . . . . . . . . . . . . . . . ▶ [ ]
If a joint return and your spouse did not previously want $3 to go to the fund but now wants to, check here . . . . . . . . . . . . . ▶ [ ]

Form **1040X** (Rev. 11-2003)

Statement 1          2003 Form 1040-X

Carl & Nancy Schlachte
ID # 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


QUALIFIED AMENDED RETURN Filed under Treasury Regulation 1.6664-2(c)(3). This qualified amended return is being filed in response to comments from the government regarding the underlying transaction and is specifically intended to satisfy the requirements of Treasury Regulation 1.6664-2(c)(3). Nothing set forth in this amendment should be construed to imply that the taxpayers agree with the vaildity of the government's comments regarding the underlying transaction. This qualified amended return shall not impact the statutory ability of the taxpayers to subsequently file an amended return reflecting a filing position different from that set forth herein.

The change in income on line 1 is related to the gain on the sale of securities which was originally reported in 2000 and after having time to fully consider the transaction we believe the recognition of the gain of securities should have been reported when the transaction was completed in 2003 and therefore the transaction was reported in 2003 and not in 2000 - see attached Schedules A & D.

Increase in the estimated tax payments of $100,000 is due to the application of the overpayment of taxes from Form 1040-X for the year 2000 to the 2003 tax year.

| SCHEDULES A&B | Schedule A - Itemized Deductions | OMB No. 1545-0074 |
|---|---|---|
| (Form 1040) | (Schedule B is on back) | **2003** |
| Department of the Treasury<br>Internal Revenue Service    (99) | ▶ Attach to Form 1040.  ▶ See Instructions for Schedules A and B (Form 1040). | Attachment<br>Sequence No.  07 |

| Name(s) shown on Form 1040 | Your social security number |
|---|---|
| CARL P & NANCY C SCHLACHTE | ████████████ |

| **Medical<br>and<br>Dental<br>Expenses** | | Caution. Do not include expenses reimbursed or paid by others. | | | |
|---|---|---|---|---|---|
| | 1 | Medical and dental expenses (see page A-2) . . . . . . . | 1 | | |
| | 2 | Enter amount from Form<br>1040, line 35 . . . . | 2 | | | |
| | 3 | Multiply line 2 by 7.5% (.075) . . . . . . . . . . . . . | 3 | | |
| | 4 | Subtract line 3 from line 1. If line 3 is more than line 1, enter -0- | | 4 | |

| **Taxes You<br>Paid**<br><br>(See<br>page A-2.) | 5 | State and local income taxes . . . **STMT 4** . . . | 5 | 14,439. | |
|---|---|---|---|---|---|
| | 6 | Real estate taxes (see page A-2) . . **STMT 4** . . . . | 6 | 22,523. | |
| | 7 | Personal property taxes . . . . . . . . . . . . . . . | 7 | | |
| | 8 | Other taxes. List type and amount ▶ _ _ _ _ _ _ _ _ _ _ _<br>_ _ _ _ _ _ _ _ _ **SEE STATEMENT 4** _ _ _ _ _ | 8 | 454. | |
| | 9 | Add lines 5 through 8 . . . . . . . . . . . . . . . . | | 9 | 37,416. |

| **Interest<br>You Paid**<br><br>(See<br>page A-3.)<br><br>Note.<br>Personal<br>interest is<br>not<br>deductible. | 10 | Home mortgage interest and points reported to you on Form 1098 | 10 | 31,991. | |
|---|---|---|---|---|---|
| | 11 | Home mortgage interest not reported to you on Form 1098. If paid<br>to the person from whom you bought the home, see page A-3<br>and show that person's name, identifying no., and address ▶<br><br>_ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _<br>_ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _<br>_ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ | 11 | | |
| | 12 | Points not reported to you on Form 1098. See page A-3<br>for special rules . . . . . . . . . . . . . . . . . | 12 | | |
| | 13 | Investment interest. Attach Form 4952 if required. (See<br>page A-4.) . . . . . . . . . . . . . . . . . . . . | 13 | | |
| | 14 | Add lines 10 through 13 . . . . . . . . . . . . . . . | | 14 | 31,991. |

| **Gifts to<br>Charity**<br><br>If you made a<br>gift and got a<br>benefit for it,<br>see page A-4. | 15 | Gifts by cash or check. If you made any gift of $250 or<br>more, see page A-4  **SEE STATEMENT 4** | 15 | 9,222. | |
|---|---|---|---|---|---|
| | 16 | Other than by cash or check. If any gift of $250 or more,<br>see page A-4. You must attach Form 8283 if over $500 . . | 16 | 495. | STMT 5 |
| | 17 | Carryover from prior year . . . . . . . . . . . . . | 17 | | |
| | 18 | Add lines 15 through 17 . . . . . . . . . . . . . . . | | 18 | 9,717. |

| **Casualty and<br>Theft Losses** | 19 | Casualty or theft loss(es). Attach Form 4684. (See page A-5.) . . . . . . . . | | 19 | |
|---|---|---|---|---|---|

| **Job Expenses<br>and Most<br>Other<br>Miscellaneous<br>Deductions**<br><br>(See<br>page A-5.) | 20 | Unreimbursed employee expenses - job travel, union<br>dues, job education, etc. Attach Form 2106 or 2106-EZ<br>if required. (See page A-5.) _ _ _ _ _ _ _ ▶ _ _ _ _ _<br>_ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ | 20 | | |
|---|---|---|---|---|---|
| | 21 | Tax preparation fees . . . . . . . . . . . . . . . | 21 | | |
| | 22 | Other expenses- investment, safe deposit box, etc. List<br>type and amount ▶ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _<br>_ _ _ _ _ _ _ _ _ **SEE STATEMENT 5** _ _ _ _ _ _ | 22 | 45,871. | |
| | 23 | Add lines 20 through 22 . . . . . . . . . . . . . . | 23 | 45,871. | |
| | 24 | Enter amount from Form<br>1040, line 35 . . . . | 24 | 1,900,532. | | |
| | 25 | Multiply line 24 by 2% (.02) . . . . . . . . . . . . | 25 | 38,011. | |
| | 26 | Subtract line 25 from line 23. If line 25 is more than line 23, enter -0- . . . . . . . . . | | 26 | 7,860. |

| **Other<br>Miscellaneous<br>Deductions** | 27 | Other- from list on page A-6. List type and amount ▶ _ _ _ _ _ _ _ _ _ _ _ _ _ _<br>_ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ | | 27 | |
|---|---|---|---|---|---|

| **Total<br>Itemized<br>Deductions** | 28 | Is Form 1040, line 35, over $139,500 (over $69,750 if married filing separately)?<br>☐ No.   Your deduction is not limited. Add the amounts in the far right column<br>            for lines 4 through 27. Also, enter this amount on Form 1040, line 37. . . . ▶<br>☒ Yes.  Your deduction may be limited. See page A-6 for the amount to enter. | | 28 | 34,153.<br>SEE STMT 6 |
|---|---|---|---|---|---|

For Paperwork Reduction Act Notice, see Form 1040 instructions.                                                    Schedule A (Form 1040) 2003

**SCHEDULE D**
**(Form 1040)**
Department of the Treasury
Internal Revenue Service    (99)

## Capital Gains and Losses

► **Attach to Form 1040.**    ► **See Instructions for Schedule D (Form 1040).**
► **Use Schedule D-1 to list additional transactions for lines 1 and 8.**

