JOSEPH P. RUSSONIELLO
United States Attorney
THOMAS M. NEWMAN (CTSBN 422187)
Assistant United States Attorney
 9th Floor Federal Building
 450 Golden Gate Avenue, Box 36055
 San Francisco, CA 94102
 Telephone:    (415) 436-6805
 Fax:          (415) 436-6748

Attorneys for the United States of America

# IN THE UNITED STATES DISTRICT COURT FOR THE

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| **CARL SCHLACHTE and NANCY SCHLACHTE** ) ) ) **Plaintiffs,** ) ) v. ) ) **UNITED STATES OF AMERICA,** ) ) **Defendant.** ) ) | Case No. 03:07-cv-6446-PJH **CASE MANAGEMENT STATEMENT** |

Defendant the United States of America and plaintiffs submit this Case Management Statement related to the conference scheduled for April 17, 2008.

**1. Jurisdiction and Service**: Jurisdiction is conferred under 28 U.S.C. § 1346 and 26 U.S.C. § 7422.  All parties have been served.

**2. Facts:** Plaintiffs, Carl and Nancy Schlachte, in reliance on representations by Carl Schlachte's financial advisors and by Derivium , entered into what they reasonably and in good faith believed were two legitimate non-recourse loans with Derivium. The Schlachtes borrowed 90% of the value of certain shares of ARM Holdings PLC (ARM) they owned at the time and pledged 100% of the same ARM shares as collateral for the loans.  Under the terms of the Master Loan Agreement (Master Agreement), Derivium had the right to sell the pledged stocks, but was required to return to the Schlachtes at the end of the three year loan period the same number of shares as had been pledged, provided the Schlachtes paid in full all outstanding loan balances,

1  including accrued interest.  If the Schlachtes failed to repay the loan and interest at the end of the
2  three year period, the pledged stock would be forfeited, but Derivium would have no further
3  recourse.
4       The Schlachtes entered into the Master Agreement based on their reasonable and good
5  faith reliance and believe on representations by Derivium and Schlachte's own financial
6  advisors, that Derivium intended and was able to fulfill its obligation to return the collateral at
7  the end of the three year loan period and that the transaction could be utilized as an attractive
8  hedging strategy.  In fact, unknown to the Schlachtes, Derivium never intended to return the
9  pledged stock to the Schlachtes at the end of the loan period, nor did Derivium ever intend to
10 return to the Schlachtes the same number of shares as had been pledged. Derivium sold all of the
11 pledged stock before the loan was funded.  Derivium used 90% of the sale proceeds of the
12 pledged stock to fund the loan, but then converted the remaining 10% of the loan proceeds for its
13 own use and never engaged in any hedging strategy.  Derivium committed this same theft and
14 conversion in other loan transactions with other borrowers similar to the Schlachtes. As a result
15 of the theft and conversion of these sale proceeds by Derivium, Derivium defaulted on its
16 obligations to return the collateral at the end of the loan period in many similar loan transactions.
17      The Schlachtes contend the IRS incorrectly and wrongfully treated the loan and pledge of
18 stock as collateral between the Schlachtes and Derivium as a sale of the stock and, consequently,
19 the IRS incorrectly and wrongfully assessed taxes, interest and penalties against the Schlachtes
20 and caused them to incur additional damages.
21      The Defendant United States contends that this case is not factually intensive and the
22 legal issue is sufficiently narrow.  The Court need only determine, whether for tax purposes, the
23 transaction between plaintiffs and Derivium was a stock sale in 2000 or 2003.  These issues are
24 well-resolved, and is likely this matter will be resolved through a dispositive motion.
25      **3. Legal Issues**:
26      **Plaintiff:** Whether the IRS exceeded its legal authority and violated the law by
27 disregarding the plain meaning of the contract and the conduct of the parties, by
28 mischaracterizing the loan contract between Derivium and the Schlachtes as a sale rather than a

loan, and by notifying the Schlachtes that they were not permitted to treat the Derivium transaction as a loan; and, under the circumstances, whether the Schlachtes were victims of a theft and, therefore, are entitled to a theft loss deduction.

**Defendant:** The sole issue in this case is whether the Derivium transaction was a sale in 2000. Plaintiffs' theft loss claim is not factually supported, nor is this claim properly before the court.

