1  JOSEPH P. RUSSONIELLO
   United States Attorney
2  THOMAS M. NEWMAN (CTBN 422187)
   Assistant United States Attorney
3   9th Floor Federal Building
    450 Golden Gate Avenue, Box 36055
4   San Francisco, California 94102
    Telephone: (415) 436-6805
5   Fax: (415) 436-6748

6  Attorneys for the United States of America

## IN THE UNITED STATES DISTRICT COURT FOR THE

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| **CARL SCHLACHTE and NANCY SCHLACHTE** | Case No. 03:07-cv-6446-PJH |
| Plaintiffs, | **NOTICE OF MOTION AND MOTION TO DISMISS** |
| v. | |
| UNITED STATES OF AMERICA, | Date: May 28, 2008<br>Time: 9:00 a.m. |
| Defendant. | |

### NOTICE OF MOTION

Please Take Notice that on May 28, 2008, at 9:00 a.m. before the Honorable Phyllis J. Hamilton, at 450 Golden Gate Avenue, Courtroom #3, 17th Floor, San Francisco, California, the United States will move the Court for partial dismissal of plaintiffs' complaint pursuant to Fed. R. Civ. P. 12(b)(1) and (6).

JOSEPH P. RUSSONIELLO
United States Attorney

*/s/Thomas M. Newman*
THOMAS M. NEWMAN
Assistant United States Attorney
Tax Division

*Notice of Motion & Motion to Dismiss*
*Case No. 04:07-6446-PJH*                -1-

JOSEPH P. RUSSONIELLO
United States Attorney
THOMAS M. NEWMAN (CTBN 422187)
Assistant United States Attorney
 9th Floor Federal Building
 450 Golden Gate Avenue, Box 36055
 San Francisco, California 94102
 Telephone: (415) 436-6805
 Fax: (415) 436-6748

Attorneys for the United States of America

# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF CALIFORNIA
# SAN FRANCISCO DIVISION

| | |
|---|---|
| **CARL SCHLACHTE and NANCY SCHLACHTE**<br><br>**Plaintiffs,**<br><br>v.<br><br>**UNITED STATES OF AMERICA,**<br><br>**Defendant.** | Case No. 04:07-cv-6446-PJH<br><br>**MOTION TO DISMISS** |

## INTRODUCTION

Carl and Nancy Schlachte filed a claim for refund (Form 1040X) with the IRS for 2000, seeking a refund of $846,782.[1] In their administrative claim for a refund, plaintiffs maintain that they incorrectly reported a federal tax liability for 2000 related to the transfer of stock pledged to Derivium Capital as collateral for a three-year, non-recourse "loan."[2] Plaintiffs claim that the stock was sold — and the income realized for tax purposes — in 2003 when the loan ended and

---

[1] Cmplt. ¶ 38, Exhs. Q & R.

[2] Cmplt. ¶¶ 19-28.

*Motion to Dismiss*
*Case No. 07-6446-PJH*                              -2-

the stock was forfeited.[3]  Plaintiffs' refund request was denied and this suit followed.  In their complaint, plaintiffs offer two theories of recovery: (1) the stock "sale" occurred in 2003, and, "in the alternative," (2) the "Derivium Transactions were [a non-taxable] ... theft." [4]

To the extent the complaint asserts grounds for refund previously presented to the IRS in the taxpayers' administrative claim, the court had jurisdiction under 28 U.S.C. § 1346(b). Conversely, the court lacks jurisdiction over claims that were not raised in the taxpayers' administrative claim and such claims are subject to dismissal under Fed. R. Civ. P. 12(b)(1).**[5]**

Plaintiffs' administrative claims makes no reference to any theory of recovery based on a "theft" loss related to the "Derivium Transactions."  Plaintiffs contended only that the Derivium Transaction was a *bona fide* loan, and the pledged security was sold for tax purposes when the securities were forfeited.  Thus, the plaintiffs' theft loss claim substantially varies with the administrative claim, and is outside of the Court's subject matter jurisdiction.

## I. STATEMENT OF FACTS

Plaintiffs initiated this suit on December 21, 2007, seeking a $842,782 tax refund for 2000.[6]  The refund suit relates to a transaction plaintiffs negotiated with Derivium Capital, LLC, which was memorialized on June 26, 2000.[7]  As part of the agreements with Derivium, plaintiffs transferred 77,126 shares of ARM stock in exchange for $2,296,334.93.[8]  Plaintiffs and

---

[3] Cmplt. ¶¶ 27-28, & 38.

