HONORABLE PHYLLIS J. HAMILTON

IN THE UNITED STATES COURT FOR THE

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| CARL SCHLACHTE and NANCY SCHLACHTE,<br><br>        Plaintiffs,<br><br>   v.<br><br>THE UNITED STATES OF AMERICA<br><br>        Defendants. | *Case No.*  CV 07-06446 PJH<br><br>PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS |

**INTRODUCTION**

In 2000, Carl and Nancy Schlachte, following the advice of their financial advisor, allowed Derivium Capital to take possession of their ARM Holdings stock as collateral for a three year loan. Complaint ¶ 8. At the end of three years, by the terms of this loan, the Schlachtes could either repay the loan and receive their stock back, or forfeit the stock in total satisfaction of the loan. *Id.* In 2003 when the loan became due, ARM Holdings stock had declined and the Schlachtes forfeited the stock. Complaint ¶ 27-28. Derivium did not

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS - 1

ISAACSON & WILSON, P.S.
701 Fifth Avenue, Suite 5810
Seattle, Washington 98104
Telephone: (206) 448-1011
Fax: (206) 448-1022

file 1099 forms reporting the stock sale to the IRS or to the Schlachtes. United States Complaint ¶ 66-68; *U.S. v. Cathcart,* (No. C074762) (N.D. Cal) (filed Sept. 7, 2007).

The IRS investigated Derivium and erroneously decided to treat the loan as a "sale" in 2000 when the loan was written rather than as a disposition in 2003 when the stock was forfeited. Complaint ¶ 30. On December 21, 2007, the Schlachtes filed a Complaint with this Court asking the Court to determine the correct tax treatment of the loan. Complaint pp. 1-15.

The IRS filed an Answer on April 5, 2008, but did not file a motion to dismiss at that time, correctly admitting that the Court had jurisdiction over all of the Schlachtes' claims. Answer ¶ 5. The Answer contained no objection to the sufficiency of the Schlachtes' theft claims. Two weeks after the Answer was filed the IRS recognized that the Answer was insufficient to defeat the Schlachtes' claims and filed a Motion to Dismiss seeking technical, but erroneous grounds to avoid having the Schlachtes' claims heard by this Court. MTD pp. 1-4.

First, the IRS seeks to avoid this Court's jurisdiction by falsely claiming that "The theft loss was never presented to or considered by the IRS." Defendant's MTD p. 5 ln. 2-9.

Second, the IRS brings an untimely 12(b) (6) motion trying to defeat Schlachtes' *alternative claim* by pointing out that it is inconsistent with their *primary claim.* Defendant's MTD p. 5 ln. 2-9. Schlachtes' primary claim is that the transaction was a loan. The transaction is between two independent parties and the paperwork sets out a loan. Complaint ¶ 13. The Schlachtes intended the transaction to be a loan. *Id.* The Schlachtes were entitled to receive their stock back at the end of the loan and would have asserted this right if the stock had appreciated. Complaint ¶¶ 8-9. Instead, the Schlachtes ended the loan

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION
TO DISMISS - 2

ISAACSON & WILSON, P.S.
701 Fifth Avenue, Suite 5810
Seattle, Washington 98104
Telephone: (206) 448-1011
Fax: (206) 448-1022

and forfeited the stock in 2003. Complaint ¶¶ 27-28.

The IRS is claiming that the transaction was intended as a "sale" in 2000. Answer ¶ 18. The IRS claims to be making a "Substance over Form" argument. Because the IRS has found little "substance" to support their "sale" theory, its "substance over form" argument should more aptly be called a "speculation over form" argument. The IRS ignores: the clearly expressed intention of the original borrower and lender that the stock was to be kept as collateral; and the IRS ignores the borrowers' right to redeem the stock by paying off the loan, which is further indicia of a bona fide loan versus sale. Complaint ¶¶ 8-9. The IRS attempts to speculate away the legal and economic consequences of the Loan Agreement, particularly the Schlachtes' right to redeem the stock. The IRS also makes the erroneous argument that the Schlachtes must also have intended a sale from the beginning of the loan because the Derivium paperwork complied with Regulation T (by transferring legal title and giving Derivium the right to sell the stock short) and ***Derivium*** may have breached the agreement by selling the stocks at the beginning of the loan. The IRS attempts to speculate away the legal and economic consequence of the Loan Agreement, particularly the Schlachtes' right to redeem the stock.

