UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

CARL SCHLACHTE and
NANCY SCHLACHTE,

      Plaintiffs,

      v.

UNITED STATES OF AMERICA,

      Defendant.
_____/

No. C 07-6446 PJH

**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS**

      Defendant's motion to dismiss came on for hearing before this court on May 28, 2008. Plaintiffs Carl Schlachte and Nancy Schlachte (collectively "plaintiffs") appeared through their counsel, Steven Graham and Brian Isaacson. Defendant United States of America ("defendant") appeared through government counsel, Tom Newman. Having read the parties' papers, including the supplemental briefs filed at the court's request after the hearing on the motion, and having carefully considered the parties' arguments and the relevant legal authority, and good cause appearing, the court hereby GRANTS defendant's motion as follows and for the reasons stated at the hearing.

## BACKGROUND

      This is a tax case. Plaintiffs are husband and wife. See Complaint, ¶ 2. In general, they allege that the Internal Revenue Service ("IRS") incorrectly treated a 2000 loan to plaintiffs – and plaintiffs' corresponding pledge of stock as collateral for that loan – as a sale of stock, rather than a loan with a pledge of stock as collateral. Id. at ¶ 7.

A.    The 90% Stock Loans

      Plaintiffs allege that on June 14, 2000, they met with their financial advisor, who advised them that they would benefit by engaging in a "90% Stock Loan" offered by

1  Derivium Capital LLC.  See Complaint, ¶ 19.  The 90% Stock Loan program is similar to
2  other 90% stock loan programs available in the securities markets, whereby an owner of
3  stock agrees to pledge 100% of their stock holdings to a company in exchange for 90% of
4  the market value of their stock holdings.  The stock holders are essentially "borrowing"
5  against their own stock holdings, and pledging their holdings as collateral against the
6  amount of the loan.

7  Typically, the length of the loan may span one, three, or five years, during which
8  time the stock holder accrues interest on their "loan" for each outstanding year of the loan
9  term.  When the loan matures in a few years' time, the stock holder (i.e., "borrower") has
10 one of two options.  Either the stock holder can make a balloon payment in the amount of
11 the entire loan principle, plus the accrued interest, and receive 100% of their original stock
12 back, or the stock holder can simply forfeit the original stock pledged as collateral with no
13 obligation to pay back the amount of the loan or principle.  The latter option is usually
14 exercised when the value of the stock holdings have decreased during the loan period.

15 Plaintiffs allege that they entered into two 90% Stock Loans with Derivium, with a
16 three year loan term.  Complaint, ¶¶ 8-9.  Both loans were entered pursuant to a Master
17 Agreement to Provide Financing and Custodial Services ("Master Agreement") with
18 Derivium, which was executed by the parties on June 26, 2000.  See Complaint at ¶ , Ex.
19 A.  Plaintiffs took their first loan out on August 22, 2000, in which they pledged 8,860
20 shares of ARM Holdings PLC ("ARM") stock in return for $270,942.75, an amount equal to
21 90% of the closing market value of the ARM stock pledged as of August 24, 2000.  Id. at ¶¶
22 23.  Plaintiffs' second loan occurred on August 24, 2000, when they signed additional loan
23 documents pledging 66,266 shares of ARM stock in return for $2,025,392.18, an amount
24 equal to 90% of the closing market value of the ARM stock pledged as of August 24, 2000.
25 See id. at ¶ 24.  In other words, the total amount "loaned" to plaintiffs was $2,296,334,93.
26 Id. at ¶ 25.  Both loans were for a term of three years, and the loans provided for no
27 recourse beyond the shares pledged.  Id. at ¶¶ 23-24.
28

2

When plaintiffs filed their joint federal income tax return for the year 2000, they reported a total tax liability of $92,899. See Complaint, ¶ 26. They received a refund, however, because their withholding and other payments exceeded $92,899. Id.