OMB No. 1545-0074

**2003**

Attachment
Sequence No. 12

Name(s) shown on Form 1040

CARL P & NANCY C SCHLACHTE

Your social security number

**Part I**    Short-Term Capital Gains and Losses - Assets Held One Year or Less

| (a) Description of property (Example: 100 sh. XYZ Co.) | (b) Date acquired (Mo., day, yr.) | (c) Date sold (Mo., day, yr.) | (d) Sales price (see page D-5 of the instructions) | (e) Cost or other basis (see page D-6 of the instructions) | (f) Gain or (loss) for the entire year Subtract (e) from (d) | (g) Post-May 5 gain or (loss)* (see below) |
|---|---|---|---|---|---|---|
| 1 TD WATERHOUSE - ST | VARIOUS | VARIOUS | 238,971. | 210,002. | 28,969. | 28,969. |
| | | | | | | |
| | | | | | | |
| | | | | | | |

| | | | | | |
|---|---|---|---|---|---|
| 2 | Enter your short-term totals, if any, from Schedule D-1, line 2 . . . . . . . . . . | 2 | | | |
| 3 | Total short-term sales price amounts. Add lines 1 and 2 in column (d) . . . . . . | 3 | 238,971. | | |
| 4 | Short-term gain from Form 6252 and short-term gain or (loss) from Forms 4684, 6781, and 8824 . . . . . . . . | | | 4 | |
| 5 | Net short-term gain or (loss) from partnerships, S corporations, estates, and trusts from Schedule(s) K-1 . . . . . . . . | | | 5 | 3,827. | 3,827. |
| 6 | Short-term capital loss carryover. Enter the amount, if any, from line 8 of your 2002 Capital Loss Carryover Worksheet . . . . . . . | | | 6 | ( 285,513 ) | |
| 7a | Combine lines 1 through 5 in column (g). If the result is a loss, enter the result. Otherwise, enter -0-. Do not enter more than zero . . . . . . . | | | 7a | | ( ) |
| b | **Net short-term capital gain or (loss). Combine lines 1 through 6 in column (f).** . . . . . . | | | 7b | -252,717. | |

**Part II**    Long-Term Capital Gains and Losses - Assets Held More Than One Year

| (a) Description of property (Example: 100 sh. XYZ Co.) | (b) Date acquired (Mo., day, yr.) | (c) Date sold (Mo., day, yr.) | (d) Sales price (see page D-5 of the instructions) | (e) Cost or other basis (see page D-6 of the instructions) | (f) Gain or (loss) for the entire year Subtract (e) from (d) | (g) Post-May 5 gain or (loss)* (see below) |
|---|---|---|---|---|---|---|
| 8 TD WATERHOUSE - PRE 5/5 LT | VARIOUS | VARIOUS | 24,748. | 95,172. | -70,424. | |
| ARM STOCK | 03/15/2000 | 08/29/2003 | 2,296,335. | 189,468. | 2,106,867. | 2,106,867. |
| | | | | | | |
| | | | | | | |

| | | | | | |
|---|---|---|---|---|---|
| 9 | Enter your long-term totals, if any, from Schedule D-1, line 9 . . . . . . . . . | 9 | | | |
| 10 | Total long-term sales price amounts. Add lines 8 and 9 in column (d) . . . . . | 10 | 2,321,083. | | |
| 11 | Gain from Form 4797, Part I; long-term gain from Forms 2439 and 6252; and long-term gain or (loss) from Forms 4684, 6781, and 8824 . . . . . . . | | | 11 | |
| 12 | Net long-term gain or (loss) from partnerships, S corporations, estates, and trusts from Schedule(s) K-1 . . . . . . . . | | | 12 | |
| 13 | Capital gain distributions. See page D-2 of the instructions . . . . . . . | | | 13 | |
| 14 | Long-term capital loss carryover. Enter the amount, if any, from line 13 of your 2002 Capital Loss Carryover Worksheet . . . . . . . | | | 14 | ( 232,550 ) |
| 15 | Combine lines 8 through 13 in column (g). If zero or less, enter -0- . . . . . . | | | 15 | 2,106,867. |
| 16 | **Net long-term capital gain or (loss). Combine lines 8 through 14 in column (f)** . . . . | | | 16 | 1,803,893. |
| | Next: Go to Part III on the back. | | | | |

* Include in column (g) all gains and losses from column (f) from sales, exchanges, or conversions (including installment payments received) after May 5, 2003. However, do not include gain attributable to unrecaptured section 1250 gain, "collectibles gains and losses" (as defined on page D-8 of the instructions) or eligible gain on qualified small business stock (see page D-4 of the instructions).

For Paperwork Reduction Act Notice, see Form 1040 instructions.    Schedule D (Form 1040) 2003

CARL P & NANCY C SCHLACHTE

Schedule D (Form 1040) 2003                                                                 Page 2

**Part III  Taxable Gain or Deductible Loss**

| | | |
|---|---|---|
| 17a Combine lines 7b and 16 and enter the result. If a loss, enter -0- on line 17b and go to line 18. If a gain, enter the gain on Form 1040, line 13a, and go to line 17b below | 17a | 1,551,176. |
| b Combine lines 7a and 15. If zero or less, enter -0-. Then complete Form 1040 through line 40 | 17b | 2,106,867. |

Next: • If line 16 of Schedule D is a gain or you have qualified dividends on Form 1040, line 9b, complete Part IV below.
• Otherwise, skip the rest of Schedule D and complete the rest of Form 1040.

| | | |
|---|---|---|
| 18 If line 17a is a loss, enter here and on Form 1040, line 13a, the **smaller** of (a) that loss or (b) ($3,000) (or, if married filing separately, ($1,500)) (see page D-7 of the instructions) | 18 | ( ) |

Next: • If you have qualified dividends on Form 1040, line 9b, complete Form 1040 through line 40, and then complete Part IV below (but skip lines 19 and 20).
• Otherwise, skip Part IV below and complete the rest of Form 1040.

**Part IV  Tax Computation Using Maximum Capital Gains Rates**

If line 16 or line 17a is zero or less, skip lines 19 and 20 and go to line 21. Otherwise, go to line 19.

| | | | | |
|---|---|---|---|---|
| 19 | Enter your unrecaptured section 1250 gain, if any, from line 18 of the worksheet on page D-7 | 19 | | |
| 20 | Enter your 28% rate gain, if any, from line 7 of the worksheet on page D-8 of the instructions | 20 | | |

If lines 19 and 20 are zero, go to line 21. Otherwise, complete the worksheet on page D-11 of the instructions to figure the amount to enter on lines 35 and 53 below, and skip all other lines below.

| | | | | |
|---|---|---|---|---|
| 21 | Enter your taxable income from Form 1040, line 40 | 21 | | 1,866,379. |
| 22 | Enter the smaller of line 16 or line 17a, but not less than zero | 22 | 1,551,176. | |
| 23 | Enter your qualified dividends from Form 1040, line 9b | 23 | 1,520. | |
| 24 | Add lines 22 and 23 | 24 | 1,552,696. | |
| 25 | Amount from line 4g of Form 4952 (investment interest expense) | 25 | | |
| 26 | Subtract line 25 from line 24. If zero or less, enter -0- | 26 | | 1,552,696. |
| 27 | Subtract line 26 from line 21. If zero or less, enter -0- | 27 | | 313,683. |
| 28 | Enter the smaller of line 21 or: • $56,800 if married filing jointly or qualifying widow(er); • $28,400 if single or married filing separately; or $38,050 if head of household | 28 | 56,800. | |