**4. Motions**: Plaintiffs do not expect to file any motions at this time. The United States expect to a motion to dismiss a portion plaintiffs' claim by June 2008, and a motions for summary judgment.

**5. Amendment of Pleadings**: Neither party believes the pleadings will be amended.

**6. Initial Disclosures:** The parties conferred on April 10, 2008, and initial disclosures will be timely made by each party pursuant to Fed. R. Civ. P. 26.

**7. Discovery:**

**Plaintiff:** It is anticipated that Plaintiff will need to conduct the following discovery, which will require the necessary time to complete:

1. Derivium filed bankruptcy and pertinent records must be obtained through the trustee, the Courts and other sources.
2. Plaintiff needs to discover documents in the possession of the IRS, including the completed Section 6700 investigation involving Derivium and Derivium documents, which documents the IRS has previously indicated are in their possession.
3. Plaintiff also needs to obtain information from other parties that are or were involved in litigation involving Derivium.
4. Depending on the IRS' contentions, Plaintiff will need time to obtain information and financial experts to rebut the IRS' contentions.

**Defendant:**

The United States contends that discovery should be limited in this case for one primary reason. First, this is a *de novo* proceeding, not a review of the IRS' determination in this, or any

other, case involving Derivium.  Consequently, the Court's decision in this matter will be based entirely on the facts that plaintiffs can establish. For that reason, none of the discovery topics plaintiffs listed are either relevant or discoverable.  In fact, the IRS administrative file for the 26 U.S.C. § 6700 suit, *United States v. Cathcart*, *et al.*, Case no. 07-4762, is protected from disclosure under, *inter alia*, 26 U.S.C. § 6103, deliberative process privilege, and the attorney client privilege.  As related to first and third categories, including the Derivium clients who are now creditors in the bankruptcy case or filed suit against Derivium, are also not relevant because they involve different parties, and unrelated causes of action – the recovery of the stock transferred to Derivium by those customers – while plaintiffs affirmatively allege that they forfeited their stock.  These scenarios are neither analogous nor related.  Simply stated, plaintiff would not be entitled to conduct discovery on the first three categories listed above.

Plaintiff has not suggested a discovery schedule.  The United States suggests that the following dates be set and discovery should be limited as follows:

The parties shall be allowed until November 30, 2008, to serve no more than ten document requests, interrogatories, and requests for admission, respectively, and no depositions.

No later than November 10, 2008, the parties will file a second Case Management Statement discussing the progress and need for additional discovery.

**8. Related Cases**:

Plaintiffs have annexed a copy of every federal case filed against Derivium.  The United States does not believe that any of these cases have related parties (other than Derivium) or similar legal issues with the exception of the civil injunction suit, *supra*.

**9. Relief**: The Schlachtes allege that they are entitled to a refund of taxes paid with interest in respect to the 2000 1040 of $842,782 because the Derivium Transactions were either a loan as shown by the documents or, in the alternative, a theft. Under either theory the Schlachtes would not record income from the transaction in 2000.

**10. Settlement and ADR**: The parties agree that settlement is unlikely.  The parties will make good faith efforts discussing settlement, or requesting a conference, at an appropriate time.

**11. Consent to Magistrate Judge:** The parties have not consented to have this issue decided by a United States Magistrate Judge.

**12. Narrowing of the Issues:** The issues in this case are sufficiently narrow.

**13. Scheduling:** The United States suggest no schedule be set at this time and that the parties should be required to file a second Case Management Statement after initial disclosures have been made, and the discovery listed above is completed because this approach may be more economical for all parties as well as non-parties.

**14. Trial:** The parties agree that the trial will last 5 days.

Respectfully submitted,
JOSEPH P. RUSSONIELLO
United States Attorney

*/s/ Thomas M. Newman*
THOMAS M. NEWMAN
Assistant United States Attorney
Tax Division

/s/_____
MARK J. WILSON
Isaacson & Wilson, P.S.
701 Fifth Ave, Suite 5810
Seattle, WA 98104
Tel: (206) 448-1011
Fax: (206) 448-1022
e-mail: **mjwilson@isaacsonwilson.com**