[4] Cmplt. ¶ 48.

[5] United States v. Felt & Tarrant Manufacturing Co., 283 U.S. 269, 272 (1931); Bear Valley Mutual Water Co. v. Riddell, 493 F.2d 948, 951 (9th Cir. 1974).

[6] Cmplt. ¶ 48.

[7] Cmplt. ¶¶ 17-20, Exh. A.

[8] Cmplt. ¶¶ 23-24; Exhs. A, C & G.  Plaintiffs entered into two contemporaneous transactions with Derivium, both involving ARM stock.  The above-stated number represents the total for the two transactions.  Id.  According to their 2003 amended tax return, plaintiffs purchased the all of the ARM stock at issue on March 15, 2000, for $189,468 ($2.46 per share).  (Cmplt. Exh. R, p. 5).

*Motion to Dismiss*
*Case No. 07-6446-PJH*                             -3-

Derivium characterized the transaction as a loan, with the ARM stock pledged as collateral.[9]

Under the terms of the agreement, Derivium charged plaintiffs interest at rate of 10.5% annually for a period of three years.[10] Plaintiffs were never obligated to repay the loan, and, in fact, Derivium prohibited plaintiffs from prepaying the loans.[11] In exchange, Derivium acquired the benefits of owning the ARM stock, including title to the shares, the right to sell the stock without notice to plaintiffs, voting rights, and the receipt of (any) dividends.[12] Plaintiffs retained the right to reacquire the same number of shares of the same securities at a fixed point in time – three years from the loan agreement – provided the loan principle and interest was paid on that date.[13] Three years later, Derivium notified plaintiffs that a $3,098,290.01 payment was required, to reacquire stock now worth $359,737.71.[14] Plaintiffs never repaid the "loan."[15]

In 2004, plaintiffs were notified that the California Franchise Tax Board and the IRS were treating the loans as sales.[16] Plaintiffs contend that, to avoid penalties, they filed an amended tax return for 2000 reporting the transaction as a sale that year to obtain amnesty.[17] Thereafter, plaintiffs filed another amended federal income tax return for 2000, now claiming that no stock sale occurred in 2000.[18] Taken together, plaintiffs' latest amended 2000 and 2003 tax returns assert the position that the sale occurred in 2003, "when the transaction was

---

[9] Cmplt. ¶¶ 22-24, Exh. A.

[10] Cmplt. ¶ 16, Exh. A (p. 4).

[11] Cmplt. ¶ 16.  At that time, ARM was valued at $34 1/6 per share.  (Exh. A., p. 4)

[12] Cmplt. Exh. A (pp. 1-4).

[13] Cmplt. ¶ 16, Exh. A (p. 1).

[14] Cmplt. ¶¶ 27-28, Exhs. J-M.  The stock was worth $3.94 in 2003, and was transferred at prices ranging from $33-34 per share.

[15] Cmplt. ¶¶ 27-28.

[16] Cmplt. ¶¶ 29-30.

[17] Cmplt. ¶ 37, Exh. P.

[18] Cmplt. ¶ 38, Exh. Q.

*Motion to Dismiss*
*Case No. 07-6446-PJH*                    -4-

completed."[19]  Plaintiffs reiterate this argument as one basis for relief in this case.[20]

Aside from that claim, plaintiffs allege (for the first time) that they are entitled to a tax refund because the Derivium Transaction were, "in the alternative, a theft."[21]  Plaintiffs' administrative claims for refund, filed in the form of amended tax returns, fail to set forth a legal or factual basis for that claim.[22]  In fact, plaintiffs left blank the line requesting the amount of any claimed "casualty or theft loss" for either year, and filed no Form 4684 detailing a theft loss.[23]  Moreover, the IRS letter denying plaintiffs' administrative claim confirms that the refund was denied on a single basis – that the stock sale occurred in 2000.  The theft loss was never presented to or considered by the IRS.[24]

## II. ARGUMENT

### A.    The Court Lacks Subject Matter Jurisdiction Over Plaintiffs' Theft Claim.

The United States waives its sovereign immunity with respect to taxpayer actions seeking refunds.  28 U.S.C. § 1346(a)(1).  Congress has, however, imposed a prerequisite before the United States is deemed to waive its sovereign immunity, that "[no] suit or proceeding shall be maintained in any court for recovery of any internal revenue tax... until a claim for refund or credit has been duly filed with the Secretary."  I.R.C. § 7422(a).  The regulations promulgated under section 7422(a) state, "[t]he claim must set forth each ground upon which credit or refund is claimed and facts sufficient to appraise the Commissioner of the exact basis thereof."[25]  This requirement is meant to give the IRS adequate notice of the claim and its underlying facts so it

---

[19]Cmplt. ¶ 38, Exhs. Q & R (p. 3).