In reply to the IRS argument (and therefore as an alternative to loan treatment) Schlachtes asserted that *if* the transfer to Derivium was a **"sale"** the Schlachtes were victims of theft. Complaint ¶ 10. The theft occurred when the Schlachtes were induced by Derivium and their broker to sell their stock for 90% of the value based on false representations including a promised redemption feature that the lender had made no preparations to honor. Complaint ¶¶ 10-11. The Schlachtes did not discover the theft until after the long after they had forfeited their stock. The IRS argues that Derivium operated "something of a Ponzi

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION
TO DISMISS - 3

ISAACSON & WILSON, P.S.
701 Fifth Avenue, Suite 5810
Seattle, Washington 98104
Telephone: (206) 448-1011
Fax: (206) 448-1022

scheme." United States Complaint ¶ 62; *U.S. v. Cathcart,* (No. C074762) (N.D. Cal) (filed Sept. 7, 2007).  Isaacson Decl. Exh. 2 p 1.

The Schlachtes point out that, under California law, to the extent their signatures were induced by deception, the agreement is unenforceable. Under these circumstances, the Schlachtes did not part with title, and Derivium obtained no rights in the property. Civ. § 1689; CTC Real Estate Services v. Lepe, 44 Cal.Rptr.3d 823, 824, 140 Cal.App4th 856, (Cal. Ct. App. 2nd Div. 2006). Therefore, the transaction cannot be a deemed a "sale," contrary to how the IRS attempts to describe it.

I. **Law Applicable to Motions to Dismiss**

A Rule 12(b)(6) motion "should not be granted unless 'it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Hall v. Thomas*, 190 F.3d 693, 696 (5th Cir. 1999) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957)). When considering a motion to dismiss, the court must presume all factual allegations of the complaint to be true. *Bayonne v Pitney Bowes, Inc.* (2004, DC Conn) 15 AD Cas 341. "The question therefore is whether, in the light most favorable to the plaintiff and with every doubt resolved in his behalf, the complaint states any valid claim for relief." *Brown v. Nationsbank Corp.*, 188 F.3d 579, 586 (5th Cir. 1999).

The issue to consider on a motion to dismiss is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims. See *Villager Pond, Inc. v. Town of Darien*, 56 F.3d 375, 378 (2d Cir. 1995). Indeed, it is not the Court's function to weigh the evidence that might be presented at trial; instead, the Court must merely determine whether the complaint itself is legally sufficient. Indeed, it is not the

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION
TO DISMISS - 4

Court's function to weigh the evidence that might be presented at trial; instead, the Court must merely determine whether the complaint itself is legally sufficient. *Davis v. Cotov*, 214 F. Supp. 2d 310, 315 (D.N.Y. 2002)

In ruling on the sufficiency of a complaint, the court may consider exhibits attached to the complaint and matters properly the subject of judicial notice. See *Hal Roach Studios v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1555 n. 19 (9th Cir. 1990). A court may consider a writing referenced in a complaint, but not explicitly incorporated therein if the complaint relies on the document and its authenticity is unquestioned. *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007); *Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir. 1998), superseded by statute on other grounds as stated in *Abrego v. Dow Chem. Co.*, 443 F.3d 676 (9th Cir. 2006); see also *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001) The court otherwise may not consider matters outside the complaint. See *Arpin v. Santa Clara Valley Transportation Agency*, 261 F.3d 912, 925 (9th Cir. 2001)

USA's Motion to Dismiss does not pass the test of strict scrutiny imposed by Rule 12(b)(6).

**II.    Defendant's 12(b) (6) Motion is Untimely and Should be Dismissed.**

In the Ninth Circuit the rule is that if a Federal Rule of Civil Procedure Rule 12(b)(6) motion is made after the answer is filed the Court may deny the motion to dismiss as untimely or consider the motion under FRCP 12(c). *Aldabe v. Aldabe*, 616 F.2d 1089, 1093 (9th Cir. 1980); *Hargrove & Costanso v. United States,* 1994 U.S. Dist LEXIS 17304 (N.D. Cal. 2007).