Three years later, on July 10, 2003, plaintiffs were notified that their first loan term had matured. Plaintiffs opted to surrender their 8,860 shares of ARM stock in satisfaction of the loan (rather than pay the balloon payment and get their shares of ARM back). See Complaint, ¶ 27. On August 24, 2003, plaintiffs were notified that their second loan term had matured, and as with the first loan, plaintiffs opted to surrender their 66,266 shares of ARM stock in satisfaction of the loan. See id. at ¶ 28.

B.   IRS Tax Liabilities

On February 11, 2004, plaintiffs were contacted by the California Franchise Board ("Franchise Board"). The Franchise Board took the position that the two Stock Loans qualified as "sales," not loans, as of the date that the loans were signed. The IRS subsequently took the same position. See Complaint at ¶¶ 29-30.

Plaintiff, however, alleges that the Franchise Board and IRS mischaracterized the transactions at issue, and that the Master Agreement satisfies all of the requirements necessary for the transaction to be characterized as a loan. Id. at ¶ 33.[1] Nonetheless, as a result of the Franchise Board's and the IRS' purported mischaracterization of the Stock Loans as sales, plaintiffs allege that they were initially required to re-characterize the Stock Loans on their past tax returns, and specifically to report the 75,126 shares of total ARM stock holdings as sales on their California tax returns. See Complaint, ¶ 36. To that end, plaintiffs filed amended tax returns showing the Stock Loans as sales occurring in 2000. Id. at ¶ 36-37.

Subsequently, however, plaintiff resubmitted amended returns for both 2000 and

---

[1] Plaintiffs further allege that, after engaging in a dispute with the California Franchise Board over the issue, the Superior Court of California granted summary judgment in plaintiffs' favor, ruling that the Master Agreement and Stock Loans were, in fact, loans and not sales, for purposes of state tax treatment. Id. at ¶ 35.

3

2003, in which plaintiffs removed the income from the Stock Loans as sales from 2000, and instead recognized the income in 2003 when the shares were actually forfeited. See id. at ¶ 38.

On June 26, 2006, the IRS issued a full disallowance of plaintiffs' claimed refund in connection with the amended 2000 tax year return. Id. at ¶ 39.  The IRS also processed plaintiffs' amended 2003 tax return, which treated the sale of ARM stock as a sale with income in 2003.  Plaintiffs allege that this caused them to be taxed twice on the same Stock Loan transaction – in 2000, and 2003.  See Complaint, ¶¶ 39-41.  Although plaintiffs raised this discrepancy with the IRS, plaintiffs allege that the IRS advised them that it would collect tax for both 2000 and 2003, unless plaintiffs agreed to submit a closing agreement preventing plaintiffs from contesting 2000 liability, and promising to forego litigation.  See id. at ¶¶ 42-44.

On June 19, 2007, plaintiff paid the tax due for the 2000 tax year.  Complaint, ¶ 46. Plaintiffs allege, however, that although they paid the tax due for the 2000 tax year, the IRS continues to pursue collection of the same tax in 2003.  See id. at ¶¶ 46-47.  This is so, even though plaintiffs will not owe additional tax if 2000 is determined to be the correct reporting year for the Stock Loans, or will be owed a refund if 2003 is found to be the correct year for reporting the Stock Loans.  See id. at ¶ 48.

In view of all the above, plaintiffs allege that the IRS erred when it subjected the Stock Loan transactions to taxation, and sought to collect the income tax therefrom, on two occasions – once in 2000 and a second time in 2003.  See Complaint, ¶¶ 49-50.  They therefore seek a refund of the taxes paid for the year 2000, in the amount of $842,782. They allege that they are entitled to this amount on two grounds: (1) because the Stock Loan transactions were a "loan" and should not have been taxed as a "sale;" and/or (2) even if the transactions were properly classified as a "sale" in 2000, they qualified as a non-taxable "theft."  See Complaint at ¶ 48.