If line 27 is more than line 28, skip lines 29-39 and go to line 40.

| | | | | |
|---|---|---|---|---|
| 29 | Enter the amount from line 27 | 29 | | |
| 30 | Subtract line 29 from line 28. If zero or less, enter -0- and go to line 40 | 30 | | |
| 31 | Add lines 17b and 23* | 31 | | |
| 32 | Enter the smaller of line 30 or line 31 | 32 | | |
| 33 | Multiply line 32 by 5% (.05) | | | 33 |

If lines 30 and 32 are the same, skip lines 34-39 and go to line 40.

| | | | | |
|---|---|---|---|---|
| 34 | Subtract line 32 from line 30 | 34 | | |
| 35 | Enter your qualified 5-year gain, if any, from line 8 of the worksheet on page D-10 | 35 | | |
| 36 | Enter the smaller of line 34 or line 35 | 36 | | |
| 37 | Multiply line 36 by 8% (.08) | | | 37 |
| 38 | Subtract line 36 from line 34 | 38 | | |
| 39 | Multiply line 38 by 10% (.10) | | | 39 |

If lines 26 and 30 are the same, skip lines 40-49 and go to line 50.

| | | | | |
|---|---|---|---|---|
| 40 | Enter the smaller of line 21 or line 26 | 40 | 1,552,696. | |
| 41 | Enter the amount from line 30 (if line 30 is blank, enter -0-) | 41 | | |
| 42 | Subtract line 41 from line 40 | 42 | 1,552,696. | |
| 43 | Add lines 17b and 23* | 43 | 2,108,387. | |
| 44 | Enter the amount from line 32 (if line 32 is blank, enter -0-) | 44 | | |
| 45 | Subtract line 44 from line 43 | 45 | 2,108,387. | |
| 46 | Enter the smaller of line 42 or line 45 | 46 | 1,552,696. | |
| 47 | Multiply line 46 by 15% (.15) | | | 47 | 232,904. |
| 48 | Subtract line 46 from line 42 | 48 | | |
| 49 | Multiply line 48 by 20% (.20) | | | 49 |
| 50 | Figure the tax on the amount on line 27. Use the Tax Table or Tax Rate Schedules, whichever applies | | | 50 | 84,996. |
| 51 | Add lines 33, 37, 39, 47, 49, and 50 | | | 51 | 317,900. |
| 52 | Figure the tax on the amount on line 21. Use the Tax Table or Tax Rate Schedules, whichever applies | | | 52 | 628,439. |
| 53 | Tax on all taxable income. Enter the smaller of line 51 or line 52 here and on Form 1040, line 41 | | | 53 | 317,900. |

*If lines 23 and 25 are more than zero, see Lines 31 and 43 on page D-9 for the amount to enter.

# EXHIBIT S

Internal Revenue Service
Small Business and Self-Employed

Department of the Treasury

Date: June 26, 2006

Taxpayer Identification Number:
▓▓▓▓▓▓
Form:
   1040
Tax Period(s) Ended and Claim Amount:
   December 31, 2000   $842,782.00

Carl P. & Nancy C. Schlachte
906 Grey Fox Circle
Pleasanton  CA  94566

Date Claim Received:
   September 17, 2004
Person to Contact:
   Elain Li

Contact Telephone Number:
   510-637-2158
Employee Identification Number:
▓▓▓▓▓▓
Last date to Respond to this Letter:
   July 26, 2006

Dear Carl P. & Nancy C. Schlachte:

We examined your claim and propose:

☐   Partial disallowance, as shown in the enclosed examination report. If you accept our findings, please sign and return the enclosed Form 2297, *Waiver Form* and Form 3363, *Acceptance Form.*

☒   Full disallowance, as shown in the enclosed examination report or at the end of this letter. If you accept our findings, please sign and return the enclosed Form 2297, *Waiver Form* and Form 3363, *Acceptance Form.*

☐   Full disallowance with additional tax due, as shown in the enclosed examination report. If you accept our findings, please sign and return the enclosed Form 2297, *Waiver Form* and the examination report.

*Note: If your claim involves a joint return, both taxpayers must sign the form(s).*

If you are a "C" Corporation filer, Section 6621(c) of the Internal Revenue Code provides for an interest rate 2% higher than the standard interest rate on deficiencies of $100,000 or more.

If you don't agree with our findings, you may request a meeting or telephone conference with the supervisor of the person identified in the heading of this letter. If you still don't agree with our findings, we recommend that you request a conference with our Appeals Office. If you request a conference, we will forward your request to the Appeals Office and they will contact you to schedule an appointment.

Letter 569 (DO) (Rev. 9-2000)
Catalog Number 40248G

If the proposed change to tax is:

- $25,000 or less for *each* referenced tax period; you may send us a letter requesting Appeals consideration, indicating what you don't agree with and the reasons why you don't agree.

- More than $25,000 for *any* referenced tax period; you must submit a formal protest.

The requirements for filing a formal protest are explained in the enclosed Publication 3498, *The Examination Process*. Publication 3498 also includes information on your *Rights as a Taxpayer* and the *IRS Collection Process*.

If you don't respond by the date shown in the heading of this letter, we will process your case based on the adjustments shown in the enclosed examination report or the explanations given at the end of this letter.

If you have any questions, please contact the person whose name and telephone number are shown in the heading of this letter. Thank you for your cooperation.

Sincerely yours,

Elain Li
Internal Revenue Agent

Enclosures:
[X] Examination Report
Form 2297
[X] Form 3363
Publication 3498
Envelope

**Reason for Disallowance:**

The claim of change in income in relate to the gain on the sale of securities is disallowed because we believe that the Stock Transaction is, in realty, a sale disguised as a loan.

1301 Clay Street, Suite 990s
Oakland  CA  94612

Form 2297
(Rev. March 1982)

Department of the Treasury-Internal Revenue Service

# Waiver of Statutory Notification of Claim Disallowance

I, _____ Carl P. and Nancy C. Schlachte, ▮▮▮▮▮ _____ of _____ 906 Grey Fox Circle _____
　　　　　(Name, SSN or EIN)　　　　　　　　　　　　　　　　(Number, Street, City or Town, State, ZIP Code)

Pleasanton, CA  94566

waive the requirement under Internal Revenue Code section 6532(a)(1 ) that a notice of claim disallowance be sent to me by certified or registered mail for the claims for credit or refund shown in column (d), below.

I understand that the filing of this waiver is irrevocable and it will begin the 2-year period for filing suit for refund of the claims disallowed as if the notice of disallowance had been sent by certified or registered mail.

## Claims

| (a) Taxable Period Ended | (b) Kind of Tax | (c) Amount of Claim | (d) Amount of Claim Disallowed |
|---|---|---|---|
| December 31, 2000 | Income | 842,782.00 | 842,782.00 |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |

If you file this waiver for a joint return, both you and your spouse must sign the original and duplicate of this form. Sign your name exactly as it appears on the return. If you are acting under power of attorney for your spouse, you may sign as agent for him or her.

Your Signature ▶ _____ _____
　　　　　　　　　　　　　　　　　　　　　　　　　(Date signed)

For an agent or attorney acting under a power of attorney, a power of attorney must be sent with this form if not previously filed.