[20]Cmplt. ¶ 48.

[21]Cmplt. ¶ 48.

[22]Cmplt. ¶ 48, Exhs. Q & R (p. 4 (Schedule A, line 19)).

[23]Cmplt. ¶ 48, Exhs. Q & R (p. 4 (Schedule A, line 19)).

[24]Cmplt. Exh. S.

[25]Boyd v. United States, 762 F.2d 1369, 1371 (9th Cir. 1985) quoting Treas. Reg. § 301.6402-2(b)(1).

*Motion to Dismiss*
*Case No. 07-6446-PJH*                              -5-

can make an administrative investigation and determination regarding the claim.[26] If a claim on its face does not call for investigation of a question, the taxpayer may not later raise that question in a refund suit because filing pursuant to the rules is a jurisdictional prerequisite.[27]

While "crystal clarity and exact precision are not demanded, ... the taxpayer must identify in its refund claim the 'essential requirements' of each and every refund demand."[28] Variance results from either a change in legal grounds or a change in the factual basis that the taxpayer attempts to raise in a complaint.[29] In order to prevail, the United States is not required to demonstrate any prejudice by the change, but will succeed based merely upon the existence of the altered legal or factual basis in the complaint.[30]

As noted above, plaintiffs' judicial refund claims are limited to the single theory advanced in their administrative claim – the Derivium transaction was a *bona fide* loan.[31] Here, it is abundantly clear the IRS never investigated plaintiffs' "theft loss" claim. The IRS requires taxpayers claiming a theft loss to disclose that election on Schedule A, line 19, and to file concurrently a Form 4684 detailing the factual basis for the loss. Plaintiffs failed to disclose any factual basis supporting a theft loss.[32] Here, line 19 of Schedule A for both the 2000 and 2003 amended tax returns is blank. No Form 4684 was attached to either return. Id.

Plaintiffs have never articulated the factual basis for this theory of recovery. Moreover, simply requesting a refund related to the Derivium transaction generally is not enough to confer jurisdiction. As the Federal Circuit Court of Appeals observed, the filing of an administrative

---

[26] Boyd, 762 F.2d 1369, 1371.

[27] Boyd, 762 F.2d 1369, 1371-1372.

[28] Charter Co. v. United States, 971 F.2d 1576, 1579 (11th Cir. 1992)

[29] Lockheed Martin Corp. v. United States, 210 F.3d 1366, 1371 (Fed. Cir. 2000).

[30] Stern v. United States, 949 F. Supp. 145, 147 (E.D.N.Y. 1996).

[31] Cmplt. ¶¶ 7 & 13.

[32] Cmplt. Exhs Q & R.

*Motion to Dismiss*
*Case No. 07-6446-PJH*                    -6-

claim on one issue does not open the door to every theory related to the transaction in question.[33] Accordingly, the theft loss constitutes a new theory over which this court lacks jurisdiction.

### B. Plaintiffs' Claimed Theft Loss Does Not Entitle Them to Relief.

In the alternative, plaintiffs' theft loss claim should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6). The reason is simple. Plaintiffs have not plead that they suffered any theft *loss* related to the Derivium transaction.

As related to this claim, I.R.C. § 165(a) provides a deduction for any loss sustained during the taxable year not compensated for by insurance *or otherwise*. Under Section 165(c), losses of individuals are limited to (1) losses incurred in a trade or business, (2) losses incurred in any transaction entered into for profit, though not connected with a trade or business, and (3) losses of property not connected with a trade or business or a transaction entered into for profit, if such losses arise from fire, storm, shipwreck, or other casualty, or from theft.[34] I.R.C. § 165(e) provides that any loss arising from theft will be treated under Section 165(a) as sustained during the taxable year in which the taxpayer discovers the loss.

Whether a loss constitutes a theft loss is determined by examining the law of the State where the alleged theft occurred.[35] Section 484(a) of the California Penal Code (West Supp. 2004) defines theft as follows:

> Every person who shall feloniously steal, take, carry, lead, or drive away the personal property of another, or who shall fraudulently appropriate property which has been entrusted to him or her, or who shall knowingly and designedly, by any false or fraudulent representation or pretense, defraud any other person of money, labor or real or personal property ... is guilty of theft... Id.