This Court should also decline to consider the IRS's motion to dismiss due to the fact that the IRS failed to raise the defense of "failure to state a claim" in their Answer to the

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS - 5

ISAACSON & WILSON, P.S.
701 Fifth Avenue, Suite 5810
Seattle, Washington 98104
Telephone: (206) 448-1011
Fax: (206) 448-1022

Compliant. *Aldabe v. Aldabe*, 616 F.2d 1089, 1093 (9th Cir. 1980). It is prejudicial to the Plaintiff for the Defendant to make a 12(b)(6) Motion to Dismiss when the defense was not raised asserted in the Answer. The requirement that a defendant make a 12(b)(6) motion before answering preserves the plaintiff's right under Rule 15(a) to amend the complaint because a 12(b)(6) motion is not a responsive pleading. If the defendant raises a Rule 12(b)(6) defense in the answer, it must contain every allegation necessary to show that plaintiff fails to state a claim. Any deficiency in these allegations of deficiencies will cause the motion to fail, and the examination of the allegations in the Answer or the Complaint would then demonstrate that material issues are in dispute. Here, however, the IRS's Answer deprives the Schlachtes' of the right to amend, and the Answer does not make any of the allegations necessary to assert the defense of failure to state a claim.

Plaintiffs respectfully request the Court consider the prejudice to Schlachtes caused by the IRS's failure to make a timely motion and to exercise the Court's prerogative that it deny the untimely 12(b) (6) motion.

**III.    The Schlachtes' Treatment of the Derivium Transaction as a Loan is presumed Correct.**

The form and substance of the Schlachtes' Transaction with Derivium is set out by the Master Agreement to Provide Financing and Custodial Services (Master Agreement) Complaint, Ex. A. The Master Agreement sets out an agreement to initiate a loan with Derivium Capital taking custody of the stock and "being authorized to act on behalf of the Client with respect to the [stock] for the purposes of:

   a) Providing or arranging financing by one or more loans…

   b) Holding cash, securities, or other liquid assets [] on behalf of the Client…

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION
TO DISMISS - 6

ISAACSON & WILSON, P.S.
701 Fifth Avenue, Suite 5810
Seattle, Washington 98104
Telephone: (206) 448-1011
Fax: (206) 448-1022

   c) Voting shares and receiving dividends or interest on securities held as collateral." Master Agreement Item 1.

  A more accurate interpretation of the contract is that Derivium is obligated to hold the securities, vote the stock, and receive dividends and interest, ***on behalf of the Clients***. For dividends, this interpretation is confirmed by Schedule A-1, Item 5 (attached to the Master Agreement) "All Dividends will be received as cash payments against interest due, with the balance of interest owed to accrue until maturity date."  Thus, dividends are received for the benefit and on behalf of the Clients. The Schlachtes interpret the same clause correctly to mean that Derivium will act regarding voting rights in a similar fashion; namely that Derivium was obligated to vote the stock on Schlachtes' behalf and at Schlachtes' direction. Under the contract terms, the Schlachtes retained the benefits of ownership in ARM stock including voting rights and the benefit of any dividends. If the meaning of the contract is not clear, it should be given the Schlachtes' interpretation by construing the agreement against Derivium as the drafter following the judicial doctrine of contra proferentem.

  In the Ninth Circuit: "[W]here a transaction has economic substance and is economically realistic, it should be recognized for tax purposes, and the fact that a transaction is so arranged that the tax consequences are highly favorable to one of the parties affords the Commissioner no license to recast it into one of less advantage." *Lewis & Taylor, Inc. v. Commissioner,* 477 F.2d 1074, 1077, (9th Cir. 1971) (Citing: *Peter Pan Seafoods, Inc. v. United States,* 417 F.2d 670 (9th Cir. 1969); *Gyro Engineering Corp. v. United States,* 417 F.2d 437. The Court in *Lewis & Taylor* went on to quote, with approval, *Edwards v. Commissioner*, where the Tenth Circuit Court of appeals supported the proposition that

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION
TO DISMISS - 7

"Form, absent exceptional circumstances, reflects substance." *Id.* (Quoting 415 F.2d 578, 582, (10th Cir. 1969). The IRS has the burden of proving that the substance of the transaction is something other than its form. The IRS attempts to misconstrue that plain language and intent of the transaction by misinterpreting it to mean that "Derivium acquired the benefits of owning the ARM stock, including … voting rights, and receipt of (any) dividends." MTD p 4 ln. 4-6.