Defendant now moves for partial dismissal of plaintiffs' complaint.  Specifically,

4

1  defendant moves to dismiss plaintiffs' complaint to the extent it alleges that the Stock Loan
2  transactions constituted a non-taxable theft.  Defendant claims that the court lacks subject
3  matter jurisdiction over this portion of the claim, and that this "theft loss" claim furthermore
4  fails to state a claim upon which relief may be granted.

**DISCUSSION**

A.    Legal Standard

In evaluating a motion to dismiss, all allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party.  See, e.g., Burgert v. Lokelani Bernice Pauahi Bishop Trust, 200 F.3d 661, 663 (9th Cir. 2000)(citations omitted). In order to survive a dismissal motion, however, a plaintiff must allege facts that are enough to raise his/her right to relief "above the speculative level."  See Bell Atlantic Corp. v. Twombly, --- U.S. ---, 127 S. Ct. 1955, 1964-65 (2007).   While the complaint "does not need detailed factual allegations," it is nonetheless "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' [which] requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Id.  In short, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face," not just conceivable.  Twombly, 127 S. Ct. at 1974.

B.    Legal Analysis

Defendant's motion is limited to a request for resolution of two issues: (1) whether, to the extent that plaintiffs' first amended complaint alleges that the Stock Loan transactions constituted a theft loss, this claim should be dismissed for failure to raise it in the administrative proceedings below; and (2) whether, assuming plaintiffs' theft loss claim is properly before the court, plaintiffs have sufficiently stated a claim for theft loss.  The first of these issues challenges subject matter jurisdiction under 12(b)(1), while the second challenges plaintiffs' claim as a matter of law under 12(b)(6).

Preliminarily, however, plaintiffs raise the issue of timeliness.  Specifically, plaintiffs point out that defendant's motion to dismiss was filed after defendant's answer.  Post-

answer motions to dismiss are technically prohibited pursuant to Ninth Circuit authority. See, e.g., Augustine v. U.S., 704 F.2d 1074, 1075 fn. 3 (9h Cir. 1983). Accordingly, plaintiffs contend that the instant motion is untimely, and should be denied outright on those grounds.

Plaintiffs are generally correct. However, with respect to post-answer Rule 12(b) motions that raise "nonwaivable" defenses, the solution is not necessarily to deny the motion, but rather, to treat it as a different motion that would be permissible. This is the case here, for defendant's motion raises two "nonwaivable" defenses – lack of subject matter jurisdiction, and failure to state a claim. Accordingly, and under Ninth Circuit precedent, the court will construe defendant's 12(b)(6) motion as a 12(c) motion for judgment on the pleadings to the extent the motion deals with plaintiffs' ability to state a theft loss claim, and a 12(h)(3) suggestion of lack of subject matter jurisdiction to the extent the motion deals with plaintiffs' ability to raise a theft loss claim before the court.

Turning to the two issues before the court, defendant first challenges plaintiffs' theft loss claim on grounds that it was not raised as part of plaintiffs' administrative claim below, and is therefore barred from the court's consideration.

Section 7422(a) of the Internal Revenue Code provides: "No suit or proceeding shall be maintained in any court for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed ... until a claim for refund or credit has been duly filed with the Secretary or his delegate, according to the provisions of law in that regard, and the regulations of the Secretary or his delegate established in pursuance thereof." See 26 U.S.C. § 7422(a). Internal Revenue regulations also require that any administrative claim duly presented to the IRS "set forth in detail each ground upon which a credit or refund is claimed and facts sufficient to apprise the Commissioner of the exact basis thereof." See Treas. Reg. § 301.6402-2(b)(1).

If a refund suit does not meet the requirements of the Code and the regulations, the suit must be dismissed, because filing pursuant to the rules is a jurisdictional prerequisite.