Spouse's Signature If A Joint Return Was Filed ▶ _____ _____
　　　　　　　　　　　　　　　　　　　　　　　　　(Date signed)

Taxpayer's Representative Sign Here ▶ _____ _____
　　　　　　　　　　　　　　　　　　　　　　　　　(Date signed)

For a partnership with excise or employment tax liability, all partners must sign. However, one partner may sign with appropriate evidence of authorization to act for the partnership.

Partnership/ Corporate Name: _____

For a person acting in a fiduciary capacity (executor, administrator, trustee), file Form 56, Notice Concerning Fiduciary Relationship, with this form if not previously filed.

Partners/ Corporate Officers Sign Here ▶ _____
▶ _____ _____
　　　　　(Title)　　　　　　　　　　　(Date signed)

For a corporation, enter the name of the corporation followed by the signature and title of the officer(s) authorized to sign.

▶ _____ _____
　　　　　(Title)　　　　　　　　　　　(Date signed)

NOTE - Filing this waiver within 6 months from the date the claim was filed will not permit filing a suit for refund before the 6-month period has elapsed unless a decision is made by the Service within that time disallowing the claims.

Catalog Number 18287T                www.irs.ustreas.gov                Form **2297** (Rev. 3-1982)

Form **2297**
(Rev. March 1982)

Department of the Treasury-Internal Revenue Service

# Waiver of Statutory Notification of Claim Disallowance

I, _____Carl P. and Nancy C. Schlachte, ▓▓▓▓▓_____ of _____906 Grey Fox Circle_____

(Name, SSN or EIN)                                    (Number, Street, City or Town, State, ZIP Code)

Pleasanton, CA 94566

waive the requirement under Internal Revenue Code section 6532(a)(1) that a notice of claim disallowance be sent to me by certified or registered mail for the claims for credit or refund shown in column (d), below.

I understand that the filing of this waiver is irrevocable and it will begin the 2-year period for filing suit for refund of the claims disallowed as if the notice of disallowance had been sent by certified or registered mail.

## Claims

| (a)<br>Taxable Period Ended | (b)<br>Kind of Tax | (c)<br>Amount of Claim | (d)<br>Amount of Claim Disallowed |
|---|---|---|---|
| December 31, 2000 | Income | 842,782.00 | 842,782.00 |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

If you file this waiver for a joint return, both you and your spouse must sign the original and duplicate of this form. Sign your name exactly as it appears on the return. If you are acting under power of attorney for your spouse, you may sign as agent for him or her.

For an agent or attorney acting under a power of attorney, a power of attorney must be sent with this form if not previously filed.

For a partnership with excise or employment tax liability, all partners must sign. However, one partner may sign with appropriate evidence of authorization to act for the partnership.

For a person acting in a fiduciary capacity (executor, administrator, trustee), file Form 56, Notice Concerning Fiduciary Relationship, with this form if not previously filed.

For a corporation, enter the name of the corporation followed by the signature and title of the officer(s) authorized to sign.

Your Signature ➤ _____ _____
                                                         (Date signed)

Spouse's Signature
If A Joint Return
Was Filed ➤ _____ _____
                                                         (Date signed)

Taxpayer's
Representative
Sign Here ➤ _____ _____
                                                         (Date signed)

Partnership/
Corporate
Name: _____
       _____

Partners/
Corporate
Officers ➤ _____ _____
Sign Here        (Title)                        (Date signed)

       ➤ _____ _____
                (Title)                        (Date signed)

NOTE - Filing this waiver within 6 months from the date the claim was filed will not permit filing a suit for refund before the 6-month period has elapsed unless a decision is made by the Service within that time disallowing the claims.

Department of the Treasury — Internal Revenue Service

Form **3363**
(Rev. November 1983)

# Acceptance of Proposed Disallowance of Claim for Refund or Credit

Name(s), SSN or EIN, and address of taxpayer(s) *(Number, Street, City or Town, State, ZIP Code)* 

Carl P. and Nancy C. Schlachte
906 Grey Fox Circle
Pleasanton, CA 94566

| Year or Period | Date Claim Filed | Kind of Tax | Amount of Claim | Amount of Claim Disallowed | Amount of Claim Allowed |
|---|---|---|---|---|---|
| December 31, 2000 | | Income | 100,000.00 | 100,000.00 | |
| | | | | | |
| | | | | | |
| | | | | | |

I accept the proposal of the Internal Revenue Service to disallow the claim(s) to the extent described above. This means only that I do not want the Service to consider the claim(s). It does not waive my right to file suit on the disallowance.

If you file this acceptance for a joint return, both you and your spouse must sign the original and duplicate of this form. Sign your name exactly as it appears on the return. If you are acting under power of attorney for your spouse, you may sign as agent for him or her.

For an agent or attorney acting under a power of attorney, a power of attorney must be sent with this form if not previously filed.

For a partnership with exise or employment tax liability, all partners must sign. However, one partner may sign with appropriate evidence of authorization to act for the partnership.

For a person acting in a fiduciary capacity (executor, administrator, trustee), file Form 56, Notice Concerning Fiduciary Relationship, with this form if not previously filed.

For a corporation, enter the name of the corporation followed by the signature and title of the officer(s) authorized to sign.

Your Signature ▶ _____
(Date)

Spouse's Signature If A Joint Return Was Filed ▶ _____
(Date)

Taxpayer's Representative Sign Here ▶ _____
(Date)

Partnership/ Corporate Name ▶ _____

Partners/ Corporate Officers Sign Here ▶ _____
(Title)                    (Date)

_____
(Title)                    (Date)

| Form **3363**<br>(Rev. November 1983) | Department of the Treasury — Internal Revenue Service<br>## Acceptance of Proposed Disallowance of Claim<br>## for Refund or Credit |
|---|---|

**Name(s), SSN or EIN, and address of taxpayer(s)** *(Number, Street, City or Town, State, ZIP Code)*

Carl P. and Nancy C. Schlachte
906 Grey Fox Circle
Pleasanton, CA  94566



| Year or Period | Date Claim Filed | Kind of Tax | Amount of Claim | Amount of Claim Disallowed | Amount of Claim Allowed |
|---|---|---|---|---|---|
| December 31, 2000 | | Income | 100,000.00 | 100,000.00 | |
| | | | | | |
| | | | | | |

I accept the proposal of the Internal Revenue Service to disallow the claim(s) to the extent described above. This means only that I do not want the Service to consider the claim(s). It does not waive my right to file suit on the disallowance.