To support a finding of theft by false pretense in California, section 484(a) of the California Penal Code requires intent on the part of the defrauder to obtain for himself the

---

[33] Ottawa Silica Co., 699 F.2d 1124, 1140.

[34] Plaintiffs make no contention that their stock was held in the regular course of an ongoing business. Rather, they acknowledge holding the securities for investment purposes.

[35] Bellis v. Commissioner, 540 F.2d 448, 449 (9th Cir. 1976), aff'g. 61 T.C. 354 (1973); Edwards v. Bromberg, 232 F.2d 107, 111 (5th Cir. 1956); Viehweg v. Commissioner, 90 T.C. 1248, 1253 (1988).

*Motion to Dismiss*
*Case No. 07-6446-PJH*         -7-

victim's property.[36]  A theft loss requires a criminal appropriation of another's property.[37]

Plaintiffs' theft loss claim fails for two reasons.  First, according to their complaint, no criminal appropriation of their property occurred.  To the contrary, in 2000 plaintiffs willingly pledged to Derivium, stock valued purchased for roughly $280,000, in exchange for a $2,000,000 non-recourse "loan," which was memorialized in a master loan agreement.[38]  As part of that agreement, plaintiffs expressly transferred to Derivium the right to sell their "pledged" stock.[39]  Upon maturity of the loan, Derivium agreed to return the same number of the same securities conditioned on repayment of the loan.  Id.  When the loan matured in 2003, plaintiffs (prudently) forfeited the stock, instead of repaying $3,000,000 to reacquire the stock now worth $300,000.  Plaintiffs' own allegations demonstrate that no theft occurred.  Rather, their property was voluntarily transferred, not criminally appropriated, and they were handsomely compensated.

Second, plaintiffs' theft claim also fails under several basic federal tax law principles.  To begin with, plaintiffs' conclusion that the theft loss would not require them to "report income from the [Derivium] transaction in 2000" is simply wrong.  In fact, claiming a disposition, even in the form of a theft, requires them to pay tax in 2000 as if a sale occurred.  Plaintiffs have ignored the crucial fact that Derivium paid them $2 million for stock they bought for $280,000.  Plaintiffs must first pay tax on that income before any loss can be claimed.  I.R.C. § 1001.  In that regard, IRC. § 165(a) expressly limits theft losses deductions to the extent plaintiffs are compensated by "insurance or *otherwise*."  For that reason alone plaintiffs are precluded from

---

[36]People v. Ashley, 267 P.2d 271, 279 (Cal. 1954); People v. Fujita, 117 Cal. Rptr. 757, 764 (Ct. App. 1974); People v. Conlon, 24 Cal. Rptr. 219, 222 (Dist. Ct. App. 1962).

[37]Edwards v. Bomberg, supra at 110; Bellis v. Commissioner, 61 T.C. 354, 357 (1973), aff'd. 540 F.2d 448 (9th Cir. 1976); Harcinske v. Commissioner, T.C. Memo. 1984-132.

[38]Cmplt. Exh. C.

[39]Cmplt. Exh. A ¶3.

*Motion to Dismiss*
*Case No. 07-6446-PJH*            -8-

claiming a theft loss. Under plaintiffs' theory, this constitutes theft income, not a loss.[40]

Accordingly, plaintiffs' theft loss claim should be dismissed, in the alternative, for failing to state a claim upon which relief can be granted.

### III. CONCLUSION

For the reasons set forth above, the United States' Motion to Dismiss Plaintiff's complaint should be granted.

        JOSEPH P. RUSSONIELLO
        United States Attorney

        */s/Thomas M. Newman*
        THOMAS M. NEWMAN
        Assistant United States Attorney

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a copy of the foregoing was delivered on April 23, 2008, to the CM-ECF system of the United States District Court for the Northern District of California for electronic delivery to all counsel of record.

    MARK J. WILSON
    Isaacson & Wilson, P.S.
    701 Fifth Ave, Suite 5810
    Seattle, WA 98104

        */s/Thomas M. Newman*
        THOMAS M. NEWMAN

---

[40] For tax purposes, an individual must pay tax on the amount received that exceeds the cost basis. There is no distinction between disposing the property voluntarily, through a sale, or by theft. The sole issue is if the person was compensated for the asset. For that reason, it is unclear why plaintiffs persist in making this argument which is inconsistent with their 'primary' position: that the stock was no disposed of in 2000. Plaintiffs' contention would only make sense if Derivium never paid them anything.

*Motion to Dismiss*
*Case No. 07-6446-PJH*        -9-