Inexplicability, the IRS places great weight on the agreement's mandatory Regulation T and SEC disclosures which include the Consent to Lend Securities Provision and a Rule 8c-1 Hypothecation Consent[1]:

> The Client[2] understands that by transferring securities as collateral to DC and under the terms of the Agreement, the Client gives DC and/or its assigns the right, without requirement of notice to or consent of the Client, to assign, transfer, pledge, repledge, hypothecate, rehypothecate, lend, encumber, short sell, and or/sell outright some or all of the securities during the period covered by the loan. The Client understands that DC and/or its assigns have the right to receive and retain the benefits from any such transactions and that the Client is not entitled to these benefits during the term of the loan."

Master Agreement Item 3.

What the IRS fails to mention is that the language in this clause is standard mandatory language required by the Federal Reserve Board's Regulation T to be included in every Margin Loan Agreement.

> The Federal Reserve Board specifies a structure of accounts that broker-dealers must establish to implement Regulation T. The chief accounts are the Cash Account, the Margin Account, the Good Faith Account, and the Special Memorandum Account (SMA). …

---

[1] *See Secutiies lawyer's Deskbook, General Rules and Regulations promugulated under the Securities Act of 1934; Rule 8c-1 - - Hypothecation of Customers' Secutites* (U. Cin. Sch. Law) at http://www.law.uc.edu/CCL/34ActRls/rule8c-1.html.

[2] The IRS has insisted on replacing "the Client" with "Taxpayer" when quoting this section of the master Agreement.

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS - 8

ISAACSON & WILSON, P.S.
701 Fifth Avenue, Suite 5810
Seattle, Washington 98104
Telephone: (206) 448-1011
Fax: (206) 448-1022

> The Margin Account records transactions in, and holdings of, both margin securities and other securities, as defined in Regulation T and discussed above. ***Securities in the Margin Account must be in "street name" that is, the broker-dealer is the legal owner, and they must agree to allow brokers to lend their securities for short sale by other customers.***

Peter Fortune, *Margin Requirements, Margin Loans, and Margin Rates: Practice and Principles,* New England Economic Review, pg. 24. (September/October, 2000), at http://www.bos.frb.org/economic/neer/neer2000/neer500b.pdf.

In addition, virtually every Margin Account Agreement and/or related customer disclosure explains that the broker can lend, pledge, hypothecate (which is pledging securities without delivering them), or liquidate the securities held for the customer. This is because Brokers earn fees and borrow money by lending, hypothecating, and pledging securities. These agreements anticipate that these activities may sometimes require at least temporary liquidation of the pool of securities held by the broker.

Before the Broker can lend securities rules, including SEC Rule 8c-1, require that the Broker obtain the owner's consent and to disclose to customers that these activities are likely to occur. Borrowing on customers stock is such a common activity that virtually all Margin Agreements include these terms.  In fact, a significant source of funds used to make margin loans is commercial bank loans using the securities held by broker-dealers as collateral:

> "Brokers obtain the funds for margin loans from several sources. First, internal funds can be used to make loans. Second, the broker can use customers' cash deposits, paying customers the interest they would normally receive. Finally, brokers can borrow the money from commercial banks or other lenders subject to appropriate collateral. At year-end 1999, about 157.8 billion was loaned by commercial banks to broker-dealers on security collateral; this is equal to almost 70 percent of total debit balances at broker-dealer margin accounts. This overstates the use of bank credit to finance broker-dealer margin loans because brokers borrow for other purposes, such

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS - 9

ISAACSON & WILSON, P.S.
701 Fifth Avenue, Suite 5810
Seattle, Washington 98104
Telephone: (206) 448-1011
Fax: (206) 448-1022

as carrying their own securities." *Id.* at 31.