See, e.g., L.E. Myers Co. v. United States, 673 F.2d 1366, 1367; Martinez v. United States, 595 F.2d 1147, 1148 (9th Cir.1979)(per curiam); Bear Valley Mutual Water Co. v. Riddell, 493 F.2d 948, 951 (9th Cir.1974).  Although courts have not required taxpayers to provide detailed explanations of their legal theories, or to develop full factual backgrounds in their refund claims, the IRS is entitled to take the refund claim at face value and examine only the points to which it directs attention.  See, e.g., Lemoge v. United States, 378 F.Supp. 228, 232-33 (N.D.Cal.1974); United States v. Garbutt Oil Co., 302 U.S. 528, 531-33 (1938).  Thus, generally, if the administrative claim on its face does not call for investigation of a question, the taxpayer may not later raise that question in a subsequent refund suit.  See Boyd v. U.S., 762 F.2d 1369, 1371-72 (9th Cir. 1985).

Here, while plaintiffs duly filed an administrative claim prior to bringing this action, plaintiffs' administrative claim filings, attached as exhibits to the complaint, do not disclose that the theft loss claim specifically, was ever brought to the IRS' attention as part of plaintiffs' administrative claim.  See Complaint, Exs. S, T, V.  Rather, the IRS decision affirming disallowance of the plaintiffs' amended 2000 return indicates that the government's consideration of plaintiffs' administrative claim was solely limited to the question whether the Stock Loan transactions should be treated as loans, or sales.  Indeed, the closest that the record ever comes to mentioning plaintiffs' theft loss claim is in the IRS' recitation of plaintiffs' position in the proceedings before it.  The IRS states that "taxpayer" disagrees with the government's position that the Stock Loan transactions were a sale, "due to taxpayer claim[ing] that [Derivium] sold the stocks without his consent."  See Complaint, Ex. S at Form 886-A, p. 5.  The IRS then continues, "[t]axpayer truly believes that the whole transaction was a loan and taxpayer was planning to pay off loan at maturity so that he could acquire the stocks back."  See id.  Nonetheless, the IRS concludes that it "believe[s] that the Stock Transaction is, in reality, a sale disguised as a loan."  Id.

In short, based on this record, there is no suggestion that plaintiffs directed the IRS' attention to their theft loss claim specifically, or otherwise provided sufficient information to

1    the IRS, such that the IRS would have reasonably realized that such a claim should have
2    been investigated.  See, e.g., Lemoge, 378 F. Supp. at 232-33; Boyd, 762 F.2d at 1371-72.
3    Thus, the theft loss claim is barred from the court's consideration, since the administrative
4    claim on its face does not call for investigation of this claim.

5    Plaintiffs argue, however, that even if the theft loss claim was not raised as part of
6    their formal administrative claim, it was raised as part of an *informal* claim before the IRS,
7    and on this basis, should be treated as properly before the court here.

8    It is true enough that the federal courts have recognized that where the formal
9    requirements of a refund claim do not exist, an "informal claim" may satisfy the jurisdictional
10   requirements of § 7422(a).  See Angelus Milling Co. v. Commissioner, 325 U.S. 293
11   (1945); United States v. Kales, 314 U.S. 186 (1941); Martinez v. United States, 595 F.2d
12   1147 (9th Cir.1979).  According to the informal claim doctrine, an informal claim is sufficient
13   to convey jurisdiction on the district court if it is (a) filed within the statutory period, (b) puts
14   the IRS on notice that the taxpayer believes an erroneous tax has been assessed, and (c)
15   describes the tax and year with sufficient particularity to allow the IRS to undertake an
16   investigation.  See, e.g., PALA, Inc. Employees Profit Sharing Plan & Trust Agreement v.
17   U.S., 234 F.3d 873, 876-77 (5th Cir. 2000).  Generally, there are no "hard and fast rules"
18   for determining the sufficiency of an informal claim, and each case must be decided on its
19   own facts "with a view towards determining whether under those facts the Commissioner
20   knew, or should have known, that a claim was being made."  Id.