| | |
|---|---|
| If you file this acceptance for a joint return, both you and your spouse must sign the original and duplicate of this form. Sign your name exactly as it appears on the return. If you are acting under power of attorney for your spouse, you may sign as agent for him or her. | **Your Signature** ▶ _____ <br> (Date) |
| | **Spouse's Signature If A Joint Return Was Filed** ▶ _____ <br> (Date) |
| For an agent or attorney acting under a power of attorney, a power of attorney must be sent with this form if not previously filed. | **Taxpayer's Representative Sign Here** ▶ _____ <br> (Date) |
| For a partnership with exise or employment tax liability, all partners must sign. However, one partner may sign with *appropriate* evidence of authorization to act for the partnership. | **Partnership/ Corporate Name** ▶ _____ |
| For a person acting in a fiduciary capacity (executor, administrator, trustee), file Form 56, Notice Concerning Fiduciary Relationship, with this form if not previously filed. | **Partners/ Corporate Officers Sign Here** ▶ _____ <br> (Title)          (Date) <br> ▶ _____ <br> (Title)          (Date) |
| For a corporation, enter the name of the corporation followed by the signature and title of the officer(s) authorized to sign. | |

| Form **4549-A** (Rev. March 2005) | Department of the Treasury-Internal Revenue Service **Income Tax Discrepancy Adjustments** | | Page __1__ of __2__ |
|---|---|---|---|

| Name and Address of Taxpayer | Taxpayer Identification Number | Return Form No.: |
|---|---|---|
| Carl P. & Nancy C. Schlachte 906 Grey Fox Circle Pleasanton  CA  94566 | ███████████ | 1040 |
| | Person with whom examination changes were discussed | Name and Title: Brian G. Issacson |

| 1. Adjustments to Income | Period End 12/31/2000 | Period End | Period End |
|---|---|---|---|
| a. | | | |
| b. | | | |
| c. | | | |
| d. | | | |
| e. | | | |
| f. | | | |
| g. | | | |
| h. | | | |
| i. | | | |
| j. | | | |
| k. | | | |
| l. | | | |
| m. | | | |
| n. | | | |
| o. | | | |
| p. | | | |
| 2. Total Adjustments | 0.00 | | |
| 3. Taxable Income Per Return or as Previously Adjusted | 2,439,807.00 | | |
| 4. Corrected Taxable Income     Tax Method     Filing Status | 2,439,807.00 SCHEDULE D Joint | | |
| 5. Tax | 938,114.00 | | |
| 6. Additional Taxes / Alternative Minimum | | | |
| 7. Corrected Tax Liability | 938,114.00 | | |
| 8. Less     a.   Credits  b.            c.            d. | | | |
| 9. Balance (Line 7 less total of Lines 8a thru 8d) | 938,114.00 | | |
| 10. Plus     a.    Other   b.    Taxes   c.            d. | | | |
| 11. Total Corrected Tax Liability (Line 9 plus Lines 10a thru 10d) | 938,114.00 | | |
| 12. Total Tax Shown on Return or as Previously Adjusted | 938,114.00 | | |
| 13. Adjustments to:  a.                       b.                       c. | | | |
| 14. Deficiency-Increase in Tax or (Overassessment - Decrease in Tax) (Line 11 less Line 12 adjusted by Lines 13a thru 13d) | 0.00 | | |
| 15. Adjustments to Prepayment Credits-Increase (Decrease) | | | |
| 16. Balance Due or (Overpayment) - (Line 14 adjusted by Line 15) (Excluding interest and penalties) | 0.00 | | |

| Form **4549-A**<br>(Rev. March 2005) | Department of the Treasury-Internal Revenue Service<br>**Income Tax Discrepancy Adjustments** | | | Page___2___ of ___2___ |
|---|---|---|---|---|

| Name of Taxpayer<br>Carl F. & Nancy C. Schlachte | Taxpayer Identification Number | Return Form No.:<br>1040 |
|---|---|---|

| 17.  Penalties/ Code Sections | Period End<br>12/31/2000 | Period End | Period End |
|---|---|---|---|
| a. | | | |
| b. | | | |
| c. | | | |
| d. | | | |
| e. | | | |
| f. | | | |
| g. | | | |
| h. | | | |
| i. | | | |
| j. | | | |
| k. | | | |
| l. | | | |
| m. | | | |
| n. | | | |
| **18.  Total Penalties** | | | |
| Underreporter attributable to negligence: *(1981-1987)*<br>*A tax addition of 50 percent of the interest due on the*<br>*underpayment will accrue until it is paid or assessed.* | | | |
| Underreporter attributable to fraud: *(1981-1987)*<br>*A tax addition of 50 percent of the interest due on the*<br>*underpayment will accrue until it is paid or assessed.* | | | |
| Underreporter attributable to Tax Motivated Transactions *(TMT)*.<br>Interest will accrue and be assessed at 120% of underpayment<br>rate in accordance with IRC 6621(c). | 0.00 | | |
| **19.  Summary of Taxes, Penalties and Interest:** | | | |
| a.  Balance due or *(Overpayment)* Taxes - *(Line 16, Page 1)* | 0.00 | | |
| b.  Penalties *(Line 18)* - computed to  06/26/2006 | | | |
| c.  Interest *(IRC § 6601)* - computed to  07/26/2006 | 0.00 | | |
| d.  TMT Interest - computed to     07/26/2006     *(on TMT underpayment)* | 0.00 | | |
| e.  Amount due or refund - *(sum of Lines a, b, c and d)* | 0.00 | | |

Other Information:
On September 17, 2004, you filed Form 1040X for a refund of $100,000.00 for 200012.
As the result of our examination, we have disallowed your claim.

| Examiner's Signature:<br>Name | Employee ID: | Office: | Date: |
|---|---|---|---|
| Elain Li | 94-06686 | Oakland | 06/26/2006 |

The Internal Revenue Service has agreements with state tax agencies under which information about federal tax, including increases or decreases, is exchanged with the states.  If this change affects the amount of your state income tax, you should amend your state return by filing the necessary forms.

You may be subject to backup withholding if you underreport your interest, dividend, or patronage dividend income you earned and do not pay the required tax.  The IRS may order backup withholding *(withholding of a percentage of your dividend and/or interest payments)* if the tax remains unpaid after it has been assessed and four notices have been issued to you over a 120-day period.

| Form | U.S. Treasury Department-Internal Revenue Service | |
|---|---|---|
| 886-A | Schedule No. or Exhibit<br>EXPLANATION OF ITEMS | |

| Name of Taxpayer<br>Carl & Nancy Schlachte | Tax Identification Number | Year /<br>200012 |
|---|---|---|

## ISSUE:

Whether the "90% Stock Loan" transaction [hereinafter "Stock Transaction"] offered by Derivium constitutes an actual sale disguised as a loan[1] where:

1. Taxpayer transfers stock to Derivium, retaining no right to vote the stock, and receives 90% of the fair market value back as a loan payable over three years at an above market rate of interest; and,

2. Derivium immediately sells the stock, funding the loan on behalf of an offshore lender after the sale is completed.

## FACTS:

Taxpayer is the owner of stock. Taxpayer enters into a transaction whereby the taxpayer transfers stock to Derivium for Derivium to hold as collateral for an offshore lender.

The "Master Agreement to Provide Financing and Custodial Services" [hereinafter "Master Agreement"] signed by the taxpayer and a representative of Derivium sets forth the rights of the parties as follows

Taxpayer understands that by transferring securities as collateral to DC[2] and under the terms of the Agreement, taxpayer gives DC and/or its assigns the right, without requirement of notice to or consent of the taxpayer, to assign, transfer, pledge, repledge, hypothecate, rehypothecate, lend, encumber, short sell, and/or sell outright some or all of the securities during the period covered by the loan. Taxpayer understands that DC and/or its assigns have the right to receive and retain the benefits from any such transactions and that taxpayer is not entitled to these benefits during the term of the loan. Taxpayer agrees to assist the relevant entities in completing all requisite documents that may be necessary to accomplish such transfers. [3]

---

[1] We use the term "loan" for convenience only and do not intend to suggest that the transaction qualifies as a true loan.
[2] In the Master Agreement, Derivium is referred to as "DC."
[3] In paragraph 3, "Funding Of Loan", of the Master Agreement.