Since these are standard terms it is not surprising that the Superior Court of California for Sacramento County, when called upon to consider whether Derivium's Master Agreement was a "sale" or a "bona fide secured transaction in outstanding shares" in the case of *California v. Derivium Capital*, (02-as-05849) (November 5, 2003), found no evidence that the agreement was anything other than a bona fide secured transaction in outstanding shares.

Whether the circumstances in this case warrant setting aside the form of the transaction is a fact issue that should rightly be left to a jury to decide. Only the trier of fact, upon consideration of the entire transaction should determine the factual category in which a particular transaction belongs. *U.S. v. McNair Realty Co.,* 298 F.2.d 35, (9th Cir. 1961) (Citing; *U.S. v. Cumberland Public Service Co.,* 338 U.S. 451 (1950); *Haggard v. Wood,* 298 F.2d 24, 26 (9th. Cir., 1961; *Rollingwood v. Commissioner,* 190 F.2d 263, 265 (9th. Cir. 1951). The trier of fact in this case will need to determine the intent of the actors to decide whether the transaction was a loan, theft, or "sale." The date of disposition is also a question of fact for the trier of fact to decide. If the transaction is determined to be a sale, it is proper for the trier of fact to determine whether the sale was intended at the beginning of the contract or three years later.

**IV.  Schlachtes' Adequately Assert an Alternative Theory that the Substance of the Derivium Transaction is a Theft and entitled to Theft Treatment.**

If it is determined that the loan documents do evidence a "sale," which, again the Schlachtes dispute, then the Schlachtes were victims of theft. Complaint ¶ 10. Under these circumstances the Schlachtes were induced to sell their stock for 90% of the value based on

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION
TO DISMISS - 10

ISAACSON & WILSON, P.S.
701 Fifth Avenue, Suite 5810
Seattle, Washington 98104
Telephone: (206) 448-1011
Fax: (206) 448-1022

Derivium's false promises of a loan with a promised redemption feature that the Derivium had made no preparations to honor. Complaint ¶¶ 10-11. Under these circumstances, the Schlachtes would agree with the IRS' description that Derivium operated "something of a Ponzi scheme."

Again, under California law, if the Schlachtes' signature on the agreement was induced by deception the agreement is unenforceable, the Schlachtes did not part with title and Derivium obtained no rights in the property. Civ. § 1689; *CTC Real Estate Services v. Lepe,* 44 Cal.Rptr.3d 823, 824, 140 Cal.App.4th 856 (Cal. Ct. App. 2nd Div. 2006). This would stop the transaction from being a "sale" as described by the IRS.

The Schlachtes' claim of theft supports a 2003 date of disposition. In 2003, Derivium made its last series of representations which falsely implied that Derivium still had control of the stock and was prepared to honor the loan contract. Complaint ¶¶ 27-28. These representations knowingly concealed that Derivium was operating a Ponzi scheme. They were calculated to give the false impression that Derivium had honored the contract and was now entitled to either have Schlachtes pay the loan in full or forfeit the stock. The Schlachtes relied upon Derivium's representations and signed paperwork releasing any remaining interest in the stock. *Id.* If Derivium had truthfully disclosed to the Schlachtes that it had failed to honor the contract and instead was operating a Ponzi scheme and was relying on future victims' "investments" to repay Schlachtes, the Schlachtes would have reported Derivium to the authorities and tried to recover the 10% of original stock value instead of assenting to the release of the stocks.

The Schlachtes also assert that if their stock had increased in value beyond the loan repayment requirement, it is a question of fact as to whether Derivium would have honored

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION
TO DISMISS - 11

ISAACSON & WILSON, P.S.
701 Fifth Avenue, Suite 5810
Seattle, Washington 98104
Telephone: (206) 448-1011
Fax: (206) 448-1022

their obligation to return the shares, or engaged in theft. United States Complaint ¶ 61-63; *U.S. v. Cathcart,* (No. C074762) (N.D. Cal) (filed Sept. 7, 2007). The first claim of theft alleged against Derivium that the that Schlachtes were aware of where Derivium is alleged to have failed to return collateral at the end of a loan is *Hammond Family 1994 v. Diversified Design*, No. 2:04-cv-22855 (D.S.C. Filed November 3, 2004). The Schlachtes did not discover the complaint and therefore did not have reason to suspect they were victims of theft until after 2004.