21   Here, plaintiffs base their informal claim regarding the theft loss issue on two items:
22   first, handwritten notes taken by Ms. Li, the IRS agent charged with investigating plaintiffs'
23   administrative refund request, on June 8, 2006.  Second, a nine page appeal letter that
24   plaintiffs mailed and faxed to Ms. Li on July 26, 2006.  See Isaacson Decl., Exs. 3-4.
25   Neither, however, is a sufficient basis upon which to conclude that a satisfactory informal
26   claim of theft loss was made.

27   First, as to the former, while the handwritten notes do indicate that Ms. Li spoke with
28

8

plaintiffs' counsel and learned that counsel believed "that there should be a theft loss due to [Derivium] sold [plaintiffs'] stocks without his knowledge," this single statement does not provide enough specificity to fairly conclude that the IRS was on notice that plaintiffs were actually making a theft loss claim.

Second, and with respect to the nine page letter sent to Ms. Li, this letter at first blush might appear to provide the level of detail that the court should consider as meeting the informal claim test. See Isaacson Decl., Ex. 4 at p. 9. However, as defendant points out, this nine page letter was not actually sent as part of plaintiffs' original administrative claim to the IRS. Instead, the letter was filed in connection with an appeal of the IRS' original decision affirming the disallowance of the 2000 refund. In other words, the letter was filed *after* the IRS' original June 26, 2006 disallowance of the 2000 refund.

An informal claim raising new grounds that is filed after the original administrative claim and the IRS' original decision on the claim – i.e., after the original June 2006 disallowance here – is not timely filed, however.[2] As defendant points out, the time for the filing of a refund claim begins running as of the date of the notice of disallowance, and even the IRS' reconsideration of the claim does not operate to change this time frame. See, e.g., 26 U.S.C. § 6532(a)(1) ("[n]o suit or proceeding under section 7422(a) for the recovery of any internal revenue tax, penalty, or other sum, shall be begun ... after the expiration of 2 years from the date of mailing by certified mail or registered mail by the Secretary to the taxpayer of a notice of the disallowance of the part of the claim to which the suit or proceeding relates"); id. at § 6352(a)(4). Plaintiffs, furthermore, have presented no legal authority that supports the proposition that their original administrative claim can be amended by subsequent informal claim after disallowance of their original administrative claim. Finally, while plaintiffs attempt to overcome these points by arguing that Treasury

---

[2] The court requested, and the parties submitted, supplemental briefing on the question whether the IRS' decision disallowing plaintiffs' 2000 refund claim was final upon issuance of the original June 2006 disallowance, or whether the decision became final after the IRS' consideration of plaintiffs' appeal therefrom.

9

Regulation § 301.7430-1 provides that administrative exhaustion for purposes of filing a federal refund claim does not occur until after the IRS has considered the appeal from an earlier disallowance, Treasury Regulation § 301.7430-1 addresses no such thing.  Rather, this regulation addresses the exhaustion of administrative remedies for purposes of awarding reasonable litigation costs in civil tax proceedings brought under 26 U.S.C. § 7430(a).

In sum, neither the June 8 handwritten notes, nor the July 26 nine page appeal letter demonstrates with clarity that the IRS was, by way of an informal claim or otherwise, timely and properly made aware of plaintiffs' theft loss claim, such that the court may assume jurisdiction over the theft loss claim here.

As such, the court hereby DISMISSES that portion of plaintiffs' complaint that pleads a theft loss claim, as the IRS did not have occasion to consider and rule upon that claim prior to its presentation before this court, thereby depriving this court of subject matter jurisdiction over the claim.

Having so ruled, it is unnecessary for the court to consider defendant's remaining argument that plaintiffs' have failed to state a claim for theft loss.

C.  Conclusion

For the foregoing, defendant's motion for partial dismissal of plaintiffs' complaint is hereby GRANTED.

**IT IS SO ORDERED.**

Dated: August 26, 2008

PHYLLIS J. HAMILTON
United States District Judge

10