1

| Form | U.S. Treasury Department-Internal Revenue Service | |
|------|-------------------------------------------------|---|
| **886-A** | Schedule No. or Exhibit<br>**EXPLANATION OF ITEMS** | |

| Name of Taxpayer<br>Carl & Nancy Schlachte | Tax Identification Number | Year /<br>200012 |
|---|---|---|

On the maturity date of the transaction, the documents indicate taxpayer has six alternatives:

1.  The first is to pay off the transaction, along with all accrued interest. Under this alternative, the taxpayer has the right to reacquire the same number of shares of the same securities.

2.  When the value of the stock is less than the payoff due at maturity, taxpayer may pay a renewal fee, sign new paperwork and extend the transaction for an additional term of up to as much as forty years.

3.  When the collateral value is worth more than the payoff due at maturity but 90% of the collateral value is worth less than the maturity amount, taxpayer may pay a renewal fee, sign new paperwork and extend the transaction for an additional term.

4.  When 90% of the collateral value is more than the payoff due at maturity, taxpayer does not pay a renewal fee but does sign new paperwork, receives cash equal to the excess of 90% of the collateral value over the maturity amount and extends the transaction for an additional term.

5.  If taxpayer does not wish to continue the transaction and his collateral value is worth more than the payoff due at maturity, he may "surrender" the stock and receive cash equal to the excess of collateral value over the payoff amount.

6.  If taxpayer does not wish to continue the transaction and the collateral value is less than the payoff due at maturity, he may "walk away" and forfeit any remaining interest in the stock. Derivium can only proceed against the stock and not against the taxpayer personally because the transaction is non-recourse to the taxpayer.

Under any of these six alternatives, no Form 1099 is issued to the taxpayer.

Interest is set at above market rates, regardless of the year in which the transaction is undertaken, the prevailing market conditions or the stock. During the pendency of the transaction, taxpayer cannot pre-pay the transaction or the interest. Declared dividends are credited to interest due.

2

| Form | U.S. Treasury Department-Internal Revenue Service Schedule No. or Exhibit | |
|---|---|---|
| 886-A | EXPLANATION OF ITEMS | |

| Name of Taxpayer Carl & Nancy Schlachte | Tax Identification Number | Year / 200012 |
|---|---|---|

**Law & Government Position:**

The Government's position is based upon the following relevant facts:

Legal Title

In the Stock Transaction, taxpayer transfers legal title of the stock to Derivium. When the stock is subsequently sold, Derivium is listed as the owner. However, the cases are clear that bare legal title is not sufficient in and of itself to constitute a transfer of beneficial ownership if the transferor retains the unrestricted right and ability to reacquire the stock. *See, e.g. Cruttenden v. U.S.,* 644 F.2d 1368 (9th Cir. 1981); *Lorch v. Commissioner,* 70 T.C. 674 (1978), *aff'd* 605 F.2d 647 (2d Cir. 1979), *cert. denied,* 444 U.S. 1076 (1980); *Miami National Bank v. Commissioner,* 67 T.C. 793 (1977). In the Stock Transaction, taxpayer's right to reacquire the stock is limited, as discussed below.

Treatment By The Parties

Both taxpayer and Derivium treat the stock as belonging to Derivium. Although the taxpayer retains the right to receive dividends during the period of the transaction, when taxpayer transfers legal title of the stock to Derivium, Derivium acquires the right to vote the shares and sell the shares.

In addition, taxpayer's right to reacquire the shares is not absolute. Taxpayer cannot pre-pay the transaction prior to maturity, therefore, taxpayer can only reacquire the shares at the maturity date of the transaction, after all outstanding transaction balances and accrued interest has been paid. Finally, Derivium's right to sell the shares is not limited in any way, unlike cases where the right to sell the shares was contingent on a particular event, usually the insolvency of the transferee. For example, in *Cruttenden, supra,* 644 F.2d at 1375, the Court made clear that the borrower of the stock had only a contingent right to sell the securities, and absent the occurrence of the contingency, the lender of the stock (e.g. the taxpayer) retained a significant right of ownership. Similarly, in *Miami National Bank, supra,* 67 T.C. at 801, the Tax Court found that the broker's power to dispose of stock was restricted to situations in which it was in financial difficulties, and that, in any event, the stock was never sold. Here, the stock was sold, not in response to any contingency, but rather, to fund the transaction.

3

| Form | U.S. Treasury Department-Internal Revenue Service | |
|---|---|---|
| | Schedule No. or Exhibit | |
| **886-A** | **EXPLANATION OF ITEMS** | |

| Name of Taxpayer | Tax Identification Number | Year / |
|---|---|---|
| Carl & Nancy Schlachte | ~~████████~~ | 200012 |

Acquisition of Equity

In the Stock Transaction, the documents show that Derivium does not fund the transaction until after confirmation of the amount of proceeds to be received from the sale of the stock. Thus, Derivium acquires equity in the stock as soon as the stock is transferred to it and then receives that equity in cash when the stock is sold.

Obligations of the Parties

The Master Agreement, as modified by one or more Schedules A, obligates the taxpayer to immediately transfer his stock to Derivium. Derivium is then obligated to pay 90% of the fair market value back to the taxpayer.

Right of Possession

The Master Agreement clearly states that Derivium will take possession of the stock and does so prior to selling it. Derivium may argue that taxpayer can reacquire possession of equivalent stock at the maturity date of the loan. However, taxpayer may do so only if taxpayer pays all balances and accrued interest. If the stock decreases in value, taxpayer will still have to pay the entire balance and accrued interest, not an economically feasible alternative. If a purported right to possession and control is burdened by a cumbersome cost that no reasonable person would pay, it is a façade. Grodt & *McKay Realty v. Commissioner*, *supra*, 77 T.C. at 1241-42. Thus, taxpayer has no realistic expectation of possession.

Risk of Loss

At the end of the term, if the stock has lost value, taxpayer may simply walk away from the loan, that is, forfeit the stock. Since the transaction is non-recourse, taxpayer has no personal liability. Thus, taxpayer has traded an unknown risk, the volatility of the market price, for a known payment, 10% of the stock's fair market value at the inception of the transaction. This fact distinguishes the Stock Transaction from *Grodt & McKay Realty*, *Miami National Bank*, *Cruttendon* and *Lorch*.

4

| Form | U.S. Treasury Department-Internal Revenue Service Schedule No. or Exhibit | |
|------|------|------|
| 886-A | **EXPLANATION OF ITEMS** | |

| Name of Taxpayer<br>Carl & Nancy Schlachte | Tax Identification Number<br>███████ | Year /<br>200012 |

<u>Receipt of Profits</u>

The Master Agreement provides that Derivium will receive dividends on the stock transferred to it by the taxpayer. The Schedule A which is used to memorialize specific Stock Transactions provides that all dividends will be credited against interest. The Stock Transactions utilize an above market rate of interest. It does not appear that the interest rate is tied in any way to prevailing market conditions. An analysis of market rates during the years 1998 through 2004, inclusive, shows that none of the rates reach as high as the Derivium rates. We believe that the interest rate is arbitrarily fixed at such a high level to account for any dividends and/or stock splits and to discourage repayment.

**TAXPAYER'S POSITION:**

Taxpayer disagreed due to taxpayer claimed that DC sold the stocks without his consent. Taxpayer truly believes that the whole transaction was a loan and taxpayer was planning to pay off loan at maturity so that he could acquire the stocks back.

**CONCLUSION**

Based on the above analysis of the relevant factors, we believe that the Stock Transaction is, in reality, a sale disguised as a loan. Adjustment is warranted per IRC Section 1001.