## V. Defendant's 12(b) (1) Claim Fails Because the Theft Claim was Considered; Before the Original Denial .

The IRS correctly asserts that: "To the extent the complaint asserts grounds for refund previously presented to the IRS in the taxpayer's administrative claim, the court had jurisdiction under 28 U.S.C. § 1346(b)." MTD p 3 ln 4-5. The IRS also correctly acknowledges that the controlling case over IRC § 7422 compliance and whether there has been a government waiver is *Bear Valley Mutual Water Co. v. Riddell, 493,* F.2d 948 (9th. Cir. 1974).

However, the Administrative file does show that the Theft Treatment was raised and considered in the administrative hearing. Waiver under the *Angulus Milling* standard as quoted in *Bear Valley* happens when: "The Commissioner understood the specific claim that was made even though there was a departure from form in its submission." *Bear Valley Mutual Water Co. v. Riddell, 493,* F.2d 948, 952 (9th. Cir. 1974) Quoting *Angulus Milling Co. v. Commissioner,* 325 U.S. 293, 297-98, (1945).

The Schlachtes' refund request was transferred to an Internal Revenue Agent Badge number 94-06686 by the name (or pseudonym) of Elain Li. Ms. Li contacted the Isaacson

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION
TO DISMISS - 12

**ISAACSON & WILSON, P.S.**
701 Fifth Avenue, Suite 5810
Seattle, Washington 98104
Telephone: (206) 448-1011
Fax: (206) 448-1022

Law Firm to enquire whether the Schlachtes were going to accept settlement initiative or pursue their refund claim. Ms. Li's hand written notes for June, 8, 2006, from her Examining Officer's Activity Record, states:

> "Return call to Rep. Brian Isaacson. Discussed case status, Rep. disagreed W/IRS Position. He stated that TP did not know Derivium would sale the stock [] and run off with the money. Rep. also stated that TP expected to receive [] the stock back as soon as he paid off the loan. When questioned Rep. how the loan was supposed to be paid off, Rep. stated that it [] should be paid off according to the contract. Rep's question & position was that IRS don't know the actual sales of stock occurred. He also stated that there should be a theft loss due to DC sold TP's stocks W/O his knowledge."

Isaacson Decl. Exh. 3 p 1-2.

On June 26, 2006, the Schlachtes' nine page appeal letter was mailed and faxed to Ms. Li. It was accompanied by over a hundred pages of exhibits and clearly set out a consideration of theft treatment. Isaacson Decl. Exh. 4 pp 1-9.

On June 27, 2006, Ms. Li investigated whether the case would be accepted by appeals, a preliminary decision was made that it would not be, but Ms. Li was instructed to contact coordinated appeals to the case. Isaacson Decl. Exh. 3 pp 2-3.

On July 6, 2006, Ms. Li was notified that the case would be accepted by appeals but was told to "advise Rep. of appeal's position in supporting the gov's position." Isaacson Decl. Exh. 3 p. 3. The appeal was heard by an Appeals Officer by the name (or pseudonym) of Ronald Cunningham who considered the theft issue and determined "Derivium was operating something of a "Ponzi" Scheme, as it didn't actually hold the stock given to it by "borrowers" like the taxpayers as collateral for loans it allegedly made to the "borrowers". It would sell the stock off shortly after receipt, using the funds to pay off other "borrowers" in return for other stock." Isaacson Decl. Exh. 2 p 1.