5

# EXHIBIT T

12/28/2006   15:12    6177P00674                    BOSTON APPEALS                    PAGE  02

Internal Revenue Service                    Department of the Treasury
Appeals Office
3310 El Camino Avenue                       Person to Contact:
Suite 170                                      Ronald Cunningham
Sacramento, CA  95821-6318                     Employee ID Number: ████████
                                               Tel:  (916) 974-5821
                                               Fax:  (916) 974-5845
Date:  DEC 2 2 2006                          Refer Reply to:
                                               AP:FW:SAC:RCC
                                            In Re:
CARL P. & NANCY C. SCHLACHTE                   Income Tax Liability
906 GRAY FOX CIRCLE                          Abatement Requested:
PLEASANTON, CA  94566-6921                     12/2000: $842,782
                                            Abatement Allowed:
                                               None
                                            Tax Period(s) Ended:
                                               12/2000, 12/2003

Carl P. & Nancy C. Schlachte:

We are sorry, but we cannot allow the above request for an adjustment to your tax, for
the following reasons: You failed to establish that your transactions with Derivium
Capital in 2000 were not taxable as sales in that year.  Accordingly, we have not made
any adjustments to the tax liability you reported on your original amended return for
2000.

Our decision is based on provisions of the Internal Revenue laws and regulations.  This
letter is your legal notice that your request for abatement is fully disallowed.

If you wish to bring suit or proceedings for the recovery of any tax, penalties or other
moneys for which this disallowance notice is issued, you will first have to pay the liability
in full.  (See Flora (S.Ct.) 362 US 145 (1960))  The United States District Court or  the
United States Court of Federal Claims cannot take jurisdiction of your case unless you
have paid the tax in full and you have filed a refund claim with the IRS.

We have also processed your amended return for 2003.  After assessment, you may
wish to request that the government  withhold collection for that period, pending the
collection of your 2000 liability.

If you have any questions, please contact the person whose name and telephone
number are shown above.

Enclosures:                                 Sincerely,
  Copy to Power of Attorney

cc: Brian G Isaacson

                                            Jack T. Estoll
                                            Appeals Team Manager

# EXHIBIT U

12/28/2006  15:12   617782?574                          BOSTON APPEAL?                    PAGE   02

**Internal Revenue Service**                  **Department o. the Treasury**
Appeals Office
3310 El Camino Avenue                         **Person to Contact:**
Suite 170                                       Ronald Cunningham
Sacramento, CA  95821-6318                      Employee ID Number: ▮▮▮▮▮▮▮
                                                Tel:  (916) 974-5821
                                                Fax:  (916) 974-5845
Date: DEC 2 2 2006                            **Refer Reply to:**
                                                AP:FW:SAC:RCC
                                              **In Re:**
**CARL P. & NANCY C. SCHLACHTE**                Income Tax Liability
**906 GRAY FOX CIRCLE**                       **Abatement Requested:**
**PLEASANTON, CA  94566-6921**                  12/2000: $842,782
                                              **Abatement Allowed:**
                                                None
                                              **Tax Period(s) Ended:**
                                                12/2000, 12/2003

Carl P. & Nancy C. Schlachte:

We are sorry, but we cannot allow the above request for an adjustment to your tax, for
the following reasons: You failed to establish that your transactions with Derivium
Capital in 2000 were not taxable as sales in that year. Accordingly, we have not made
any adjustments to the tax liability you reported on your original amended return for
2000.

Our decision is based on provisions of the Internal Revenue laws and regulations. This
letter is your legal notice that your request for abatement is fully disallowed.

If you wish to bring suit or proceedings for the recovery of any tax, penalties or other
moneys for which this disallowance notice is issued, you will first have to pay the liability
in full. (See Flora (S.Ct.) 362 US 145 (1960)) The United States District Court or the
United States Court of Federal Claims cannot take jurisdiction of your case unless you
have paid the tax in full and you have filed a refund claim with the IRS.

We have also processed your amended return for 2003. After assessment, you may
wish to request that the government withhold collection for that period, pending the
collection of your 2000 liability.

If you have any questions, please contact the person whose name and telephone
number are shown above.

Enclosures:                                   Sincerely,
  Copy to Power of Attorney

cc: Brian G Isaacson                          Jack T. Estoll
                                              Appeals Team Manager

# EXHIBIT V



DEPARTMENT OF THE TREASURY
INTERNAL REVENUE SERVICE
WASHINGTON, D.C. 20224

Appeals Area 8

Sacramento Sub Office
3310 El Camino Ave., Suite 170
Sacramento, CA  95821-6318

**Person to Contact:**
Linda Hite, ID# ████████

STEVEN M. GRAHAM
MERRIAM & ISAACSON
701 FIFTH AVE., SUITE 5800
SEATTLE  WA  98104

**Telephone Number:**
(916) 974-5807, FAX 974-5845
**Date:**
January 16, 2007

In re:   Carl P. & Nancy C. Schiachte's 2000 & 2003 1040

Dear Mr. Graham:

Thank you for your letter dated January 8, 2007.  I am responding to the letter because Mr. Estoll is no longer the manager of Ronald Cunningham.

The determination on this case was reviewed and approved by Mr. Estoll and I see no reason to reopen said case to consider a redetermination.  With respect to the assessment of the 2003 amended return, it is the Service's position that the income from the Derivium transaction belonged in 2000 and Appeals concurs with this position; however, you and your client believe the income should be reported on the 2003 return.  Once the 2000 liability is paid Mr. and Mrs. Schlachte have the right to pursue the matter in court.  It is possible that the court may concur with their position that the income should be reported in 2003.  If the tax on the 2003 amended return was not assessed the government could be barred from collecting the tax in either year.

Clearly, the IRS cannot legally collect the tax on the same income twice.  The revenue officer has been notified that the liability in 2003 is a duplication of the 2000 assessment. The Service would like to correct this situation and eliminate the 2003 assessment if your client wishes to send written assurance that this matter will not be pursued in court.

Thank you.

RECEIVED
JAN 1 8 2007
BY:

DD:
Calendared by:
Original to:
CC to:
Scanned by:
Filed by:

Sincerely yours,

Linda Hite
Appeals Team Manager

# EXHIBIT W

Internal Revenue Service                                    Department of the Treasury
5104 N BLYTHE
FRESNO, CA 93722-6429


                                                   Letter Date:
                                                      03/19/2007
CERTIFIED MAIL - RETURN RECEIPT                    Social Security or
                                                   Employer Identification Number
CARL P & NANCY C SCHLACHTE                          ████████ ████████
906 GRAY FOX CIR                                   Person to Contact:
PLEASANTON, CA 94566-6921                            MARILYN COLLINS
                                                   Contact Telephone Number:
                                                     (559)452-3058
                                                   Employee Identification Number:
                                                    ████████
                                                   For Account of:
                                                    CARL P & NANCY C SCHLACHTE

                              FINAL NOTICE
           NOTICE OF INTENT TO LEVY AND NOTICE OF YOUR RIGHT TO A HEARING
                         *PLEASE RESPOND IMMEDIATELY*


Your Federal tax is still not paid. We previously asked you to pay this, but we still haven't received your
payment. This letter is your notice of our intent to levy under Internal Revenue Code (IRC) Section 6331 and
your right to receive Appeals consideration under IRC Section 6330.