Mr. Cunningham felt bound to follow, or was instructed to follow, an "Appeals Case

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION
TO DISMISS - 13

ISAACSON & WILSON, P.S.
701 Fifth Avenue, Suite 5810
Seattle, Washington 98104
Telephone: (206) 448-1011
Fax: (206) 448-1022

Memorandum for Derivium Capital, LLC that was prepared in conjunction with the closing of some earlier cases from this [Derivium] project" and "[A]n 'advisory opinion' prepared by IRS Counsel which was used as the primary basis by Compliance for setting up this issue." *Id.* If Mr. Cunningham's formal opinion did not show that he considered the theft claim it was because he declined to document the arguments and authorities put before him. Plaintiffs respectfully submit that no deference should be afforded the IRS determinations because the IRS: had incorrectly prejudged the facts and the outcome of the hearing, failed and refused to consider the law and the fact presented by the taxpayer, the IRS was operating far outside its area of expertise, and its determinations were clearly erroneous as to the facts and law.

      For all of the foregoing reasons, it is respectfully requested that the motions to dismiss be denied.

DATED this 6th day of May, 2008.

                                                ISAACSON & WILSON, P.S.

                                                */s/ Mark J. Wilson*
                                                Mark J. Wilson Cal. Bar No. # 96985
                                                Attorney for Plaintiff

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS - 14

ISAACSON & WILSON, P.S.
701 Fifth Avenue, Suite 5810
Seattle, Washington 98104
Telephone: (206) 448-1011
Fax: (206) 448-1022

CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing was delivered on May 6, 2008 to the CM-ECF system of the United States District Court for the Northern District of California for electronic delivery to all counsel of record.

Thomas M. Newman       thomas.newman2@usdoj.gov

Mark J. Wilson       mjwilson@isaacsonwilson.com, sjbridges@isaacsonwilson.com, yelena@isaacsonwilson.com

*/s/ Mark J. Wilson*

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS - 15

ISAACSON & WILSON, P.S.
701 Fifth Avenue, Suite 5810
Seattle, Washington 98104
Telephone: (206) 448-1011
Fax: (206) 448-1022

HONORABLE PHYLLIS J. HAMILTON

IN THE UNITED STATES COURT FOR THE

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| CARL SCHLACHTE and NANCY SCHLACHTE,<br><br>      Plaintiffs,<br>v.<br><br>THE UNITED STATES OF AMERICA<br><br>      Defendants. | Case No.  CV 07-06446 PJH<br><br>[PROPOSED] ORDER ON DEFENDANT'S MOTION TO DISMISS |

ORDER

THIS MATTER came regularly for hearing before the undersigned Judge on Defendant's Motion to Dismiss. Plaintiffs against whom the motion was brought were represented by counsel, as noted in the record. After considering the moving, opposition, and reply papers and the declarations and exhibits attached thereto submitted by all the parties, and good cause appearing,

[PROPOSED] ORDER ON DEFENDANT'S MOTION TO DISMISS- 1

ISAACSON & WILSON, P.S.
701 Fifth Avenue, Suite 5810
Seattle, Washington 98104
Telephone: (206) 448-1011
Fax: (206) 448-1022

**IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss is hereby DENIED.

Dated this ____ day of _____, 2008.

_____
Honorable Phyllis J. Hamilton

Presented by

ISAACSON & WILSON, P.S.

*/s/ Brian G. Isaacson*
Attorneys for Plaintiff

[PROPOSED] ORDER ON DEFENDANT'S MOTION TO DISMISS- 2

ISAACSON & WILSON, P.S.
701 Fifth Avenue, Suite 5810
Seattle, Washington 98104
Telephone: (206) 448-1011
Fax: (206) 448-1022

CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing was delivered on May 6, 2008 to the CM-ECF system of the United States District Court for the Northern District of California for electronic delivery to all counsel of record.

Thomas M. Newman    thomas.newman2@usdoj.gov

Mark J. Wilson    mjwilson@isaacsonwilson.com, sjbridges@isaacsonwilson.com, yelena@isaacsonwilson.com

*/s/ Brian Isaacson*

[PROPOSED] ORDER ON DEFENDANT'S MOTION TO DISMISS- 3

ISAACSON & WILSON, P.S.
701 Fifth Avenue, Suite 5810
Seattle, Washington 98104
Telephone: (206) 448-1011
Fax: (206) 448-1022