We may file a Notice of Federal Tax Lien at any time to protect the government's interest. A lien is a public
notice to your creditors that the government has a right to your current assets, including any assets you
acquire after we file the lien.

If you don't pay the amount you owe, make alternative arrangements to pay, or request Appeals consideration
within 30 days from the date of this letter, we may take your property, or rights to property, such as real estate,
automobiles, business assets, bank accounts, wages, commissions, and other income. For more information,
we've enclosed Publication 594, *What You Should Know About the IRS Collection Process,* Publication 1660,
*Collection Appeal Rights,* and Form 12153, *Request for a Collection Due Process Hearing.* To preserve your
right to contest Appeals' decision in the U.S. Tax Court or U.S. District Court, you must send us the completed
Form 12153 within 30 days from the date of this letter.

To prevent collection action, please send your full payment today. To ensure that you and your spouse
receive this letter, we are sending a copy to each of you. Each copy contains the same information
related to your joint account. Any amount you owe should be paid only once. Make your check or
money order payable to U.S. Treasury. Write your social security number or employer identification number on
your payment. Send your payment to us in the enclosed envelope with a copy of this letter.

The unpaid amount from prior notices may include tax, penalties, and interest you still owe.  It also includes any credits and payments we've received since we sent our last notice to you.  Below is a brief explanation of the interest and/or failure to pay penalty that may be included in the amount you owe:

**Interest - Internal Revenue Code Section 6601**
We charge interest when your tax is not paid on time.  Interest is computed from the due date of your return (regardless of extensions) until paid in full or to the date of this notice. Interest is also charged on penalties assessed on your account.  Interest compounds daily except on underpaid estimated taxes for individuals or corporations.

**Paying Late - Internal Revenue Code Section 6651(a)(2)**
We charge a penalty when your tax is not paid on time.  Initially, the penalty is ½% of the unpaid tax for each month or part of a month the tax was not paid.

If you have recently paid this tax or you can't pay it, call us immediately at the telephone number shown at the top of this letter and let us know.

Sincerely yours,

MARILYN COLLINS
REVENUE OFFICER

The amount you owe through 03/29/2007 is:

| Form Number | Tax Period | Unpaid Amount from Prior Notices | Additional Penalty | Additional Interest | AMOUNT YOU OWE |
|---|---|---|---|---|---|
| 1040 | 12/31/2003 | $105127.96 | $2000.00 | $2094.11 | $109222.07 |
| | | | | Total: | $109222.07 |

Enclosures:
Copy of this letter
Publication 594
Publication 1660
Form 12153

# EXHIBIT X

# PAYMENT POSTING VOUCHER
(Not a taxpayer receipt)

DLN:

| TIN: ~~XXXXXXXX~~ | Name Control: **SCHL** | Form No.: **1040** |
|---|---|---|

| Tax Period (*YYYYMM*): **200012** | MFT: **30** | Transaction (Rec'd) Date (*MM/DD/YYYY*): **06/20/2007** |
|---|---|---|

| Taxpayer Name: | **CARL P & NANCY C SCHLACHTE** | City:<br>State:<br>Zip: | **PLEASANTON, CA 94566-6921** |
|---|---|---|---|
| Address: | **906 GRAY FOX CIR** | | |

| Debit Transaction (Only 1) | | | Credit Transactions (Maximum of 2) | | | | Remarks:<br>**FIDELITY TITLE CERT FUNDS** |
|---|---|---|---|---|---|---|---|
| Code | Description | Amount | Code | Description | Amount | DPC | |
| 170 | ES Penalty | | 670 | Subsequent Payment | **860,399.95** | **99** | |
| 180 | FTD Penalty | | 610 | Remittance with Return | | | |
| 200 | Taxpayer ID No. Penalty Assessment | | 620 | Payment for Form 7004 | | | |
| 270 | Manual Failure to Pay Assessment | | 640 | Advance Payment on deficiency | | | |
| 360 | Fees and collection cost | | 430 | Est. tax payment Form 1040-ES | | | |
| 570 | Additional Liability Pending | | 660 | Est. tax payment Form 1041-ES | | | |
| | | | 680 | Designated interest | | | |
| | | | 690 | Designated Payment of Penalty | | | |
| | | | 694 | | | | |
| | | | | Total Payment | **860,399.95** | | |

| Unit Symbol: **27061367** | Preparer: **MARILYN COLLINS** | Phone No.: **(559)452-3058x** |
|---|---|---|

Form **3244** (Rev. 6-2000) Internal Revenue Service                    Department of the Treasury



| Form 10492 | Department of the Treasury-Internal Revenue Service | Escrow or Docket Number |
|---|---|---|
| (Rev. January 2005) | **Notice of Federal Taxes Due** | I.MESTER |

| To (Name of Escrow Holder, Agent of Taxpayer or Fiduciary) | Amount due |
|---|---|
| NORTHERN TRUST NA | $ 860,399.95 |

Address (Number, Street, P.O. Box, City, State, Zip code)
16 CORPORATE PLAZA
NEW PORT BEACH, CA 92660

You are hereby notified that there is now due, owing, and unpaid from -- (Name and Address of Taxpayer)
CARL P & NANCY C SCHLACHTE
906 GREY FOX CIRCLE, PLEASANTON, CA 94566-3450

to the United States of America, the sum of  EIGHT HUNDRED SIXTY THOUSAND THREE HUNDRED NINTY NINE DOLLARS & NINTY FIVE CENTS

for Internal Revenue taxes secured by a lien pursuant to Internal Revenue Code (IRC) Sections 6321 and 6322, or the Estate Tax Lien arising under IRC Section 6324, from the date of each assessment.

| Kind of Tax and Period | Taxpayer EIN or SSN | Assessment Date | Unpaid Assessed Balance | Accrued Interest | Accrued Late Payment Penalty | TOTAL |
|---|---|---|---|---|---|---|
| FORM 1040   12-31-2000 | ~~█████~~ | 04-15-2004 | $769,765.05 | $90,634.90 | | $860,399.95 |

This demand was requested by an employee of Fidelity National Title, and received directly from the issuing lender or party entitled to issue same.

By: _____  Date: 6/19/07

| Date after which additional interest will be charged | 06-22-2007 | Dated at Fresno, CA  93722 this 13th day |
|---|---|---|

If a Notice of Federal Tax Lien(s) has been recorded, a *Certificate of Release of Federal Tax Lien* will be filed immediately *only if payment is made in cash or by either a certified, cashier's, or treasurers check. The check must be drawn on any bank or trust company incorporated under the laws of the United States, or of any state or possession of the United States. Payment also can be made by a United States postal, bank, express, or telegraph money order. If you pay by personal check, issuance of the certificate of release will be delayed until the bank honors the check.*

**Caution to Fiduciaries:**  For personal liability for failure to honor priority of debts due the United States, see Sections 3466 and 3467 of the revised statutes (31 U.S.C. 191, 192).

Please make payment payable to **United States Treasury** and send it to the Internal Revenue Service at the address below.

| By (Name) | Title | ID Number | Telephone number |
|---|---|---|---|
| Marilyn Collins | ATAT Revenue Officer | ~~█████~~ | (559) 452-3058 |

| Address (Number, Street, P.O. Box, City, State, Zip code) | Signature |
|---|---|
| Internal Revenue Service 5104 North Blythe Ave., Ste.206 Fresno, CA  93722 ATTN: Marilyn Collins   27061367 | Marilyn Collins |

Catalog Number 65710D

Form-10492 (Rev. 1-2005)